1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD MOONEY,<br><br>                    Plaintiff,<br><br>        v.<br><br>ROLLER BEARING COMPANY OF<br>AMERICA, INC.,<br><br>                    Defendant. | CASE NO. C20-01030-LK<br><br>ORDER REGARDING THE<br>PARTIES' CROSS MOTIONS FOR<br>SUMMARY JUDGMENT;<br>DENYING PLAINTIFF'S MOTION<br>TO STRIKE RBC'S EXPERT<br>REPORT; GRANTING<br>PLAINTIFF'S MOTION TO<br>STRIKE DEFENDANT'S<br>RESPONSE; DENYING<br>DEFENDANT'S MOTION TO<br>SEAL |

## I.     INTRODUCTION

This matter comes before the Court on the parties' cross motions for summary judgment. Plaintiff Richard Mooney filed a motion for summary judgment on some of Defendant's affirmative defenses. Dkt. No. 26. Mooney also filed a motion for summary judgment on certain elements of his claims under the Family and Medical Leave Act ("FMLA") and the Washington

Law Against Discrimination ("WLAD"), Dkt. No. 28,[1] and a motion to strike one of the responses filed by Defendant Roller Bearing Company of America, Inc. ("RBC"), Dkt. No. 51. Mooney also moved to strike RBC's expert report and references thereto. Dkt. No. 42. RBC has filed a motion for summary judgment on all of Mooney's claims, Dkt. No. 33, and a motion to seal portions of that motion and a supporting exhibit, Dkt. No. 32.

Having reviewed the motions and the balance of the record, the Court grants in part and denies in part Mooney's motion for summary judgment on RBC's affirmative defenses, grants in part and denies in part Mooney's motion for summary judgment on elements of his FMLA and WLAD claims, denies RBC's motion for summary judgment, denies Mooney's motion to strike RBC's expert report and references thereto, grants Mooney's motion to strike RBC's response, and denies RBC's motion to seal.

## II.    BACKGROUND

### A.  Mooney's Employment History and Performance

When Richard Mooney began working for RBC as a sales engineer in March 2018, he had 40 years of prior experience in sales. Dkt. No. 29-1 at 21, 58.[2] RBC manufactures bearings and other engineered products, catering to both industrial and aerospace clients, and Mooney worked for the "industrial side." *Id.* at 58; Dkt. No. 37-19 at 51. His job duties included making sales calls, getting engineering assistance on projects, and trying to take business from competitors. *Id.* at 58–59. Mooney's salary was $100,000 per year, and he was an at will employee. Dkt. No. 37-1.

---

[1] Mooney violated Local Civil Rule 7(e)(3) by filing multiple, contemporaneous motions for summary judgment each directed at separate issues. However, the Court does not strike the motions because the dispositive motions deadline has already passed, precluding Mooney from refiling a compliant single motion, and the multiple motions do not appear to have been filed to avoid the page limit in Local Civil Rule 7. *See* Dkt. No. 26 (five-page motion); Dkt. No. 28 (17-page motion).

[2] Unless otherwise indicated, citations to page numbers in this order refer to the page number in the cited document or transcript, not to the page number in the CM/ECF header.

ORDER REGARDING THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE RBC'S EXPERT REPORT; GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S RESPONSE; DENYING DEFENDANT'S MOTION TO SEAL - 2

Mooney's sales territory initially included Washington, Oregon, and Idaho. Dkt. No. 29-1 at 59. After he had been with the company for about eight months, his sales territory was expanded to include British Columbia and Alberta, Canada, and he had significant difficulty keeping up with his workload. *Id*; Dkt. No. 37-13 at 2.

Among other job responsibilities, Mooney was expected to write a certain number of reports of calls ("ROCs") per month "covering the high points of impactful sales calls." Dkt. No. 37-6. RBC used ROCs to inform Mooney's supervisor, Regional Sales Manager John Talley, about Mooney's projects or sales calls in his territory; to inform product managers about potential opportunities to help secure business; and to inform upper management, including the company's CEO, about sales progress. Dkt. No. 37-2 at 49. Mooney knew that it was important to document sales calls "[s]o people know what's going on, and so that there is a record," and he also knew the ROCs were very important to RBC's management. Dkt. 37-5 at 66, 82.

Throughout 2018, Talley had several conversations and sent multiple emails to Mooney about the need to write ROCs and how Mooney was falling short in that area. Dkt. No. 37-2 at 42 (advising Mooney that his ROCs were "below standard"); *id.* at 45 (explaining to Mooney that questions would be asked about his progress absent ROCs and projects in the pipeline, especially because he was still new and "reporting is key"); *id.* at 48–49 (advising Mooney that ROCs go to upper management, and that they notice when employees are not writing ROCs); Dkt. Nos. 37-9, 37-10, 37-11. Talley informed Mooney in an email in December 2018 that "[h]aving no ROC reports at RBC is a death sentence" and that Mooney should "take this seriously or problems will surely arise." Dkt. No. 37-7.

In February 2019, RBC placed Mooney on a 60-day performance improvement plan ("PIP") because he was "falling too far short" of the company's expectations regarding writing ROCs. Dkt. No. 37-6; *see also* Dkt. No. 29-1 at 71. The PIP explained that if Mooney's

1   performance did not improve or was not maintained after the PIP period ended, he could be

2   discharged. Dkt. No. 37-6.

3       Mooney's fiscal year 2019 performance evaluation, which covered his performance from

4   March 2018 through March 2019, stated that he needed "to work more with Salesforce and develop

5   more required ROC's in a timely manner." Dkt. No. 59-1 at 4. That was the only annual

6   performance evaluation Mooney received while at RBC. Mooney signed his evaluation in July

7   2019. Dkt. No. 37-22.

8       In September 2019, Christopher Curran, RBC's Vice President of Business Development,

9   sent to Steve Ross, the Director of Industrial Sales & Marketing, the resume of another employee,

10  Mike Carroll, as a potential hire in case they decided to "make a move with Dick Mooney." Dkt.

11  No. 37-26 at 6, 18–19. Ross spoke with Talley about potentially letting Mooney go and replacing

12  him with someone else. Dkt. No. 37-20 at 96. However, Carroll was not interested in the position

13  at that time and the matter was apparently dropped. *Id.* at 65–66; Dkt. No. 29-8 at 65–66.

14      Around the same time, Talley sent Mooney a new version of his fiscal year 2019

15  performance evaluation that incorporated revisions from Ross. Dkt. No. 56 at 2; Dkt. No. 37-23.

16  Ross had added detail regarding Mooney's placement on the PIP, specifically noting that "since

17  we started Salesforce in April [2019], [Mooney] has only written 9 ROC reports in over 4 months,

18  well below the expected average for his territory." *Compare* Dkt. No. 37-22 at ECF 5 *with* Dkt.

19  No. 37-23 at ECF 6. In late September 2019, Ross, Talley, and Mooney met to discuss Mooney's

20  annual performance evaluation. Dkt. No. 55-9 at 41–42. During the meeting, they discussed the

21  need to complete ROCs and asked Mooney to include a plan to grow his territory in the evaluation.

22  *Id.* at 42. Ross asked Mooney to work with Talley to make these edits. *Id.* at 43.

23      Completion of the edits appears to have been delayed until December 2019 due to Talley

24  taking leave from RBC. *Id.* at 43–44. On December 14, 2019, Ross emailed Mooney's completed

fiscal year 2019 performance evaluation to Tom King, RBC's Vice President of Administration, noting that the evaluation "documents [Mooney's] performance issues, but does not state an ultimatum." Dkt. 59-5 at 2. Ross also informed King that he and Talley would advise Mooney "that he is receiving zero increase for last year due to his performance (or lack thereof) on the PIP and his continued failure to consistently write ROC's." *Id.* at 1. On January 6, 2020, Ross emailed the finalized evaluation to Talley, informing him that it was ready for Mooney to sign and emphasizing that Mooney had not written a ROC in over two months. *Id.* at 1–2. Mooney signed the evaluation the same day. *Id.* at 1. Mooney acknowledged in the evaluation that he "need[ed] to improve [his] reporting capabilities, particularly the ROC in Salesforce." Dkt. No. 37-12 at 5.

When Talley informed Mooney that he would not be receiving a merit-based pay increase, he explained that it was because of Mooney's failure to submit ROCs as required. Dkt. No. 37-2 at 121. Despite that performance issue, RBC had "no thoughts" of letting Mooney go in January 2020, before the COVID-19 pandemic. Dkt. No. 55-9 at 53.

### B.  Mooney Requested and Was Granted FMLA Leave

On January 11, 2020, after receiving the performance evaluation and news that he would not receive a pay raise, Mooney wrote a lengthy email to Talley and to Cathy DePaola, RBC's Director of Human Resources for the East Coast. Dkt. No. 59-6. Mooney expressed his dismay with RBC's delay of 10 months in finalizing his annual review, and stated that it was troubling that, "as conveyed to [him]," the decision not to give him a pay raise for his performance in the 2019 fiscal year was "largely based on" poor reporting performance *after* that fiscal year. *Id.* at ECF 2. Mooney further stated that he was "disappointed but not shocked by RBC management's decision not to give [him] either a cost of living or merit increase for [his] performance" during the 2019 fiscal year. *Id.* at ECF 2–3. He emphasized that the addition of the Canadian territory to his responsibilities more than tripled his sales area, yet "RBC unrealistically maintained

expectations that [he] would not only work 2 territories, but that [he] would also spend an additional 10-15 hours per week to complete all the requisite and redundant reports for both jobs." *Id.* at ECF 3. Mooney stated that "[e]ffectively . . . working 2 full time jobs for over a year" brought him "an unprecedented level of stress," and he informed Talley and DePaola that he would be taking a leave of absence as recommended by his doctor to address his "depressive illness." *Id*. He attached a letter from his doctor recommending that he take time off from work. *Id.* at ECF 5.

The following workday, RBC's Payroll and Benefits Supervisor sent FMLA paperwork to Mooney for his doctor to complete. Dkt. No. 37-14. Mooney submitted the completed paperwork to RBC on January 16, 2020. Dkt. No. 37-15. On the FMLA form, the doctor stated that Mooney was "quite depressed" and would be incapacitated from working from January 10, 2020 through February 15, 2020. *Id.* at ECF 4–5. The doctor also indicated that episodic flare-ups could periodically prevent Mooney from performing his job functions in the future. *Id*.

RBC approved Mooney's request to take a leave of absence starting January 13, 2020 for approximately five weeks. Dkt. No. 29-3 at 25. While Mooney was out on leave, he submitted a second FMLA request to extend his leave by one month until March 23, 2020; RBC approved that request. Dkt. Nos. 37-13, 37-17; Dkt. No. 29-3 at 36. Mooney also applied for benefits under the Washington Paid Family & Medical Leave Act ("WPFMLA") and received those benefits. Dkt. No. 29-1 at 102. Talley covered Mooney's sales territories while he was out on leave. Dkt. No. 37-2 at 148.

As the end of his leave was approaching, Mooney emailed RBC asking about the steps he needed to take to return to work. Dkt. No. 29-11 at 2–3. DePaola sent Mooney an email on March 20, 2020 informing him that "[i]n order to return on Monday we will need a release from your doctor saying that you are able to return to work with no restrictions." *Id.* at 2. DePaola explained in a subsequent email the same day:

> I understand that this might be difficult to get under the current circumstances, but since you have been out on Short Term Disability and FMLA we are unable to allow you to return to work on Monday without the release from your doctor. You might need to delay your back to work date until we can get this from your doctor.

*Id.* at 1.

Mooney avers that RBC never told him prior to March 20, 2020 that he was required to submit a certification prior to returning to work, and never informed him that RBC's FMLA policy was posted on its intranet. Dkt. No. 30 at 2. RBC posts its FMLA policy on its internal "OneRBC" system, which is available to all employees. Dkt. No. 36 at 2. RBC's written FMLA policy states:

> Before being permitted to return to work from a leave for the employee's own serious health condition, the employee will be required to provide certification from his or her health care provider that he or she is able to return to work and perform all essential functions of the job, with or without reasonable accommodation.

Dkt. 29-6 at 5. In addition, when an employee is out on FMLA leave, DePaola typically reminds them "that they need a release to come back" because they need to be cleared medically to return to work. Dkt. No. 29-3 at 28, 31. However, DePaola does not recall whether she told Mooney about the certification requirement before March 20, 2020. Dkt. No. 37-19 at 55–57.

Mooney sent an email to RBC on April 1, 2020 explaining that he had encountered delays trying to obtain the requested certification from his doctor's office. Dkt. No. 29-12 at ECF 2. The letter he had received from his doctor addressed another unrelated condition but not the depression. *Id.* Mooney obtained a certification to return to work addressing the depression on April 3, 2020, and he provided it to RBC the same day. Dkt. No. 36-3. Mooney contends that because he was not working or getting paid for two weeks while he was trying to obtain the certification, he lost $3,846.15 in wages. Dkt. No. 30 at 3.

**C. Mooney's Employment Was Terminated**

RBC's fiscal year ends on March 31. Dkt. No. 37-20 at 28. Around March 31, 2020, the COO and CFO of RBC told DePaola that the COVID-19 pandemic was starting to affect their

business and that the company was going to need to implement layoffs and furlough days. Dkt. No. 37-19 at 48–49. In an April 2, 2020 memorandum to Tom King, Ross detailed the projected impacts that the COVID-19 pandemic and lower projected sales were having on the Industrial Sales division. Dkt. No. 33-1. In light of those factors, RBC determined at the outset of its fiscal year that it would need to immediately implement a company-wide Reduction in Force ("RIF"). Dkt. No. 37-19 at 49–50. RBC laid off approximately 600 employees in 2020. *Id.* at 100.

Ross explained in his memorandum that the RIF was "being rolled out immediately in an effort to protect the overall health of the Industrial Sales organization and RBC Bearings." Dkt. No. 33-1. Ross considered three primary factors in selecting employees for the RIF: (1) cost (salary savings); (2) projected staffing requirements, including (i) job function and position necessity, (ii) full versus part-time availability, (iii) transferability of skillsets, (iv) sustainability of business-related activity; and (3) performance. *Id.* RBC tried to retain as many employees as possible but needed to reduce staffing to get costs in line. Dkt. No. 37-20 at 116. Ross testified that he selected Mooney to be laid off because of the RIF and not based on his medical issues. *Id.* at 117, 120, 170.

Mooney returned to work on April 6, 2020. At about 1:00 p.m. that day, Ross and DePaola called Mooney to inform him that RBC was terminating his employment, effective immediately. Dkt. No. 37-5 at 122. Neither Ross nor DePaola mentioned any issue with Mooney's performance in that conversation. *Id.* He was instead told that his termination was part of an "across-the-board reduction in force" that RBC was implementing "due to COVID and the anticipated downturn in business[.]" *Id.* When Mooney was asked in his deposition if he believed RBC when they informed him that the reason for his termination was the reduction in force, he responded, "Of course. What—why would I doubt it?" *Id.* at 123.

For approximately six months after Mooney's discharge, Talley covered the Pacific Northwest territory that Mooney had covered. Dkt. No. 37-20 at 137–38. Mooney's Western

Canadian territory was covered by another employee. *Id.* at 139. However, the intent was not to leave the Pacific Northwest territory "uncovered forever," as it is a "valuable territory that needs coverage" by a dedicated sales representative. *Id.* at 133. An internal candidate, Peter Lensing, was hired to replace Mooney in October 2020. *Id.* at 134–35, 137. RBC did not interview anyone else for the position. *Id.* at 138. Lensing assumed the role of district sales engineer and also retained some of his prior duties. Dkt. No. 37-28 at 13–14. Lensing's salary as district sales engineer was $80,000, less than what RBC had paid Mooney. *Id.* at 25.

### D. Mooney's Lawsuit

In June 2020, Mooney filed suit against RBC in King County Superior Court, asserting that RBC had violated the WLAD, the WPFLMA, Washington's Minimum Wage Act, and the FMLA. Dkt. No. 1-2 at 1, 4–6. RBC promptly removed the case to this Court based on 28 U.S.C. § 1441(b)–(c), 28 U.S.C. § 1367(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1332. Dkt. No. 1 at 2–3. The parties subsequently stipulated to the dismissal of Mooney's Minimum Wage Act claim, and that claim has been dismissed. Dkt. Nos. 38, 41.

## III.   DISCUSSION

### A. Jurisdiction

The Court has original jurisdiction over Mooney's FMLA claim under 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Mooney's state law claims because they are part of the same case or controversy. 28 U.S.C. § 1367(a).

### B. Summary Judgment Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Court will, however, enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried its burden under Rule 56(c), "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Metaphysical doubt is insufficient, *id.* at 586, as are conclusory, non-specific affidavits, *Lujan*, 497 U.S. at 888–89.

### C. Motion to Seal

As an initial matter, the Court considers RBC's motion to seal (1) Exhibit U to the declaration of its counsel filed in support of RBC's motion for summary judgment, and (2) the substantive references to that exhibit in its motion for summary judgment. Dkt. No. 32. RBC has filed a redacted copy of its motion for summary judgment. Dkt. No. 34. Exhibit U is the April 2, 2020 memorandum in which Ross detailed projected impacts of the COVID-19 pandemic and lower projected sales on the Industrial Sales division. Dkt. No. 33-1. Mooney opposes the motion to seal.

"There is a strong presumption of public access to the court's files." Local Civil Rule 5(g). To overcome this strong presumption, a party seeking to seal a judicial record must meet the "compelling reasons" standard to seal a document attached to a dispositive motion. *Ctr. for Auto*

*Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). Under this "stringent standard," a court may only seal records when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (quoting *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)) (internal quotation marks omitted).

The Court denies RBC's motion to seal for two reasons. First, RBC did not meet and confer as required by the Local Civil Rules before filing its motion to seal. RBC's counsel states that counsel "met and conferred . . . via email," Dkt. No. 35 at 1, but the Local Civil Rules require a meet and confer in person or by telephone, LCR 1(c), 5(g). The stipulated protective order in this case contains the same requirement. Dkt. No. 13 at 6 ("A good faith effort to confer requires a face-to-face meeting or a telephone conference.").

Second, RBC has not provided compelling reasons to justify keeping Exhibit U and references to it under seal. RBC contends that Exhibit U contains RBC's confidential and sensitive business information that RBC has not disclosed to its competitors or to the general public, including information about the company's historical sales, future financial projections, and RBC's analysis of its key customers and markets. Dkt. No. 32 at 1, 4. Ross, who authored the document, testified during his deposition that the information about the then-upcoming RIF was "not information that we would want to ever get outside the organization. We wouldn't want our customers to have this. I wouldn't want our competitors to have this." Dkt. No. 35-1 at 141.

Mooney counters that Exhibit U contains speculation about how the COVID-19 pandemic might impact the business, but that information is no longer confidential or sensitive now that RBC has publicly released its actual sales number for its 2021 fiscal year. Dkt. No. 44 at 1. RBC did not file a reply in support of its motion, file a declaration stating that the information in Exhibit U is still sensitive, or respond to Mooney's arguments. However, RBC indicated that the information was sensitive because it contained projections for the 2021 fiscal year, and "RBC's 2021 fiscal

year ha[d] not yet ended" such that the information was not yet "publicly available to its customers or competitors." Dkt. No. 45-6 at 1. RBC's 2021 fiscal year ended on March 31, 2022. *See* Dkt. No. 33 at 10. Furthermore, RBC has already filed numerous reports covering its 2021 fiscal year performance and projections for the 2022 fiscal year. RBC Bearings Incorporated SEC reports, *available at* https://sec.report/CIK/0001324948.

In the absence of evidence that the information in Exhibit U is still sensitive and confidential, the Court denies RBC's motion to seal.

**D.  Motions to Strike**

Mooney has filed two motions to strike some of the evidence RBC submitted with its opposition to Mooney's motion for summary judgment on RBC's affirmative defenses. Dkt. Nos. 42, 51. Mooney also requests that the Court disregard DePaola's declaration as a sham declaration. The Court considers these issues regarding the scope of the evidence before it considers the merits of the summary judgment motions.

1.  Report of William Skilling

Mooney moves to strike the report of RBC's vocational expert, William Skilling, on the grounds that it is unauthenticated and hearsay. Defense counsel initially attached the report to her own declaration. Dkt. Nos. 40, 40-1.

Civil Rule 56(c)(4) requires affidavits filed to support or oppose a motion to "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Any such affidavits "must be made on personal knowledge." *Id.* Courts in this circuit have stricken or refused to consider expert reports attached to the declarations of counsel in support of motions for summary judgment. *See, e.g., Skiffington v. Keystone RV Co.*, No. C12-09359-MWF-CWX, 2013 WL 12133662, at *5 (C.D. Cal. Dec. 9, 2013); *Harris v. Extendicare Homes, Inc.*, 829 F. Supp. 2d 1023, 1027 (W.D. Wash. 2011); *Smith v. City of Oakland*, No. C05-4045-EMC, 2007 WL 2288328, at *4 (N.D. Cal.

Aug. 9, 2007). However, the Court also has discretion to provide a party who has failed to properly support an assertion of fact an opportunity to do so. Fed. R. Civ. P. 56(e).

Here, after Mooney filed his motion to strike Skilling's report, Skilling filed his own declaration authenticating the report and swearing to it under penalty of perjury. Dkt. Nos. 50, 50-1. Although it was procedurally improper for RBC to file Skilling's declaration after Mooney filed his reply, the Court exercises its discretion to consider the declaration. The Court accordingly denies Mooney's motion to strike Skilling's report.

### 2. RBC's Discovery Responses

Mooney also seeks to strike RBC's comparative fault and setoff affirmative defenses as a discovery sanction because RBC did not sufficiently respond to written discovery requests about those defenses. Dkt. No. 42 at 3–4.

During discovery, Mooney propounded an interrogatory asking RBC to "provide the factual basis to support [each affirmative defense RBC asserted in its Answer], including the identity of the individual(s) that have knowledge of the facts to support the defense." Dkt. No. 27-6 at ECF 3. In its response, RBC stated its objections, wrote a sentence about why Mooney was discharged, and listed individuals who may have knowledge about RBC's affirmative defenses. *Id.* RBC's response did not include information about its comparative fault or setoff defenses.

In responding to Mooney's motion for summary judgment on those defenses, RBC states that it is asserting a comparative fault defense because Mooney was partially or fully to blame in delaying his return to work because he did not timely provide the return to work certification. Dkt. No. 48 at 5. RBC also states that if Mooney prevails at trial, RBC will seek a setoff for (1) the amount RBC paid for Mooney's medical and dental insurance for which Mooney was otherwise responsible and normally paid through payroll deductions, and (2) Mooney's salary for the first 20 days of his leave, which RBC paid even though it was not required to do so because RBC assumed

1   that Mooney's application for short-term disability benefits would be approved and would cover

2   those sums. Dkt. No. 48 at 4–5; *see also* Dkt. No. 36 at 4.

3        Federal Rule of Civil Procedure 26(e)(1) requires parties to "timely" supplement their

4   interrogatory responses under Rule 33 if the responses are either incomplete or incorrect. Rule

5   37(c) requires courts to preclude a party from introducing evidence or theories not disclosed

6   pursuant to Rule 26(e) unless the party can show that its violation of Rule 26 was either harmless

7   or substantially justified. Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,

8   259 F.3d 1101, 1106 (9th Cir. 2001).

9        In this case, both parties are at fault. RBC's answer to the interrogatory about its affirmative

10  defenses was incomplete and not supplemented. But despite the incomplete discovery response,

11  Mooney was sufficiently put on notice of RBC's affirmative defenses. He argued in his motion for

12  summary judgment that he thought RBC's setoff defense was related to the unemployment benefits

13  Mooney received. Dkt. No. 26 at 5. And he also knew by early 2020 that RBC might seek to recoup

14  the payments he had received. Dkt. No. 36-4 at ECF 2–3. Moreover, RBC pled its setoff

15  affirmative defense broadly enough to encompass the setoff theory it now asserts. Dkt. No. 8 at 8

16  ("Plaintiff's claim for relief must be set off and/or reduced by wages, compensation, pay and

17  benefits, or other earnings, remunerations, profits and benefits received by Plaintiff."). While RBC

18  should have written a more complete response and/or supplemented its response, its affirmative

19  defense gave Mooney sufficient notice of the nature of the defense. Furthermore, the breadth of

20  Mooney's FMLA claim[3] invited a broad affirmative defense, and the sweeping nature of the claim

21  and the defense makes it unclear whether RBC could have provided a very specific answer to

22

23  [3] Dkt. No. 1-2 at 5–6 (incorporating the first 41 paragraphs of the complaint and stating that
    RBC's "acts and/or conducts as alleged above constitute an interference with, restraint of, or
24  denial of the exercise of Plaintiff's FMLA rights")

ORDER REGARDING THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION TO STRIKE RBC'S EXPERT REPORT; GRANTING PLAINTIFF'S MOTION TO
STRIKE DEFENDANT'S RESPONSE; DENYING DEFENDANT'S MOTION TO SEAL - 14

Mooney's interrogatory even if it had provided a full response. *Ingenco Holdings, LLC v. ACE Am. Ins. Co.*, No. C13-543-RAJ, 2016 WL 4703758, at *4 (W.D. Wash. Sept. 7, 2016) (a vague description of the basis for the plaintiff's claim gives the defendant "very little to go on").

Mooney argues that as a result of RBC's incomplete discovery response, he "did not conduct any discovery . . . about these additional facts related to these defenses." Dkt. No. 42 at 4. However, all relevant facts concerning the comparative fault and setoff affirmative defenses appear to be in the record and uncontested, *see, e.g.*, Dkt. Nos. 37-18, 43-1, so it is unclear what more Mooney could have obtained through additional discovery. Moreover, Mooney's counsel does not state that they ever attempted to follow up on RBC's obviously incomplete response or sought a meet and confer on the issue. Mooney took the depositions of all of the witnesses RBC listed in its discovery response as people with knowledge about the affirmative defenses, and Mooney does not contend that they were unable or unwilling to provide information about the affirmative defenses. *See* Dkt. Nos. 37-2, 37-16, 37-19, 37-20; Fed. R. Civ. P. 26(e)(1)(A) (supplementation required unless "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"); *Woodhull v. Cty. of Kent*, No. 1:04-CV-203, 2006 WL 708662, at *4 (W.D. Mich. Mar. 21, 2006) (denying motions to strike where "both sides [we]re at fault: plaintiff for her unorthodox method of disclosure, and the . . . defendants for refusing to take action after receiving the disclosure").

For these reasons, the Court denies Mooney's motion to strike RBC's affirmative defenses as a discovery sanction.

### 3. Mooney's Motion to Strike RBC's Response

Mooney properly included in his reply memorandum his request to strike the Skilling report and the related factual bases RBC presented for its comparative fault and setoff defenses. LCR 7(g); Dkt. No. 42 at 1–4. RBC then filed a response, Dkt. No. 48, and Mooney filed a motion to

strike that response, Dkt. No. 51, because Local Civil Rule 7 does not permit a response to a reply memorandum.

If a party seeks to strike material contained in the opposing party's reply as RBC did, it can file a surreply requesting that the Court strike the material by (1) filing a notice of intent to file a surreply, (2) strictly limiting the surreply to the request to strike, and (3) limiting the surreply to three pages. LCR 7(g). RBC's response does none of these things. RBC did not file a notice of intent to file a surreply, engaged in substantive arguments rather than limiting its response to the request to strike, and exceeded the page limit by two pages. Dkt. No. 48. For all of those reasons, the Court grants Mooney's motion to strike RBC's response at Docket Entry 48. Dkt. No. 51.

### 4.  DePaola's Declaration

Mooney urges the Court not to consider statements in a declaration from Cathy DePaola that RBC submitted with its opposition to Mooney's motion for summary judgment on RBC's affirmative defenses. Mooney argues that the declaration is a sham based on conjecture and conclusory statements that contradict her deposition testimony. Dkt. No. 53 at 4 (referencing Docket Entry 36).

"'The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). The rule "prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (cleaned up). "But the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Id.* (cleaned

up). "[T]he inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* (cleaned up).

Mooney argues that DePaola's declaration is a sham to the extent that she states therein that she believes she spoke with Mooney prior to March 20, 2020 about his need to obtain a doctor's certification to return to work. Dkt. No. 36 at 3. Mooney argues that DePaola testified in her deposition that her colleague, not DePaola herself, spoke with Mooney about the certification before March 20, 2020. Dkt. No. 53 at 5–6. The distinction matters because the colleague does not recall speaking with Mooney. But DePaola's declaration is consistent with her deposition testimony. DePaola repeatedly testified in her deposition that to the best of her recollection, she spoke with Mooney about his need to obtain a doctor's certification at some point prior to March 20, 2020. Dkt. No. 37-19 at 55 (when asked if March 20 was the first conversation on the topic, DePaola responded, "I can't say with a hundred percent certainty, but I did speak to him about needing a doctor's note previously."); *id.* at 56 ("I can't say for sure, but I—I believe that I mentioned it to him previously."); *id.* at 59 ("I can't say for sure with a hundred percent certainty. I believe I did."). Therefore, DePaola's declaration on that issue is not a sham.

Mooney also contends that RBC cannot create an issue of fact based on DePaola's statement that "all RBC employees are made aware of" RBC's policy on its intranet requiring its employees to present a fitness for duty certification to return to work. Dkt. No. 36 at 1–2. DePaola's declaration does not identify her personal knowledge about how RBC made employees (and specifically, Mooney) aware of the policy, so the Court declines to consider her statement in that regard. Fed. R. Evid. 602 (a lay witness may testify only based on personal knowledge).

### E.   Mooney's Motion for Summary Judgment on RBC's Affirmative Defenses

Mooney moves for summary judgment on many of the affirmative defenses RBC asserted in its answer to Mooney's complaint. Specifically, Mooney seeks summary judgment on the

following affirmative defenses:

- Affirmative Defense No. 1, Failure to State a Claim
- Affirmative Defense No. 2, Waiver, Estoppel, Unclean Hands, and/or Laches
- Affirmative Defense No. 3, Comparative Fault of Plaintiff
- Affirmative Defense No. 4(a), Failure to Mitigate
- Affirmative Defense No. 4(b), Setoff
- Affirmative Defense No. 5, Statute of Limitations
- Affirmative Defense No. 6, Failure to Plead Specific, Material Facts Sufficient to Support Plaintiff's Claim.

Dkt. No. 26. In its response, RBC does not contest the dismissal of its affirmative defenses 2, 5 and 6. Dkt. No. 39 at 6 n.26, 13. Therefore, Mooney's motion for summary judgment is granted as to those affirmative defenses.

Although RBC bears the burden of proving its affirmative defenses at trial, Mooney has "both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To meets its burden of production, Mooney "must either produce evidence negating an essential element of" RBC's affirmative defenses or demonstrate that RBC does "not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* To carry its ultimate burden of persuasion, Mooney "must persuade the court that there is no genuine issue of material fact." *Id.*

1. Affirmative Defense 1 (Failure to State a Claim)

Mooney contends that the Court should dismiss RBC's affirmative defenses of "[f]ailure to state a claim [and] [f]ailure to plead specific, material facts sufficient to support [Mooney's] claim" because he "asserted claims against RBC for unlawfully terminating him in violation of the WLAD and the FMLA" and "asserted sufficient facts" to support those claims. Dkt. No. 26 at 4.

Rather than responding to Mooney's motion for summary judgment on affirmative defense 1, RBC states that it "incorporates its Motion for Summary Judgment." Dkt. No. 39 at 6 n.26

(referencing Dkt. No. 34). Such incorporation would circumvent the page limit on RBC's response under Local Civil Rule 7(e)(3), and the Court therefore does not consider the arguments in RBC's separate motion in evaluating Mooney's motion for summary judgment on affirmative defense 1. *See O'Dell v. Conseco Senior Health Ins. Co.*, No. C08-00793 RSL, 2011 WL 13044240, at *1 n.1 (W.D. Wash. Feb. 10, 2011) (disregarding all arguments and supporting evidence that were not made in defendants' opposition to plaintiff's motion). Furthermore, RBC's argument that Mooney failed to state a claim appears to be directed at his Washington Minimum Wage Act claim, Dkt. No. 39 at 6 n.26, but the parties subsequently stipulated to the dismissal of that claim, Dkt. No. 38. RBC also appears to concede that affirmative defense 1 should be dismissed, as it asks the Court to deny Mooney's motion only as to affirmative defenses 3, 4(a), and 4(b). Dkt. No. 39 at 13. Therefore, the Court grants Mooney's motion for summary judgment on affirmative defense 1.

## 2. Affirmative Defense 3 (Comparative Fault)

Mooney argues that there is no factual basis to support a defense that he is comparatively at fault for RBC violating his rights under the WLAD and FMLA. Dkt. No. 26 at 4.

In response, RBC clarified that it is not alleging that Mooney violated his own rights under the WLAD or FMLA. Rather, RBC argues that Mooney's own actions caused his damages for the period of time between when he sought to return to work on March 23 and when he was able to return to work with the required physician's certification on April 6. Dkt. No. 39 at 8–9. RBC contends that Mooney knew he had to submit a doctor's certification before returning to work but failed to supply it before his originally scheduled return to work date. *Id.* Even when he did supply it, the certification was not related to his depression, the condition for which his FMLA leave was granted. *Id.* at 9. RBC argues that genuine issues of material fact exist regarding whether Mooney's own actions led to his damages. *Id.* at 7–9. The parties agree that if Mooney is successful on his

claims, he can recover for damages proximately caused by RBC's wrongful conduct under general tort principles. *See* Dkt. No. 1-2 at 4 (Mooney alleging that his damages are the "proximate result of [RBC's] acts and/or omissions"); Dkt. No. 39 at 8 (RBC alleging that comparative fault principles apply to all tort actions involving contributory fault and the WLAD provides a tort remedy for both lost earnings and emotional distress). Mooney responds that even with RBC's clarification of its affirmative defense, he is entitled to summary judgment because he did not cause or contribute to his own damages. Dkt. No. 42 at 6–8.

However, there is a genuine issue of material fact regarding whether RBC told Mooney before March 20, 2020 that he needed a fitness for duty certification from a physician before he could return to work. Mooney claims that he did not know about RBC's certification requirement until he received DePaola's email on March 20, 2020, and that his March 27, 2020 phone call with DePaola was the only time an RBC employee orally told him of the requirement. Dkt. Nos. 30 at 2; 42 at 7–8. RBC counters that it was the company's "practice" to notify employees of the need for a return to work certification at the outset of their leave. Dkt. No. 33 at 22. However, RBC has not demonstrated at this point that such notification was the usual habit or routine practice of the company or of any employee. Fed. R. Evid. 406; *see, e.g., Pacheco v. United States*, No. C15-1175-RSL, 2017 WL 714198, at *3 (W.D. Wash. 2017). RBC also argues that Mooney should have known that the FMLA policy was available to him on the company's intranet, and DePaola testified that she believes she told Mooney about the certification requirement before March 20, 2020, though she does not remember exactly when she told him. Dkt. No. 36 at 3; *see also* Dkt. No. 37-19 at 55–57, 59. Mooney's and DePaola's differing accounts create a dispute of material fact precluding summary judgment on the issue of when Mooney learned of the certification requirement and whether he learned of it in time to obtain a certification before March 23, 2020, when he planned to return to work.

Even if RBC did not notify Mooney of the requirement until March 20, 2020 as he claims, there is a genuine issue of material fact regarding whether he could have obtained the certification before April 3, 2020. It is undisputed that at least part of the delay was because Mooney's physician initially sent him a certification related to the wrong medical condition. What is unclear from the record is who was responsible for that error.

Because there is a disputed issue of fact regarding whether Mooney contributed to his own damages by failing to obtain the certification earlier, the Court denies Mooney's motion for summary judgment on this affirmative defense.

### 3.  Affirmative Defense 4(a) (Failure to Mitigate)

Failure to mitigate is a valid affirmative defense. 5 Fed. Prac. & Proc. Civ. § 1271 (4th ed.). To establish that Mooney failed to mitigate his damages, RBC bears the ultimate burden of proving that (1) during the time in question, there were substantially equivalent jobs available that Mooney could have obtained, and (2) that he failed to use reasonable care and diligence in seeking such a position. *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995); *Stewart v. Snohomish Cty. PUD No. 1*, 262 F. Supp. 3d 1089, 1112 (W.D. Wash. 2017).

Mooney argues that he has mitigated his damages by applying for over 300 jobs between April 6, 2020 and December 1, 2021. Dkt. No. 26 at 4. RBC counters with the opinion of its vocational expert, William Skilling. Skilling opines that diligent job seekers will apply for at least four job openings per day, such that Mooney could have applied for hundreds more "substantially similar" jobs. Dkt. No. 50-1 at 10–11. According to Skilling, Mooney failed to use reasonable care and diligence in seeking another position, as there were substantially equivalent jobs he could have obtained as a sales manager, sales engineer, or sales representative, and a reasonable job search would have resulted in Mooney obtaining comparable employment in less than three months in a best case scenario and in less than six months in a worst case scenario. Dkt. No. 50-1 at 11–12.

Mooney argues that Skilling's opinion is insufficient to carry RBC's burden. Mooney relies on *Hughes v. Mayoral*, 721 F. Supp. 2d 947, 967 (D. Haw. 2010), in which the defendant provided more detail about the alleged substantially equivalent positions than Skilling provides in this case. However, the Court in *Hughes* was evaluating defendant's motion for summary judgment on plaintiff's back pay claim and found that defendant did not meet its burden of proving the plaintiff's failure to mitigate damages. Here, Mooney is seeking summary judgment on RBC's affirmative defense and has not negated an essential element of RBC's affirmative defense or demonstrated that RBC does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Skilling's opinion creates a dispute of material fact as to whether Mooney used reasonable care and diligence in seeking a substantially equivalent position.

Accordingly, the Court finds that there is a genuine issue of material fact regarding whether Mooney has mitigated his damages. The Court therefore denies Mooney's motion for summary judgment on this affirmative defense.

### 4.   Affirmative Defense 4(b) (Setoff)

RBC has alleged an affirmative defense for a setoff, which "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995) (cleaned up). Setoff (also known as an offset) is a valid affirmative defense to a WLAD claim. *See, e.g., Campbell v. Cath Cnty. Servs. of W. Wash.*, No. C10-1579-RSL, 2012 WL 600725, at *4 (W.D. Wash. 2012).

Mooney contends that he is entitled to summary judgment on this affirmative defense because RBC failed to disclose the nature of its theory in discovery. Dkt. No. 42 at 11. However, as set forth above, the Court denies Mooney's request to strike the affirmative defense on that basis.

1      Mooney also argues that RBC is not entitled to enforce this defense because—by RBC's

2  own admissions—it waived the payroll deductions and had a standard practice of paying

3  employees for the first 20 days of their leave. Dkt. No. 42 at 11. In support of his waiver argument,

4  Mooney notes that DePaola stated in a declaration that "RBC voluntarily waived Mr. Mooney's

5  insurance deductions in February, March, and April 2020." *Id.* (citing Dkt. No. 36 at 4). However,

6  the declaration attaches an email from Mooney in which he asked how to repay RBC for covering

7  those deductions, and the Payroll and Benefits Supervisor responded, "I will get back to you on

8  that. Not sure how we are going to do that." Dkt. No. 36-4 at ECF 2.

9      A waiver is the "voluntary relinquishment of a known right." *Escriba v. Foster Poultry

10  Farms, Inc.*, 743 F.3d 1236, 1244 (9th Cir. 2014) (cleaned up). RBC's response to Mooney's

11  motion to amend his complaint clarifies that while RBC is not seeking—and has never sought—

12  to hold Mooney liable for the payroll deductions it paid on his behalf, it is seeking a setoff in the

13  event that Mooney prevails at trial. Dkt. No. 60 at 9. RBC has been clear from the inception of this

14  litigation that it was seeking a setoff, and its filings continue to assert that right. *Id.*; Dkt. No. 8 at

15  8. Therefore, RBC has not waived its rights to seek a setoff based on the payroll deduction

16  payments it made. Likewise, the fact that it is RBC's standard practice to pay employees for their

17  first 20 days of leave does not waive its right to seek a setoff for the wages it paid Mooney during

18  that time. Therefore, as long as RBC presents sufficient evidence at trial to submit the issue to the

19  jury, the Court will instruct the jury on the setoff issue. *See, e.g., Campbell*, 2012 WL 600725, at

20  *4.

21      Mooney argues that RBC is not entitled to a setoff because RBC did not provide him

22  advance notice detailing the repayment obligation. Dkt. No. 53 at 9–10. During an employee's

23  FMLA leave, the employer must maintain the employee's group health coverage, 29 U.S.C.

24  § 2614(c)(1), and the employee is required to continue to pay his or her share of insurance

premiums, 29 C.F.R. § 825.210(a). If the employer pays the employee's share during the leave, it can seek reimbursement from the employee in one of several ways and "must" provide the employee "with advance notice of the terms and conditions under which these payments will be made." 29 C.F.R. § 825.210(c), (d). Even if RBC failed to provide the required notice, the regulations do not state that the employer is precluded from seeking the repayment if it fails to give the required notice. 29 C.F.R. § 825.300(c) describes the consequences of failing to provide the required notice:

> Failure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered.

29 C.F.R. § 825.300(e). In this case, Mooney does not allege that he suffered any prejudice or negative consequences as a result of RBC's alleged failure to provide him with advance notice of how the repayment would be made.[4] He was not entitled to any greater benefits, such as requiring RBC to pay his portion of his payroll deductions or to paid leave, as a result of taking FMLA leave. 29 U.S.C. §§ 2612(c), 2614(a)(3)(B). Thus, the net effect of RBC's setoff defense is to ensure that Mooney recovers only those damages to which he is entitled and does not receive a windfall.

The Court denies Mooney's motion for summary judgment on affirmative defense 4(b).

## F.  Mooney's Discriminatory Discharge Claim under the WLAD

The WLAD prohibits an employer from discharging an employee because of certain protected characteristics, including a "sensory, mental, or physical disability." Wash. Rev. Code

---

[4] The Court also notes that RBC paid Mooney's portion of his healthcare and dental insurance premiums, Dkt. Nos. 36 at 4, 36-4 at 3, but the regulations requiring notice apply only to group health coverage and not to dental insurance coverage. *See, e.g., Robinson v. Tendercare Mich.*, No. C07-10212, 2008 WL 11355460, *16 (E.D. Mich. 2008); 29 C.F.R. § 825.210(a) (addressing a "group health plan," which is defined by 29 C.F.R. § 825.102 to include health care plans and to exclude individual policies).

ORDER REGARDING THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE RBC'S EXPERT REPORT; GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S RESPONSE; DENYING DEFENDANT'S MOTION TO SEAL - 24

§ 49.60.180(2). Violation of that provision gives rise to a discriminatory discharge claim. *Mackey v. Home Depot USA, Inc.*, 459 P.3d 371, 381 (Wash. Ct. App. 2020). Mooney alleges that RBC violated the WLAD by discharging him because of his depression and related leave. Mooney seeks partial summary judgment on elements of his WLAD claim, Dkt. No. 28 at 1, 16–17, and RBC seeks summary judgment on that claim in its entirety, Dkt. No. 34.

Where, as here, an "employee lacks direct evidence [of discrimination], Washington has adopted the three step evidentiary burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) for discriminatory discharge claims." *Mackey*, 459 P.3d at 381. Under that framework, Mooney first must establish a prima facie case of discriminatory discharge by showing that he was (1) within a statutorily protected class, (2) discharged by the defendant, and (3) doing satisfactory work. *Id*.

Once the plaintiff establishes a prima facie case, the burden shifts to the employer, who must "articulate a legitimate, nondiscriminatory reason" for the discharge. *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 404 P.3d 464, 471 (Wash. 2017) (cleaned up). The employer need not persuade the court that it was actually motivated by the nondiscriminatory reason, only that the employer's evidence, if "taken as true, would *permit* the conclusion that there was a nondiscriminatory reason[.]" *Id.* at 473 (cleaned up). If the employer meets that burden, the employee must produce sufficient evidence showing that its alleged nondiscriminatory reason for the discharge was a pretext. *Id.* at 471. An employee satisfies this "pretext prong" by "offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Id.* (cleaned up). An employer's proffered nondiscriminatory reason is pretextual if it (1) has no basis in fact, (2) was not really a motivating factor for the decision, (3) was not temporally connected to the adverse employment

action, or (4) was not a motivating factor in employment decisions for other employees in the same circumstances. *Scrivener v. Clark Coll.*, 334 P.3d 541, 546–47 (Wash. 2014) (en banc).

Summary judgment for an employer is rarely appropriate in a discriminatory discharge case "because of the difficulty of proving discriminatory motivation." *Mikkelsen*, 404 P.3d at 471. "When the record contains reasonable but competing inferences of both discrimination and nondiscrimination, the trier of fact must determine the true motivation." *Id.* (internal citation and quotation marks omitted). To avoid summary judgment, "the plaintiff needs to show only that a reasonable jury could find that discrimination was a substantial factor in the employer's adverse employment action." *Id.* Courts will, however, grant summary judgment against an employee who "fails to raise a genuine issue of fact on one or more prima facie elements." *Johnson v. Chevron U.S.A., Inc.*, 244 P.3d 438, 443 (Wash. Ct. App. 2010); *see also Marquis v. City of Spokane*, 922 P.2d 43, 48 (Wash. 1996) (to survive summary judgment, the employee "must do more than express an opinion or make conclusory statements" and "must establish specific and material facts to support each element of his or her prima facie case").

### 1. Mooney's Motion for Partial Summary Judgment

Mooney moved for summary judgment only on two elements of his WLAD claim: that he has a disability as defined by the WLAD, and that he was able to perform the essential functions of his job. Dkt. No. 28 at 1, 16–17. In its response, RBC does not directly contest these elements, and instead urges the Court to grant its summary judgment motion on Mooney's WLAD claim. Dkt. No. 46 at 18–19.

Because RBC does not contest that Mooney has a disability as defined by the WLAD, *see* Wash. Rev. Code. § 49.60.040(7), and because the evidence in the record supports that Mooney has such a disability, *see, e.g.*, Dkt. Nos. 37-15, 37-17, the Court grants Mooney's motion for summary judgment on that element of his WLAD claim.

With respect to the second element—whether Mooney was able to perform the essential functions of his job—the Court finds that there is a genuine issue of material fact that precludes summary judgment. *See, e.g.*, Dkt. Nos. 37-13, 37-15, 37-17; Dkt. No. 54 at 12. The evidence thus "presents a sufficient disagreement to require submission to a jury," *Anderson*, 477 U.S. at 251–52, and the Court denies Mooney's motion for summary judgment on that element.

### 2. RBC's Motion for Summary Judgment

Because the parties do not dispute that Mooney has a disability and was discharged by RBC, the Court begins its analysis of RBC's summary judgment motion with whether Mooney was performing satisfactory work.

### a. *Whether Mooney Was Performing Satisfactory Work*

The parties dispute whether Mooney was performing satisfactory work. RBC argues that Mooney was on a PIP and repeatedly counseled about his failure to write ROCs, which Mooney concedes were important. According to RBC, there was never a period of sustained, consistent, and acceptable ROC reports from Mooney, Dkt. No. 37-2 at 187–188, and he did not receive a pay increase in January 2020 because of his failure to consistently write ROCs, Dkt. 59-5 at 1. Mooney contends that after his PIP ended in May 2019, he improved to the point that Talley was no longer reminding him to complete that task or admonishing him that he was not meeting expectations. Dkt. No. 54 at 4; Dkt. No. 56 at 1.

Although it is undisputed that Mooney was on a PIP in early 2019, there is conflicting evidence in the record regarding whether his performance had improved to a satisfactory level in the period of time closer to his termination. *See, e.g., McElwain v. Boeing Co.*, 244 F. Supp. 3d 1093, 1098 (W.D. Wash. 2017) (noting that an employee must show that he was performing satisfactorily "during the time leading up to his termination"). Mooney disputes that he failed to meet expectations regarding the ROCs after the PIP ended. Dkt. No. 56 at 1. Talley wrote in

September 2019 that he was glad to see Mooney writing the reports, and there is no evidence that Talley counseled Mooney about any deficiency in writing ROCs during the PIP period through September 3, 2019. *Id.*; Dkt. No. 55-1 at 76–78.

Moreover, even if Mooney's ROC writing continued to be deficient, the evidence does not conclusively demonstrate that RBC considered his performance to be unsatisfactory. RBC awarded Mooney a $4,000 discretionary bonus in October 2019, and those bonuses were typically performance related. Dkt. No. 55-1 at 26, 33; *see also Holtz v. Skanska U.S.A., Inc.*, No. 13-5985-RJB, 2014 WL 5470619, at *6 (W.D. Wash. Oct. 28, 2014) (holding that an issue of material fact existed regarding performance where the employee had received a bonus). And unlike in *Larson v. Cent. Wash. Univ.*, 14 Wash. App. 2d 1022 (2020) (unpublished), the case on which RBC relies,[5] RBC did not consider discharging Mooney based on his performance, suggesting that his performance had not fallen to an unsatisfactory level. Dkt. No. 55-9 at 53. A reasonable jury could conclude that based on those facts, Mooney's performance was "satisfactory" if not perfect.[6] Therefore, there is a dispute of fact precluding summary judgment on this issue.

b.   *Legitimate Nondiscriminatory Reason*

RBC has articulated a legitimate, nondiscriminatory reason for Mooney's discharge: Mooney was discharged because of the company's reduction in force. Dkt. No. 55-9 at 120. Mooney does not dispute that RBC determined that it needed to institute a RIF based on business

---

[5] It is not appropriate to rely on unpublished Washington state court decisions. *See, e.g., Cont'l W. Ins. Co. v. Costco Wholesale Corp.*, No. C10-1987 RAJ, 2011 WL 3583226, at *4 (W.D. Wash. Aug. 15, 2011) ("Because Washington courts have made the judgment that 'unpublished' state court decisions should not shape their decisions, this court follows their lead.") (citing Wash. GR 14.1).

[6] Mooney also contends that his deficient report writing in November and December 2019 was caused by his experiencing "depressive illness symptoms," which RBC should have accommodated. Dkt. No. 54 at 12. The Court need not reach that issue because Mooney has not asserted a failure to accommodate claim. In the same vein, Mooney's response to RBC's motion for summary judgment argues that RBC retaliated against him for taking leave as a disability-related accommodation. *Id.* at 15–17. However, Mooney has not pled a retaliation claim under the WLAD, *see* Dkt. No. 1-2, so the Court does not address that argument.

ORDER REGARDING THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE RBC'S EXPERT REPORT; GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S RESPONSE; DENYING DEFENDANT'S MOTION TO SEAL - 28

realities, including the COVID-19 pandemic and its resulting impact on the business, or that RBC laid off numerous other employees too. A reduction in force is a legitimate, non-discriminatory reason for termination under the WLAD. *Martinez Patterson v. AT&T Servs. Inc.*, No. C18-1180-RSM, 2021 WL 3617179, at *8 (W.D. Wash. Aug. 16, 2021) (citing *Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1212-13 (W.D. Wash. 2018), *aff'd*, 777 F. App'x 886 (9th Cir. 2019)).

Mooney cites numerous reasons to undermine RBC's stated reason for his termination, but those issues go to the issue of whether RBC's proffered reason was pretextual, not to whether it has offered a legitimate reason. Moreover, RBC's burden at this stage is not heavy; it must only articulate a legitimate, nondiscriminatory reason that, if "taken as true, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Mikkelsen*, 404 P.3d at 473 (cleaned up). RBC has done so.

c.   *Existence of Pretext*

Because RBC demonstrated a legitimate, nondiscriminatory reason for Mooney's discharge, the burden shifts back to him to demonstrate either that (1) RBC's reason for terminating him is pretextual or (2) although RBC's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating RBC. *Mackey*, 459 P.3d at 382.

RBC argues that its nondiscriminatory reason has a basis in fact; it did not invent a company-wide RIF, which impacted hundreds of its employees, to cover up discrimination. Dkt. No. 33 at 12–13. It also argues that the RIF was a motivating factor for Mooney's discharge. *Id.* at 13–14. Although Mooney was laid off the day he returned from medical leave, RBC repeatedly counseled him on his ROCs before its employees had any knowledge of Mooney's depression, and Mooney's leave also coincided with the start of the COVID-19 pandemic, which undisputedly caused significant business disruptions. *Id.* at 13–14. RBC further asserts that Mooney's termination was consistent with the cost-saving measures the company sought to implement. *Id.*

at 15. Other existing employees covered his territory for approximately six months until another internal candidate could fill the role. *Id.* at 13 n.51; Dkt. No. 35-1 at 138-139. That employee's salary was 20% less than Mooney's had been, and he continued to fulfill other duties while also covering Mooney's territory. Dkt. No. 58 at 9; Dkt. No. 37-28 at 13–14, 25.

However, a reasonable jury could conclude that some facts in the record demonstrate that RBC's reason for the discharge was pretextual or that discrimination was a substantial factor. Although Ross's April 2, 2020 memorandum set forth factors to determine who would be laid off, the record is devoid of any explanation, from Ross or anyone else, about how RBC applied those factors to Mooney or why Mooney was chosen to be laid off rather than furloughed. To shore up its position, RBC has included a report from its expert noting that based on fiscal year 2019 sales revenue, Mooney ranked 12th out of the 13 industrial engineers and his salary was higher than five other employees who had higher sales. Dkt. No. 52-2 at 9–10. But the record does not demonstrate whether RBC actually considered those facts at the time it made the decision to discharge Mooney.

In addition, while RBC's need to cut costs is undisputed, no other salesperson from the Industrial Sales group was discharged as part of the RIF in April 2020; instead, they were all placed on furlough with each salesperson taking one day per week off. Dkt. No. 55-11 at 95, 102–104; Dkt. No. 59-9 at 64–65. RBC's witnesses stated that they needed someone to continue to cover Mooney's territories. *See, e.g.*, Dkt. No. 35-1 at 133. There is no explanation in the record why, given the need for coverage, Mooney was not retained and partially furloughed like the other employees were. Finally, Ross reached out to another employee while Mooney was on leave to determine if that employee might be interested in Mooney's position. While Ross was not "actively looking to let Mr. Mooney go and replace him with somebody," he did explore the possibility of replacing Mooney while he was on leave for his medical condition. Dkt. No. 37-20 at 97–99, 102–03. And when Ross informed Talley that he had terminated Mooney, Talley responded that

1   "getting someone else in there is best for the West Region." Dkt. No. 55-12 at ECF 2. Based on

2   those facts, a reasonable jury could conclude that RBC's stated reason was pretextual.

3       Because there are disputed issues of material fact, the Court denies RBC's motion for

4   summary judgment on Mooney's WLAD claim.

5   **G.  Mooney's FMLA Claims**

6       The FMLA guarantees eligible employees 12 weeks of leave in a one-year period following

7   certain events, including the employee's own serious health condition. 29 U.S.C. § 2612(a)(1).

8   Equally important, the FMLA provides employees with the right to return to their jobs or an

9   equivalent after using protected leave. *See, e.g., Sanders v. City of Newport*, 657 F.3d 772, 777

10  (9th Cir. 2011) (citing 29 U.S.C. § 2614(a)). The FMLA makes it unlawful for an employer to

11  "interfere with, restrain, or deny the exercise of" these rights, and violators are subject to

12  consequential damages and appropriate equitable relief. 29 U.S.C. §§ 2615(a)(1), 2617(a)(1).

13      Mooney's FMLA claim is premised on two separate interference theories: (i) RBC

14  interfered with his reinstatement rights by delaying his right to return to work until he presented a

15  fitness-for-duty certification, and (ii) RBC interfered with his rights by discharging him because

16  he extended his FMLA leave.[7] Dkt. No. 1-2; Dkt. No. 28 at 14–16; Dkt. No. 53 at 2 n.1. Mooney

17  moved for summary judgment only on the elements of his theory regarding his right to

18  reinstatement. Dkt. No. 28 at 1, 10–16; Dkt. No. 53 at 2 n.1. He states that he did not move for

19  summary judgment on the unlawful termination interference claim because there is a genuine issue

20  of material fact on that theory. Dkt. No. 53 at 2 n.1. RBC has moved for summary judgment on

21  both theories. Dkt. Nos. 33, 34.

22      To prove a prima facie claim of interference under the FMLA, an employee must show that

23

24  ---
[7] The FMLA also recognizes a retaliation or discrimination theory of recovery, but Mooney is asserting only an interference claim. *See, e.g., Sanders*, 657 F.3d at 777.

ORDER REGARDING THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION TO STRIKE RBC'S EXPERT REPORT; GRANTING PLAINTIFF'S MOTION TO
STRIKE DEFENDANT'S RESPONSE; DENYING DEFENDANT'S MOTION TO SEAL - 31

(1) he was eligible for FMLA protections; (2) his employer was covered by the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee provided notice of his intent to take leave; and (5) the employer denied him FMLA benefits to which he was entitled. *Sanders*, 657 F.3d at 778.

As a general matter, "employer actions that deter employees' participation in protected activities constitute 'interference' or 'restraint' with the employees' exercise of their rights." *Bachelder*, 259 F.3d at 1124. Accordingly, the Ninth Circuit has interpreted "interference" as "'engaging in activity that tends to chill an employee's freedom to exercise' FMLA rights." *Olson v. United States by & through Dep't of Energy*, 980 F.3d 1334, 1338 (9th Cir. 2020) (quoting *Bachelder*, 259 F.3d at 1123). "[T]he inquiry for interference is whether the employer's conduct makes an employee less likely to exercise their FMLA leave rights because they can expect to be fired or otherwise disciplined for doing so." *Id.* (cleaned up). An employer's use of "the taking of FMLA leave as a negative factor in employment actions" violates the FMLA. *Bachelder*, 259 F.3d at 1124; *see also Martinez Patterson*, 2021 WL 3617179, at *11 (explaining that interference can include causing the employee to suffer an adverse employment action as a consequence of taking FMLA leave). The Ninth Circuit has declined to apply the burden shifting framework recognized in *McDonnell Douglas* to FMLA interference claims; rather, an employee can prove an interference claim "by using either direct or circumstantial evidence, or both." *Sanders*, 657 F.3d at 778 (cleaned up).

### 1.   Mooney's Claim that RBC Interfered with His Reinstatement Rights

There are no genuine issues of material fact regarding the first four elements of Mooney's claim that RBC interfered with his reinstatement rights. RBC does not dispute that these elements are satisfied, Dkt. No. 46 at 9–18; Dkt. No. 33 at 21–23; Dkt. No. 58 at 11–12, and there is no genuine issue of material fact with respect to these elements, *see id.*; Dkt. No. 28 at 10–13; Dkt.

No. at 2. Therefore, the Court grants Mooney's motion for partial summary judgment on the first four elements of his FMLA claim.

The parties' dispute focuses on whether Mooney has met the fifth element by demonstrating that RBC denied him benefits to which he was entitled. Mooney contends that RBC interfered with his FMLA reinstatement rights by failing to comply with its obligation to timely notify him that he was required to supply a fitness for duty certification prior to returning to work, thereby delaying his reinstatement by approximately two weeks while he obtained the requested certification. Dkt. No. 28 at 13–16. RBC contends that it properly notified Mooney of its certification requirement, and even if it hadn't, any late notice did not constitute an actionable interference claim because it did not prejudice Mooney. Dkt. No. 46 at 10–18.

The FMLA provides a few limited exceptions to an employee's right to job restoration following FMLA leave. As relevant here, the statute provides that as "a condition of [job] restoration" for an employee who has taken leave for his or her own serious health condition, "the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work[.]" 29 U.S.C. § 2614(a)(4). The regulations implementing the statute provide that an employer "may delay restoration to employment until an employee submits a required fitness-for-duty certification unless the employer has failed to provide the notice required in paragraph (d) of this section." 29 C.F.R. § 825.312(e).[8] Once the employer has enough information to determine whether the leave is being taken for an FMLA-qualifying reason, "the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five

---

[8] The FMLA gives the Secretary of Labor rule-making authority and directs the Secretary to issue regulations "necessary to carry out" the Act. 29 U.S.C. § 2654; *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (2002). The regulations "are entitled to deference under *Chevron USA, Inc. v. NRDC.*, 467 U.S. 837, 843-44, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984)." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003).

business days absent extenuating circumstances." 29 C.F.R. § 825.300(d)(1). Such notice must advise the employee either in the written designation notice or orally whether "the employer will require a fitness-for-duty certification to return to work," and it must be provided "no later than with the designation notice." 29 C.F.R. § 825.312(d); 29 C.F.R. § 825.300(d)(3). The regulations further provide that "[f]ailure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e).

a.   *Whether RBC's Notice was Timely*

RBC contends that DePaola orally notified Mooney about the certification requirement at the time the notice was due, Dkt. No. 46 at 10–11; Dkt. No. 33 at 22, but Mooney contests this assertion, Dkt. No. 53 at 3. As this Court has discussed in the context of Mooney's motion for summary judgment on RBC's affirmative defense of comparative fault, there is a genuine issue of material fact regarding whether RBC timely notified Mooney that he needed a fitness for duty certification from a physician before he could return to work. It is not undisputed—as Mooney contends, Dkt. No. 53 at 7—that neither DePaola nor the Payroll and Benefits Supervisor told Mooney about the certification requirement at the time he took leave. DePaola avers that it was her general practice to inform employees at the start of their FMLA leave that a return to work certification is required, and that she believes she informed Mooney of this requirement at the start of his leave. Dkt. No. 36 at 3. Mooney contends that he did not receive any notice until March 20, 2020. Dkt. No. 30 at 2. This threshold genuine issue of material fact precludes partial summary judgment on the fifth element of Mooney's FMLA interference claim with respect to his reinstatement right, and his motion on that element is accordingly denied.

Whether this issue also dooms RBC's motion for summary judgment on Mooney's FMLA interference claims depends on whether, even assuming RBC's notice was untimely, Mooney was

1   prejudiced by the late notice.

2                    b.  *Whether Any Untimely Notice Prejudiced Mooney*

3          Mooney argues that RBC's failure to notify alone constitutes interference with his FMLA

4   rights. Dkt. No. 28 at 15; Dkt. No. 53 at 8–9. However, the Ninth Circuit has held that the "failure

5   to provide notice does not result in a standalone cause of action; rather, 'an employee must prove,

6   as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying

7   his or her exercise of FMLA rights,'" and cannot obtain relief "'unless the employee has been

8   prejudiced by the violation.'" *Olson*, 980 F.3d at 1338 (quoting *Ragsdale*, 535 U.S. at 89).

9   Therefore, even if the employer has failed to comply with the notice provisions in the regulations,

10  the FMLA "provides no relief unless the employee has been prejudiced by the violation."

11  *Ragsdale*, 535 U.S. at 89.

12         RBC contends that even if it failed to timely notify Mooney of its certification requirement,

13  Mooney was not prejudiced by the delay. Dkt. No. 33 at 22–23; Dkt. No. 58 at 12. However, a

14  disputed issue of fact exists regarding whether RBC or Mooney was responsible for the delay in

15  obtaining the certification (and the resulting delay in Mooney's return to work). Under RBC's

16  version of the facts, it notified Mooney before March 20, 2020, in plenty of time for him to obtain

17  the certification prior to his intended return to work date of March 23, 2020. Dkt. No. 36 at 3.

18  Under Mooney's version of the facts, RBC did not notify him of the requirement to obtain the

19  certification until Friday, March 20, 2020, which was too late to allow him to obtain the

20  certification before Monday, March 23. Dkt. No. 30 at 2. If the delay was indeed RBC's fault, it

21  would be reasonable to conclude that being denied wages during a delay in return to work (as

22  Mooney was from March 23, 2020 to April 6, 2020) caused by an employer's untimely notification

23  of its certification requirement would tend to chill employees from seeking leave under the FMLA.

24  *See, e.g.*, *United States v. Hawaii*, No. C14-00214 JMS-RLP, 2015 WL 5063956, at *14 (D. Haw.

Aug. 26, 2015) ("The court has no difficulty finding that withholding an employee's wages for weeks and/or months would reasonably likely deter someone from engaging in protected activity."). Such facts could show that Mooney was prejudiced by RBC's actions. Therefore, the delay in reinstatement, to the extent it was caused by RBC, could constitute interference with Mooney's FMLA rights. Moreover, apart from any monetary damages (or setoff), the facts in this case would allow a reasonable jury to conclude that RBC effectively refused to allow Mooney to return to work at the end of his FMLA leave, and that such action would "tend to chill an employee's freedom to exercise FMLA rights," *Olson*, 980 F.3d at 1338, thus interfering with his right to reinstatement following protected leave. Because key facts are disputed, the Court cannot grant summary judgment to RBC on Mooney's FMLA reinstatement interference claim or to Mooney on the fifth element of that claim.

The Court also denies RBC's request to limit Mooney's damages to the time period between March 23 (Mooney's intended return to work date) and March 26 (the date he obtained a certification for an unrelated medical condition). Dkt. No. 46 at 16. The parties agree that Mooney was required to provide a certification relating to his depression since that was the condition for which he took leave. However, there is no evidence in the record indicating whether the doctor's submission of the wrong certification was Mooney's fault or instead an administrative mistake on the part of the doctor's office. *See, e.g.*, Dkt. No. 29-12 at ECF 2 (indicating that Mooney requested a certification by calling the clinic on March 20, 2020, and the doctor who saw him for an unrelated condition—not the doctor who saw him for depression—submitted a certification on March 23). And even assuming it was Mooney's fault, there is no evidence that the doctor who saw him for depression would have provided a certification by March 26, or that RBC would then have immediately allowed him to return to work on the same day. In the absence of evidence, the Court cannot determine as a matter of law what would have occurred in that counterfactual scenario, so

1    RBC's request for this limitation is denied.

2        Based on the disputed issues of fact, the Court denies RBC's motion for summary judgment

3    on Mooney's FMLA reinstatement interference claim.

4            2.   Mooney's Claim that RBC Interfered with His FMLA Rights by Discharging
                 Him
5
     RBC seeks summary judgment on Mooney's FMLA claim in its entirety, including his

6    second theory that RBC interfered with his rights by discharging him for taking FMLA-protected

7    leave. Dkt. No. 33 at 20–23; Dkt. No. 58 at 11–12.

8        As discussed above, employers interfere with employees' FMLA rights if they use FMLA-

9    protected leave as a negative factor in employment decisions. *Bachelder*, 259 F.3d at 1124 (citing

10   29 C.F.R. § 825.220(c)). At the same time, "[t]he FMLA does not provide employees with

11   immunity from termination." *Jergens v. Marias Med. Ctr.*, No. C20-15-GF-BMM, 2021 WL

12   3270477, at *4 (D. Mt. 2021); *see also* 29 U.S.C. § 2614(a)(3)(B) (the FMLA does not entitle

13   employees to "any right, benefit, or position" that they would not have been entitled to had they

14   not taken leave). Applying those principles, Mooney was not immune from the RIF because he

15   had taken FMLA leave, but RBC could not consider his taking FMLA leave as a negative factor

16   in selecting him for layoff. *See, e.g.*, *Liu*, 347 F.3d at 1136–37 (explaining that at trial, plaintiff

17   could prevail if she could demonstrate by a preponderance of the evidence that her taking FMLA-

18   protected leave constituted a negative factor in the decision to terminate her employment).

19       RBC argues that it did not terminate Mooney when he extended his leave in February 2020,

20   and contends that the timing of Mooney's termination on the day he returned from leave does not

21   raise a genuine factual issue because it coincided with the end of RBC's fiscal year and the RIF.

22   Dkt. No. 33 at 21–22; Dkt. No. 58 at 12 n.42. RBC also argues that it allowed Mooney to extend

23   his leave and paid him more in wages and benefits than was required during his leave, undermining

24

1    any inference that it viewed his leave negatively or used it as a factor in the termination decision.

2    Mooney responds that all "the circumstantial evidence and inferences" surrounding his discharge

3    create a genuine issue of material fact as to whether the discharge "was substantially motivated by

4    him extending his FMLA medical leave." Dkt. No. 54 at 18.

5         The Court agrees that the factors set forth above regarding the issue of pretext for Mooney's

6    WLAD claim also raise issues of material fact regarding Mooney's second FMLA interference

7    theory, including but not limited to the absence of an explanation about why Mooney was selected

8    for layoff and Ross's decision to contact another employee to explore filling Mooney's roll after

9    Mooney extended his FMLA leave. Dkt. No. 29-8 at 97–99 (Ross talked with Curran in March

10   2020 about replacing Mooney with Carroll, and asked Curran to send him Carroll's resume

11   because he "needed coverage"). In addition, the fact that Mooney was discharged the day he

12   returned from FMLA leave supports the conclusion that a genuine issue of material fact exists.

13   *See, e.g.*, *Xin Liu*, 347 F.3d at 1137 (temporal proximity between employee's leave and termination

14   "provides supporting evidence of a connection between the two events").

15        Therefore, there is a triable issue of material fact regarding whether RBC considered

16   Mooney's FMLA leave as a factor in his termination, and the Court denies RBC's motion for

17   summary judgment on this claim.

18        **H.  Mooney's WPFMLA Claim**

19        Like the FMLA, the WPFMLA makes it unlawful for an employer to (a) "[i]nterfere with,

20   restrain, or deny the exercise of, or the attempt to exercise, any valid right" under the WPFMLA

21   or (b) "[d]ischarge or in any other manner discriminate against any employee for opposing any

22   practice made unlawful" by the WPFMLA. Wash. Rev. Code § 50A.40.010(1). Because the

23   WPFMLA "mirrors its federal counterpart," courts "construe its provisions in a manner consistent

24   with similar provisions of the FMLA." *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264,

1269 (W.D. Wash. 2013). RBC contends that Mooney cannot establish a claim under the WPFMLA for the same reasons he cannot do so under the FMLA, but as set forth above, genuine issues of material fact preclude summary judgment regarding Mooney's FMLA claim.

RBC also argues that unlike the FMLA, the WPFMLA does not require employers to notify employees of the return to work certification requirement within a certain period of time. Wash. Rev. Code § 50A.35.010(4) ("As a condition of restoration . . . for an employee who has taken medical leave, the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the employee's health care provider that the employee is able to resume work."). But the lack of a specific deadline does not leave employers free to interfere with employees' FMLA rights. As RBC concedes, the WPFMLA requires job restoration (like its federal counterpart). Wash. Rev. Code § 50A.35.010(1). Even without a notification deadline, a reasonable jury could conclude that an employer who delays an employee's return to work by surprising him with a certification requirement at the eleventh hour has interfered with his WPFMLA reinstatement rights. There is an issue of material fact regarding whether RBC did so here. Accordingly, the Court denies RBC's motion for summary judgment regarding Mooney's WPFMLA claim.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court:

1.    GRANTS IN PART and DENIES IN PART Mooney's motion for summary judgment on RBC's affirmative defenses, Dkt. No. 26, by dismissing RBC's affirmative defenses 1, 2, 5, and 6, and denying the remainder of that motion;

2.    GRANTS IN PART and DENIES IN PART Mooney's motion for summary judgment on his FMLA and WLAD claims, Dkt. No. 28, by granting the motion as to the first four elements of his FMLA claim and the first element of his WLAD

1    claim and denying the remainder of that motion;

2    3.    DENIES RBC's motion for summary judgment on all claims, Dkt. No. 33;

3    4.    DENIES Mooney's motion to strike RBC's expert report and references thereto,

4          Dkt. No. 42;

5    5.    GRANTS Mooney's motion to strike RBC's response, Dkt. No. 51; and

6    6.    DENIES RBC's motion to seal, Dkt. No. 32. Pursuant to Local Civil Rule 5(g)(6),

7          the Clerk of the Court is directed to unseal Docket Entries 33 and 33-1.

8    Dated this 5th day of April, 2022.

9

10                                            Lauren King
                                              United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER REGARDING THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION TO STRIKE RBC'S EXPERT REPORT; GRANTING PLAINTIFF'S MOTION TO
STRIKE DEFENDANT'S RESPONSE; DENYING DEFENDANT'S MOTION TO SEAL - 40