1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD MOONEY,

              Plaintiff,

    v.

ROLLER BEARING COMPANY OF
AMERICA, INC.,

              Defendant.

CASE NO. C20-01030-LK

ORDER GRANTING IN PART
AND DENYING IN PART THE
PARTIES' MOTIONS IN LIMINE

## I.      INTRODUCTION

This matter comes before the Court on the parties' motions in limine. Dkt. Nos. 64, 67. The Court issues the following rulings, which may be revisited if necessary during trial.

## II.      DISCUSSION

**A.    Legal Standard**

Parties may file motions in limine before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Rulings in limine are not binding on the court, and the court may amend, renew, or reconsider such rulings in response to developments at trial. *Id.* at 41–42.

ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS IN LIMINE - 1

1   To decide motions in limine, the Court considers whether evidence "has any tendency to

2   make a fact more or less probable than it would be without the evidence," and whether "the fact is

3   of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is generally

4   admissible. Fed. R. Evid. 402. However, the Court may exclude relevant evidence for various

5   reasons, including if "its probative value is substantially outweighed by a danger of one or more

6   of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

7   time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

8   **B.      Uncontested Motions in Limine**

9       The parties have submitted nine agreed or uncontested motions in limine. They propose

10  the following evidentiary limitations:

11      1.  Mooney's First Motion in Limine. Exclude evidence regarding Plaintiff Richard
12          Mooney's receipt of unemployment benefits because it is not relevant, likely to cause
            confusion, and unfairly prejudicial under Federal Rules of Evidence 402 and
13          403, and because such evidence is barred by the collateral source rule. Dkt. No. 64
            at 2.

14      2.  Mooney's Second Motion in Limine. Exclude evidence regarding Mooney's
15          receipt of social security benefits because it is not relevant, likely to cause
            confusion, and unfairly prejudicial under Federal Rules of Evidence 402 and 403,
16          and because such evidence is barred by the collateral source rule. Dkt. No. 64 at 2.

17      3.  Mooney's Third Motion in Limine. Exclude evidence regarding Mooney's receipt
18          of paid medical leave under the Washington Paid Family Medical Leave Act
            ("WPFMLA") because it is not relevant, likely to cause confusion, and unfairly
            prejudicial under Federal Rules of Evidence 402 and 403. Dkt. No. 64 at 2.

19      4.  Mooney's Fourth Motion in Limine. Exclude evidence related to Defendant Roller
20          Bearing Company of America, Inc. ("RBC")'s Severance Package Offer, including
            Mr. Mooney's acceptance and then revocation of the offer, because it is not relevant
21          and unfairly prejudicial under Federal Rules of Evidence 402 and 403. Dkt. No. 64
            at 2.

22      5.  Mooney's Fifth Motion in Limine. Exclude information and documents not
23          previously produced during discovery, including documents related to Mr.
            Mooney's termination being part of a Reduction in Force, under Federal Rule of
            Civil Procedure 37. Dkt. No. 64 at 2.

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

6.    <u>RBC's First Motion in Limine</u>. Each party must notify the other of the witnesses and depositions they intend to call or use by the start of the court day prior to the day the party will call the witness or use the deposition. Dkt. No. 67 at 6–7.

7.    <u>RBC's Second Motion in Limine</u>. Exclude evidence of Mooney's litigation expenses, contingency fees, and/or taxes because it is irrelevant under Federal Rule of Evidence 402 and unduly prejudicial, confusing, and misleading under Federal Rule of Evidence 403. Dkt. No. 67 at 7–9.

8.    <u>RBC's Third Motion in Limine</u>. Exclude non-party lay witnesses from the courtroom under Federal Rule of Evidence 615, and "admonish all witnesses who testify or are present in the courtroom to not discuss the case, or describe what occurred in the courtroom, with non-party lay witnesses that have not yet testified and been dismissed by the Court." Dkt. No. 67 at 9–10. Experts will not be excluded from the courtroom and will instead be permitted to observe testimony.

9.    <u>RBC's Fourth Motion in Limine, Part A</u>. Consistent with Federal Rules of Evidence 402 and 403, the Plaintiff will not argue or suggest that the jurors "send a message" to Defendant, punish Defendant, "teach the Defendant a lesson," put themselves in Mooney's position, or otherwise urge the jurors to reach a verdict on impermissible grounds through the use of inflammatory arguments and phrases.

Pursuant to the parties' agreement and their arguments regarding the legal basis for imposing the above evidentiary limitations, the Court grants their uncontested motions in limine, Dkt. No. 64 at 2; Dkt. No. 67 at 6–12, with the caveat that RBC's third motion in limine to exclude non-party lay witnesses is granted only as to non-exempt witnesses. *See* Fed. R. Evid. 615 (listing four categories of exempt witnesses). Non-exempt witnesses subject to recall will be required to exit the courtroom until called back or excused, while excused witnesses may exit or remain in the courtroom following their testimony at their election. Counsel must ensure that there are no prospective non-exempt witnesses in the courtroom during the testimony of another witness. In addition, the parties must propose joint agreed language to the Court at the pretrial conference with respect to the admonishment to witnesses not to discuss the case with non-exempt witnesses who have not yet testified or who are subject to recall.

ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS IN LIMINE - 3

**C.      Mooney's Contested Motions in Limine**

      1.      <u>Mooney's Sixth Motion in Limine: Testimony of William Skilling</u>

Mooney moves to exclude the testimony of RBC's vocational expert, William Skilling, on two grounds: (1) Skilling's opinion that Mooney's job search was not reasonable is not helpful to the trier of fact, and (2) his opinion that Mooney should have found comparable employment within three to six months with a reasonable job search "is speculative and not based on any reliable principles or methods." Dkt. No. 64 at 3.

The admission or exclusion of expert testimony is within the broad discretion of the trial court. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, an expert witness can testify about his or her opinion on a matter if:

> (a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A district court must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). However, "[i]n evaluating proffered expert testimony, the trial court is a gatekeeper, not a fact finder." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (cleaned up). Although the court should close the gate to unreliable nonsense opinions, the court should not exclude opinions merely because they are impeachable. *Id.* at 1044. "Simply put, '[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'" *Id.* (quoting *Alaska Rent–A–Car*, 738 F.3d 960, 969–70 (9th Cir. 2013)).

1    To establish that Mooney failed to mitigate his damages, RBC bears the ultimate burden

2    of proving that (1) during the time in question, there were substantially equivalent jobs available

3    that Mooney could have obtained, and (2) that he failed to use reasonable care and diligence in

4    seeking such a position. *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995);

5    *Erickson v. Biogen, Inc.*, 417 F. Supp. 3d 1369, 1386–87 (W.D. Wash. 2019). Mooney does not

6    dispute that there were substantially equivalent jobs available. Dkt. No. 64 at 4. Mooney does

7    dispute Mr. Skilling's opinions that he failed to use reasonable care and diligence in seeking a

8    position and that if he had done so, he would have secured a comparable position within three to

9    six months. *See id.*; Dkt. No. 50-1 at 11–13.

10    Mooney argues that the Court should exclude Skilling's opinion that Mooney could have

11    secured comparable employment within three to six months "because it is speculative and not

12    based on reliable principles or methods." Dkt. No. 64 at 5. In making that argument, Mooney relies

13    on and cites to *Daubert*. *Id.* at 3–4. But "motion[s] to exclude expert testimony for failure to satisfy

14    Daubert v. Merrell Dow Pharmaceuticals, Inc. and its progeny" were due months ago, by the

15    January 18, 2022 dispositive motion deadline. LCR 16(b)(4); Dkt. No. 15. Mooney received

16    RBC's expert disclosures on October 18, 2021, and he filed this motion on April 11, 2022. Dkt.

17    Nos. 64, 79-5. Mooney offers no explanation for missing the deadline to file *Daubert* motions and

18    has not sought relief from the deadline. The Court declines to consider Mooney's untimely

19    arguments relating to *Daubert*. *See Gill v. Magan*, No. C19-860-MJP, 2021 WL 1589521, at *1

20    (W.D. Wash. Apr. 23, 2021); *Pacheco v. United States*, No. C15-1175-RSL, 2020 WL 3050143,

21    at *1 (W.D. Wash. June 8, 2020).

22    Mooney also argues that the court should exclude Skilling's opinion because it "does not

23    assist the trier of fact with the mitigation of damages issue." Dkt. No. 64 at 4. Mooney contends

24    that it is "within the knowledge and experience of ordinary lay people" to determine whether he

used reasonable care and diligence to find a new job. *Id.* The Court disagrees. Skilling's opinions focus on Mooney's reasonableness in light of factors outside the knowledge or experience of a layperson, including (1) the availability of specific job positions (sales manager, sales engineer, and sales representative positions) during the COVID-19 pandemic and (2) whether Mooney's background and experience made him qualified for those available positions. *See* Dkt. No. 50-1 at 6–13, 18–385. The opinions will therefore be helpful to the jury. At trial, Mooney will be permitted to cross-examine Skilling about his methodology and the reliability of his opinions. *Johnson v. Albertsons, LLC*, No. C18-01678-RAJ, 2020 WL 816015, at *3 (W.D. Wash. Feb. 19, 2020); *see also Hoctor v. Kittitas Cty.*, No. C19-03201-SAB, 2021 WL 6139625, at *3–4 (E.D. Wash. Oct. 19, 2021). This motion in limine is denied.

2. <u>Mooney's Seventh Motion in Limine: Testimony of Anita Willemse</u>

Mooney also seeks to exclude the testimony of RBC's economic expert, Anita Willemse, who is a Certified Public Accountant. In her report, Willemse sets forth three conclusions:

- The economic and industry outlook at the time of [RBC]'s reduction in force was declining with the COVID-19 pandemic.

- [RBC] saw a year over year percentage decline in industrial sales for the first and second quarters of their fiscal year and a slight increase in their third quarter.

- Mr. Mooney ranked 12th out of 13 industrial sales engineers at [RBC] in terms of 2019 sales but was paid more than five other sales engineers who out-performed him.

Dkt. No. 52-2 at 12. It is anticipated that her trial testimony will include the same opinions. Fed. R. Civ. P. 26(a)(2)(B) (expert witness reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them"). Mooney argues that Willemse's testimony should be excluded because (1) it will not assist the trier of fact to understand the evidence or help determine a fact at issue under Rule 702, (2) her opinions are needlessly

1   cumulative and a waste of time, and (3) the unfair prejudice substantially outweighs the minimal

2   probative value under Rule 403. Dkt. No. 64 at 6.

3          Willemse's opinions regarding how Mooney ranked in salary and performance compared

4   to other sales engineers will not help the trier of fact to understand the evidence or determine a fact

5   at issue. *See* Fed. R. Evid. 702(a). The jurors will be able to understand those facts without an

6   expert's opinion. In addition, RBC's own witnesses can testify about Mooney's salary and

7   performance rankings and why he was chosen to be laid off. Therefore, Willemse's opinions about

8   those issues would be cumulative and a waste of time. Fed. R. Evid. 403. The Court grants the

9   motion to exclude Willemse's opinions about Mooney's sales and salary rankings.

10          In contrast, Willemse's opinions about the industry's economic outlook and RBC's 2020

11   sales are economic opinions that are within the realm of an expert and would be helpful to the jury.

12   Dkt. No. 52-2 at 8–9 (describing a decrease in the leading economic index and opining that the

13   pandemic led to reduced demand from manufacturing and other industrial sectors). Although RBC

14   employees can testify about those facts, Mooney accuses RBC of being biased against him, so

15   testimony from someone outside the company could help the trier of fact and would not be

16   cumulative of the testimony of RBC's employees. *See* Dkt. No. 78 at 8 ("to effectively rebut any

17   doubt of bias, RBC should be allowed to present testimony from someone outside of the

18   company"). Moreover, although Mooney does not dispute that RBC's sales were declining for the

19   first and second quarters of 2020, his motion is noticeably devoid of a similar concession regarding

20   Willemse's opinions about RBC's third quarter sales. That testimony is relevant because Mooney

21   argues that RBC's decisions to rehire for Mooney's and Cavender's positions in October 2020

22   undermine RBC's stated reasons for discharging them. Dkt. No. 54 at 15; Dkt. No. 75 at 5.

23   Therefore, the Court denies Mooney's request to exclude Willemse's testimony regarding the

24   industry's economic outlook around the time of the reduction in force and RBC's 2020 sales.

1    In sum, this motion in limine is granted in part and denied in part.

2    **D.    RBC's Contested Motions in Limine**

3        1.    RBC's Fourth Motion in Limine, Part B: "Conscience of the Community"

4        As discussed above in Section II.B.9, the parties have agreed to exclude any arguments

5    asking the jury to "send a message," "teach Defendant a lesson," or "put themselves in plaintiff's

6    shoes." Dkt. No. 67 at 10–12; Dkt. No. 75 at 2. However, they dispute whether Mooney's counsel

7    should be permitted to make statements that the jury is the "conscience of the community." RBC

8    seeks to exclude such statements, arguing that they are improper, inflammatory, and unduly

9    prejudicial under Federal Rules of Evidence 402 and 403. Dkt. No. 67 at 12–13.

10        Mooney argues that it would be premature and improper to preclude his counsel from using

11   the phrase "conscience of the community" without knowing the context of how it might be used.

12   Dkt. No. 75 at 2. Mooney's counsel does not describe how they plan to use the phrase.

13        In general, attorneys are precluded from making "golden rule" arguments—asking jurors

14   to put themselves in a party's shoes—or "reptilian" arguments designed to inflame the jurors'

15   emotions. *See, e.g., Allison v. Smoot Enters.*, No. C17-01598-SU, 2019 WL 5095779, at *3 (D.

16   Ore. Oct. 11, 2019). The Ninth Circuit has held in the context of criminal trials that appeals to the

17   jury to act as the conscience of the community are not impermissible unless they are specifically

18   designed to inflame the jury. *See, e.g.*, *People of Guam v. Quichocho*, 973 F.2d 723, 727 (9th Cir.

19   1992). The Ninth Circuit does not appear to have opined on the issue in a published case in the

20   civil context.

21        In the civil context, district courts in this Circuit usually allow "conscience of the

22   community" statements. *See Jones v. George Fox Univ.*, No. C19-00005-IM, 2021 WL 5259587,

23   at *2–3 (D. Or. Sept. 24, 2021) (denying motion to exclude statements that the jury may act as the

24   "conscience of the community" with the caveat that "Defendant may object during trial to any

such argument 'designed to inflame the jury.'"); *Briscoe v. City of Seattle*, No. C18-262-TSZ, 2020 WL 5938769, at \*2 (W.D. Wash. Sept. 17, 2020) (excluding arguments about "the conscience of the community"); *Smith v. BNSF Ry. Co.*, No. C18-00179-SMJ, 2020 WL 2297798, at \*6 (E.D. Wash. Feb. 21, 2020) ("Plaintiffs' counsel is permitted to make a 'conscience of the community' argument to the extent this argument is not specifically designed to inflame the jury."); *Santiago Salas v. PPG Architectural Finishes, Inc.*, No. C17-1787-RSM, 2019 WL 399029, at \*2 (W.D. Wash. Jan. 31, 2019) (jurors may be asked to act as the "conscience of the community"); *Coachman v. Seattle Auto Mgmt.*, No. C17-187-RSM, 2019 WL 4695660, at \*4 n.3 (W.D. Wash. Jan. 3, 2019) (a plaintiff's single reference to the jury as the "conscience of the community" did not rob defendants of a fair trial); *Coachman v. Seattle Auto Mgmt. Inc.*, No. 17-187-RSM, 2018 WL 4510067, at \*5 (W.D. Wash. Sept. 20, 2018) ("conscience of the community" and "send a message" arguments are appropriate in cases seeking punitive damages); *Campbell v. Garcia*, No. C13-0627-LRH-WGC, 2016 WL 4769728, at \*8 (D. Nev. Sept. 13, 2016) ("conscience of the community" arguments generally constitute improper jury nullification because they encourage jurors to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence); *McGee-Grant v. Am. Family Mut. Ins.*, No. C14-1989-RSM, 2016 WL 9526408, at \*2 (W.D. Wash. Feb. 25, 2016) ("conscience of the community" statements were appropriate where plaintiff's claims involved a "punitive element").

Because "conscience of the community" statements are not categorically impermissible, the Court denies this motion in limine. However, RBC may object at trial to any such statement designed to inflame the jury, and Mooney is cautioned to steer clear of the line between "permissible oratorical flourish" and "impermissible comment calculated to incite the jury" against the defendant. *United States v. Lester*, 749 F.2d 1288, 1301 (9th Cir. 1984) (citation and internal quotation marks omitted).

2.      RBC's Fifth Motion in Limine: Unidentified Industrial District Sales Engineer

The scope of RBC's fifth motion in limine is unclear. It first asks the Court to "exclude *any argument or testimony at trial*" that an unidentified RBC sales engineer was not required to write any Reports of Calls ("ROCs"). Dkt. No. 67 at 13 (emphasis added). But at the end of its motion, RBC narrows its requested relief, asserting that "[*Mooney*] should not be allowed to testify or make vague, unsupported, and irrelevant arguments about this unidentified sales engineer," and that the Court should "exclude *this* argument and testimony under Fed. R. Evid. 402 and 403." *Id.* at 14 (emphasis added).

Either way, RBC's motion is denied. RBC has indicated that it plans to introduce evidence "regarding the legitimacy of RBC's [reduction in force] and its decision to select [Mooney] to be laid off as part of the [reduction in force] given his historical performance." Dkt. No. 78 at 5; *see also id.* at 8 (suggesting that RBC representatives will testify regarding the legitimacy of RBC's reduction in force and its selection of Mooney to be laid off as part of the reduction in force). If the "historical performance" upon which RBC based its decision includes Mooney's overall performance relative to the other sales engineers, those sales engineers' reporting requirements could be relevant. *See, e.g.*, Dkt. 59-2 at 2 (email from Mooney to his manager regarding his performance review in which Mooney complains that he is "being held to a standard . . . that no one else is expected to uphold."). Therefore, it would be improper at this stage to exclude "any argument or testimony at trial" regarding another engineer's reporting requirements. And it would likewise be inappropriate to prohibit Mooney from making any arguments regarding those requirements given that testimony on that subject matter may be elicited at trial (*e.g.*, on cross-examination of RBC's witnesses).

The parties should not construe the Court's denial of this motion in limine as a green light for Mooney to testify about the out-of-court statement made to him by an unknown person

1  regarding an unidentified RBC sales engineer. *See* Dkt. No. 75 at 3–4 (citing Dkt. No. 69-1 at 6).

2  The light is yellow at best. To the extent Mooney's counsel elicits testimony that RBC believes is

3  inadmissible as hearsay or otherwise, RBC may raise an objection at the appropriate time.

4        3.    RBC's Sixth Motion in Limine: Layoff of Roger Cavender

5        RBC requests that the Court exclude any evidence and/or argument that RBC discharged

6  district sales engineer Roger Cavender in July 2020 to "cover up" and/or make Mooney's

7  termination look legitimate and non-discriminatory. Dkt. No. 67 at 15. RBC argues that those

8  arguments or evidence should be excluded under Federal Rules of Evidence 402 and 403 because

9  they are irrelevant, unduly prejudicial, confusing, and misleading. *Id.*

10       In support of its motion in limine, RBC has presented evidence that Cavender was hired in

11 January 2020—just before the start of the COVID-19 pandemic—and was laid off because he was

12 not able to call on any customers as a result of the pandemic and because his position covering

13 "the small territory of Michigan" could be easily absorbed by another salesperson. *Id.* RBC argues

14 that there is no evidence other than "sheer speculation" that Cavender was terminated for a reason

15 other than the reduction in force. *Id.* at 16. Instead, the evidence shows that RBC laid off

16 approximately 600 employees in multiple reductions in force between April and December 2020,

17 that the July 2020 reduction in force that included Cavender was too remote in time from Mooney's

18 termination and lawsuit to have any real probative value. *Id.* at 15–16.

19       Mooney argues that he should be allowed to present evidence regarding Cavender's

20 termination to counter evidence he anticipates RBC will introduce at trial. Dkt. No. 75 at 4–6.

21 Specifically, Mooney anticipates that RBC will attempt to "legitimize its termination of Mr.

22 Mooney" by presenting evidence that he was not the only sales engineer to be laid off during the

23 reduction in force; Cavender was laid off too. *Id.* at 5. To respond to this evidence, Mooney wants

24 to present evidence regarding when Steve Ross (RBC's Director of Industrial Sales & Marketing)

1    learned of Mooney's lawsuit, when and why he decided to lay off Cavender, and the circumstances

2    around RBC filling his position a few months after the layoff. *Id.* That evidence is relevant to

3    Mooney's theory of the case, which is that Ross selected Cavender for layoff not because of the

4    reduction in force "but because Mr. Ross learned that Mr. Mooney sued RBC for wrongful

5    termination" and then "terminated Cavender to conceal his unlawful termination of Mr. Mooney."

6    Dkt. No. 75 at 4–5.

7        Mooney's theory is not based entirely on speculation as RBC alleges. Although there is no

8    direct evidence of a cover up, Mooney is entitled to present circumstantial evidence, which

9    includes the fact that Ross decided to lay off Cavender within weeks of learning that Mooney had

10   filed a lawsuit, Cavender was the only other sales engineer to be laid off in 2020, and RBC began

11   interviewing to fill his position within weeks of the layoff. *Id.* at 5. That evidence is relevant to

12   Mooney's theory that Ross laid off Cavender to provide cover for his allegedly unlawful

13   termination of Mooney.

14       However, because Mooney states that he wants to present this evidence to "counter" RBC's

15   evidence that it laid off Cavender, *id.*, it would be a waste of time to have a mini trial about why

16   Cavender was laid off if RBC does not first present evidence that he was laid off. *See* Fed. R. Evid.

17   403 (relevant evidence may be excluded if it is unduly prejudicial or would waste time). If RBC

18   does not present evidence that it laid off Cavender, then there is nothing for Mooney to counter on

19   that issue. If RBC introduces evidence that it laid off another sales engineer, then the timing and

20   reasons behind Cavender's layoff are relevant, and it would not be a waste of time, unduly

21   prejudicial, or confusing to the jury to allow Mooney to counter RBC's evidence.

22       Accordingly, the Court instructs Mooney not to suggest that a "cover up" occurred before

23   the evidence about Cavender is admitted. Before the admission of that evidence, "the term is

24   inflammatory and should not be put before the jury." *Magee v. J.R. Simplot Co.*, 4:19-cv-00353-

1   REP, 2021 WL 2917044, at *9 (D. Idaho July 12, 2021); *see also Ramachandran v. City of Los*

2   *Altos*, No. 18-cv-01223-VKD, 2022 WL 316679, at *3 (N.D. Cal. Feb. 2, 2022) (precluding

3   plaintiff from using the terms "conspiracy" or "scheme" for rhetorical purposes).

4          The Court grants in part and denies in part RBC's sixth motion in limine.

5          4.      RBC's Seventh Motion in Limine: Lost Wages After December 2021

6          RBC requests that the Court exclude any evidence or argument regarding Mooney's

7   purported lost wages after December 2021 based on Mooney's statements in discovery that he

8   intended to retire from RBC in December 2021. Dkt. No. 67 at 17–18. Specifically, Mooney

9   submitted a response to an interrogatory about his damages stating that his "intent was to return

10  back to work on March 23, 2020 and work until the end of December 2021 when he planned to

11  retire." Dkt. No. 69-7 at 4. He confirmed this plan during his deposition:

12          Q: So you say here, in your answer to Interrogatory No. 12, that your intent was to
            return back to work on March 23, 2020, and work until the end of December 2021.

13

14          A: That is true.

15  Dkt. No. 69-1 at 3. Mooney elaborated that during the last quarter of 2020, he decided to retire at

16  the end of 2021 "because of the stress of the job." *Id.* at 4–5. Consistent with that statement,

17  Mooney plans to testify that he enjoyed working as a salesperson, and if the stress and depression

18  had improved at work, he would have reconsidered retirement and continued working beyond

    December 2021. Dkt. No. 75 at 6.

19

20         RBC does not argue that evidence of any damages after December 2021 should be excluded

21  as a discovery sanction under Rule 37. Instead, RBC argues that the evidence should be excluded

22  under Rules 402 and 403 because it would "create a mini trial as to [Mooney's] anticipated

23  retirement date" and would prejudice RBC based on Mooney's statements in discovery that he

24  planned to retire in December 2021. Dkt. No. 67 at 18. However, RBC does not support its

prejudice argument with any specifics, such as identifying anything it would have done differently during the litigation. Moreover, Mooney's anticipated trial testimony on this issue is consistent with his deposition testimony that work-related stress contributed to his decision to retire in 2021. Dkt. No. 69-1 at 4–5. Mooney can testify about whether he planned to work longer after his medical leave ended, and he will be subject to cross-examination on that issue.

RBC also argues that allowing evidence about post-2021 damages would confuse the jury. But jurors are typically tasked with determining damages and, if needed, will do so in this case regardless of whether Mooney planned to retire in 2021 or some other date. *See, e.g., Hunting World, Inc. v. Reboans, Inc.*, No. C92-1519-BAC-FSL, 1994 WL 806022, at *6 (N.D. Cal. Oct. 26, 1994) (noting the jury's "traditional right" to assess damages). RBC has not shown that the damages in this case are unusually confusing or complicated.

Therefore, the Court denies this motion in limine.

5.    <u>RBC's Eighth Motion in Limine: Other Candidates Considered for Mooney's Position</u>

RBC seeks to exclude evidence and argument regarding RBC's conversations or discussions with Chris Curran (or any other individual) regarding potential candidates for Mooney's position. Dkt. No. 67 at 18–19. RBC argues that the information is irrelevant. However, as the Court explained in its order on the parties' motions for summary judgment, a jury could disbelieve RBC's stated reason for discharging Mooney based on the fact that Ross talked with Curran in March 2020, while Mooney was out on FMLA leave, about potentially replacing Mooney with Carroll. Dkt. No. 62 at 38. Therefore, those facts are relevant to the issue of RBC's motivation for Mooney's discharge regardless of whether RBC ultimately hired Carroll for Mooney's position.

RBC also argues that the evidence would confuse or mislead the jury and unduly prejudice RBC. While the evidence may not be favorable for RBC, it is not unduly prejudicial. And the evidence is not confusing. The jury will be capable of understanding the two discrete conversations Mooney had about Carroll and the timing of those conversations.

For all of those reasons, the Court denies this motion in limine.

## III.   CONCLUSION

In sum, the Court rules as follows on the parties' motions in limine, Dkt. Nos. 64, 67:

- Granted:
  - Mooney's First Motion in Limine: Exclude evidence regarding Mooney's receipt of unemployment benefits.
  - Mooney's Second Motion in Limine: Exclude evidence regarding Mooney's receipt of social security benefits.
  - Mooney's Third Motion in Limine. Exclude evidence regarding Mooney's receipt of paid medical leave.
  - Mooney's Fourth Motion in Limine. Exclude evidence related to RBC's Severance Package Offer.
  - Mooney's Fifth Motion in Limine. Exclude information and documents not previously produced during discovery.
  - RBC's First Motion in Limine. Each party must notify the other of the witnesses and depositions they intend to call or use by the start of the court day prior to the day the party will call the witness or use the deposition.
  - RBC's Second Motion in Limine. Exclude evidence of Mooney's litigation expenses, contingency fees, and/or taxes.
  - RBC's Third Motion in Limine. Exclude non-party lay witnesses who are not exempt under FRE 615 from the courtroom, and admonish witnesses who testify or are present in the courtroom to not discuss the case, or describe what occurred in the courtroom, with non-party lay witnesses that have not yet testified and been dismissed by the Court.
  - RBC's Fourth Motion in Limine, Part A. Mooney will not argue or suggest that the jurors "send a message" to RBC, punish RBC, "teach RBC a lesson," put themselves in Mooney's position, or otherwise urge the jurors to reach a verdict on impermissible grounds through the use of inflammatory arguments and phrases.

- Denied:

    o <u>Mooney's Sixth Motion in Limine</u>. Exclude testimony of William Skilling.

    o <u>RBC's Fourth Motion in Limine, Part B</u>. Exclude "conscience of the community" arguments; provided, however, that Mooney may not present such arguments in an inflammatory manner.

    o <u>RBC's Fifth Motion in Limine</u>. Exclude argument or testimony that an unidentified RBC sales engineer was not required to write any Reports of Calls.

    o <u>RBC's Seventh Motion in Limine</u>. Exclude evidence or argument regarding Mooney's purported lost wages after December 2021.

    o <u>RBC's Eighth Motion in Limine</u>. Exclude evidence and argument regarding RBC's conversations or discussions regarding potential candidates for Mooney's position.

- Granted in part and denied in part:

    o <u>Mooney's Seventh Motion in Limine</u>:

        ▪ <u>Granted</u>: Exclude testimony of Anita Willemse regarding how Mooney ranked in salary and performance compared to other sales engineers.

        ▪ <u>Denied</u>: Exclude testimony of Anita Willemse regarding the industry's economic outlook and RBC's 2020 sales.

    o <u>RBC's Sixth Motion in Limine</u>. Evidence and/or argument that RBC discharged district sales engineer Roger Cavender to "cover up" and/or make Mooney's termination look legitimate and non-discriminatory is excluded unless RBC introduces evidence that it laid off Cavender.

Dated this 5th day of May, 2022.

_Lauren King_

Lauren King
United States District Judge