1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD MOONEY,

              Plaintiff,

    v.

ROLLER BEARING COMPANY OF
AMERICA, INC.,

              Defendant.

CASE NO. C20-01030-LK

PRELIMINARY JURY
INSTRUCTIONS

## <u>COURT'S PRELIMINARY INSTRUCTIONS TO THE JURY</u>

Dated this 17th day of May, 2022.

_Lauren King_
Lauren King
United States District Judge

**INSTRUCTION NO. 1**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected, and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

## INSTRUCTION NO. 2

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiff Richard Mooney asserts that Defendant Roller Bearing Company of America wrongfully terminated him in violation of Washington's Law Against Discrimination, Washington's Family Medical Leave Act, and the federal Family Medical Leave Act, because he extended his medical leave. Mr. Mooney also claims that he sustained damages as a result of his wrongful termination. He has the burden of proving these claims by a preponderance of the evidence.

Roller Bearing Company denies those claims and asserts an affirmative defense that Mr. Mooney's claims are barred, in whole or in part, by his failure to mitigate his alleged damages, the existence of which Roller Bearing Company specifically denies.

Roller Bearing Company has the burden of proving this affirmative defense by a preponderance of the evidence. Mr. Mooney denies the affirmative defense.

### INSTRUCTION NO. 3

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## INSTRUCTION NO. 4

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I will instruct you to accept as proved.

## INSTRUCTION NO. 5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.  Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

4.  Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**INSTRUCTION NO. 6**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**INSTRUCTION NO. 7**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**INSTRUCTION NO. 8**

Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

# INSTRUCTION NO. 9

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

# INSTRUCTION NO. 10

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

# INSTRUCTION NO. 11

You will hear testimony from certain witnesses who will testify to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

1

## INSTRUCTION NO. 12

2

All parties are equal before the law and a corporation is entitled to the same fair and

3

conscientious consideration by you as any party.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# INSTRUCTION NO. 13

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority. Steve Ross was an employee of Roller Bearing Company and his actions were performed within the scope of his authority.

# INSTRUCTION NO. 14

Whether or not a party has insurance, or any other source of recovery available, has no bearing on any issue that you must decide. You must not speculate about whether a party has insurance or other coverage or sources of available funds. You are not to make or decline to make any award, or increase or decrease any award, because you believe that a party may have some other form of compensation available. Even if there is insurance or other funding available to a party, the question of who pays or who reimburses whom would be decided in a different proceeding. Therefore, in your deliberations, do not discuss any matters such as insurance coverage or other possible sources of funding for any party. You are to consider only those questions that are given to you to decide in this case.

### INSTRUCTION NO. 15

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. Because the jury functions as the factfinder, the function of the questioning procedure is to clarify factual issues, not legal issues. I will instruct you on the law. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court. Do not sign the question. I will review the question with the attorneys out of the presence of the jury to determine if it is legally proper.

There may be some proposed questions that I will not permit, or will not ask in the wording submitted by you. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence. After I read the questions to the witness, the attorneys will be permitted to ask appropriate follow-up questions.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

**INSTRUCTION NO. 16**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**INSTRUCTION NO. 17**

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**INSTRUCTION NO. 18**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media

accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

# INSTRUCTION NO. 19

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

If at any time you cannot hear or see the testimony, evidence, questions, or arguments, let me know so that I can correct the problem.

## INSTRUCTION NO. 20

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

# INSTRUCTION NO. 21

The parties have agreed to certain facts to be placed in evidence as Exhibit 54 that will be read to you. You must therefore treat these facts as having been proved:

1.    Roller Bearing Company is a manufacturer and marketer of highly engineered precision bearings and products, which are integral to the manufacture and operations of most machines, aircraft, and mechanical systems.

2.    Roller Bearing Company is headquartered in Oxford, Connecticut.

3.    Roller Bearing Company hired Richard Mooney as an outside salesperson (a "sales engineer") for Roller Bearing Company's Industrial Sales division on March 19, 2018.

4.    One of the expectations of a Roller Bearing Company sales engineer is writing reports of call ("ROCs") covering the high points of impactful sales.

5.    ROCs inform Roller Bearing Company's managers and product managers of activity in the field.

6.    On the date Mr. Mooney was hired, he was 66 years old. He had over 40 years of experience in the sales industry, with nearly 20 of those years exclusively in outside sales.

7.    His salary with Roller Bearing Company was $100,000 or $8,333.34 per month.

8.    In addition to his annual salary, Mr. Mooney was also eligible for a discretionary bonus of up to 15 percent of his base salary which, if he qualified, was to be paid approximately six months following the completion of the company's fiscal year, which went from April 1 through March 31.

9.    Mr. Mooney's sales territory with Roller Bearing Company when he was hired was Washington, Oregon, and Idaho (Pacific Northwest).

10. Approximately seven months later, Mr. Mooney's sales territory was expanded to include British Columbia and Alberta, Canada.

11. A few months after Mr. Mooney joined Roller Bearing Company, his direct supervisor, John Talley, started emailing him to remind him that he needed to write more ROCs to meet the company's reporting expectations.

12. Mr. Mooney's failure to write ROC reports as expected led him to being placed on a Performance Improvement Plan on February 8, 2019.

13. The Performance Improvement Plan was in effect for sixty business days (February 8, 2019, through May 3, 2019).

14. On October 16, 2019, Roller Bearing Company gave Mr. Mooney a discretionary bonus of $4,000.

15. Mr. Mooney and Mr. Talley executed the approved Fiscal Year 2019 evaluation on January 6, 2020.

16. On January 10, 2020, Mr. Talley advised Mr. Mooney he would not receive a merit-based increase.

17. On that same date (January 10, 2020), Mr. Mooney saw his physician and was diagnosed with "depressive illness."

18. Mr. Mooney gave Roller Bearing Company a letter from his physician regarding the depressive illness and Roller Bearing Company sent Mr. Mooney Family and Medical Leave Act ("FMLA") certification paperwork to be completed.

19. Mr. Mooney and his physician completed the FMLA paperwork on or about January 16, 2020 and returned it to Roller Bearing Company.

20. The completed FMLA paperwork indicated that Mr. Mooney would be incapacitated from January 10, 2020 to February 15, 2020.

21.   Cathy DePaola, Roller Bearing Company's HR Manager, reviewed the completed paperwork on January 16, 2020, and approved Mr. Mooney's leave as FMLA qualifying.

22.   During Mr. Mooney's FMLA leave, Mr. Talley covered Mr. Mooney's Pacific Northwest territory (Washington, Oregon, and Idaho).

23.   On February 13, 2020, Mr. Mooney had a follow-up visit with his physician.

24.   His physician recommended that Mr. Mooney take another month off from work because he was still suffering from depression.

25.   His physician completed a second FMLA certification on February 18, 2020, which indicated that Mr. Mooney would be incapacitated from February 15, 2020 to March 23, 2020.

26.   On February 19, 2020, Roller Bearing Company received this second FMLA certification and approved Mr. Mooney's FMLA leave, extending it to March 23, 2020.

27.   On March 18, 2020, Mr. Mooney emailed Ms. DePaola and Mr. Talley to let them know that he was scheduled to return to work on March 23, 2020, and wanted to know if there were any operating protocols that he needed to be aware of related to the COVID-19 pandemic before he could return to work.

28.   On March 20, 2020, Ms. DePaola responded to Mr. Mooney by telling him that he needed to submit a doctor's release to return to work.

29.   On April 1, 2020, Mr. Mooney sent an email to his regional manager and Ms. DePaola to let them know that he still had not heard from his doctor regarding the release.

1   30.   On April 3, 2020, Mr. Mooney received the release to return to work, which he
2       then sent to Roller Bearing Company.

3   31.   Ms. DePaola responded on April 6, 2020 and told Mr. Mooney that his "return to
4       work is 4/6/2020."

5   32.   Mr. Mooney was feeling better and was ready to return to work.

6   33.   Mr. Mooney's physician determined that Mr. Mooney could perform the
7       essential functions of his job when he was ready to return to work on April 6,
8       2020.

9   34.   On April 6, 2020, Roller Bearing Company notified Mr. Mooney that he was
10       being laid off because of the companywide reduction in force due to COVID-19
11       and the anticipated downturn in business.

12   35.   On June 3, 2020, Mr. Mooney filed his lawsuit against Roller Bearing Company.

13   36.   Roller Bearing Company was served with Mr. Mooney's lawsuit papers known
14       as summons and complaint on June 8, 2020.