UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD MOONEY,<br><br>                    Plaintiff,<br><br>    v.<br><br>ROLLER BEARING COMPANY OF AMERICA, INC.,<br><br>                    Defendant. | CASE NO. 2:20-cv-01030-LK<br><br>ORDER DENYING MOTION FOR A NEW TRIAL |

     Defendant Roller Bearing Company of America, Inc. ("RBC") filed a motion for a new trial, Dkt. No. 132, following a jury verdict in favor of Plaintiff Richard Mooney, Dkt. No. 115. RBC argues that a new trial is warranted because (1) the jury's verdict is against the weight of evidence and (2) Mr. Mooney's opening and closing arguments included improper remarks. *See generally* Dkt. No. 132. Mr. Mooney argues that the weight of the evidence supports the verdict, and even if his opening or closing remarks contained improper statements, they did not "permeate the trial to prejudice the jury," and the Court timely "addressed and ameliorated" RBC's objections. Dkt. No. 138 at 2. For the reasons set forth below, the Court denies the motion.

ORDER DENYING MOTION FOR A NEW TRIAL - 1

## I.     BACKGROUND

Although the background of this case has been recited in prior orders, the Court briefly summarizes it here for ease of reference and to contextualize the parties' arguments.

RBC manufactures and markets highly engineered precision bearings and products that are integral to the manufacture and operations of most machines, aircraft, and mechanical systems. Dkt. No. 97 at 2. In March 2018, RBC hired Mr. Mooney as an outside salesperson, also known as a sales engineer, in its industrial sales division. *Id.* When he was hired, Mr. Mooney's sales territory included three states in the Pacific Northwest, but within the year, it was expanded to include British Columbia and Alberta, Canada. *Id.* at 2–3.

Starting a few months after Mr. Mooney joined RBC, his direct supervisor repeatedly reminded him that he needed to write more reports of call to meet the company's reporting expectations. *Id.* at 3. When his performance did not improve in that area, Mr. Mooney was placed on a performance improvement plan ("PIP") from February 2019 through May 3, 2019. *Id.*

On January 10, 2020, Mr. Mooney was informed that he would not receive a discretionary bonus. *Id.* He saw his physician that same day and was diagnosed with "depressive illness." *Id.* Mr. Mooney went on leave under the Family and Medical Leave Act ("FMLA") through February 15, 2020. *Id.* During that time, his physician certified a need for additional leave through March 23, 2020. *Id.* at 4. Mr. Mooney and RBC agreed that he would return to work on April 6, 2020. *Id.*

However, when he returned to work, RBC notified Mr. Mooney that he was being laid off due to a companywide reduction in force ("RIF") caused by the COVID-19 pandemic and anticipated downturn in business. *Id.* at 5. Mr. Mooney filed suit against RBC, alleging that RBC wrongfully terminated his employment because he extended his leave in violation of the Washington Law Against Discrimination, the FMLA, and Washington's Family and Medical Leave Act ("WFMLA"). *Id.* at 1–2.

### A. Motions in Limine

RBC filed a motion in limine to preclude Mr. Mooney from arguing that RBC discharged employee Roger Cavender "solely to legitimize" Mr. Mooney's termination. Dkt. No. 132 at 6 (citing Dkt. No. 67). The Court granted that motion in part. It explained that "it would be a waste of time to have a mini trial about why [Mr.] Cavender was laid off if RBC does not first present evidence that he was laid off," because in that event there would be no need for Mr. Mooney to advance his theory that RBC laid off Mr. Cavender to provide cover for its allegedly unlawful termination of Mr. Mooney. Dkt. No. 89 at 12. The Court therefore instructed Mr. Mooney "not to suggest that a 'cover up' occurred before the evidence about [Mr.] Cavender is admitted." *Id.*

### B. Objections During Trial

During his opening statement, Mr. Mooney's attorney, Patrick Kang, stated, "We're not denying that RBC actually let go a lot of their people, but non-salespeople." Dkt. No. 139-1 at 10. He continued, "So they're going to tell you it was COVID. But, again, the evidence you're going to hear is that Mr. Mooney was the only salesperson let go." *Id.* RBC objected the same day outside the presence of the jury, and the Court immediately held a colloquy and heard arguments from both parties. Dkt. No. 139-1 at 4–6. RBC argued that Mr. Kang improperly "told the jury that Mr. Mooney was the only district sales engineer that was let go; and that is not true. And [RBC] can't rebut that without opening the door to their conspiracy theory." *Id.* at 4. Because the parties disputed what was said, the Court sent them the relevant portion of the transcript to review and encouraged them to cooperate upon reviewing the transcript to the extent they believed "a curative instruction is appropriate." *Id.* at 5–6. The Court also informed the parties that it would meet with them again the next morning "to discuss what remedy, if any, will be imposed." *Id.* at 6.

The next morning, before the jury was brought into the courtroom, the Court asked to hear from the parties on the "motion-in-limine" issue. *Id.* at 8. RBC notified the Court that the parties

had "reached agreement" that the Court would remind the jury that opening statements are not evidence: "the bottom line is the resolution that we think is appropriate is just a reminder from the court to the jury, something to the effect that an issue came up in plaintiff's opening yesterday, reminding you what they say isn't evidence." *Id.* at 8–9; *see also id.* at 9 (adding that this resolution is "a fair compromise"). The Court then gave the corrective instruction. Dkt. No. 132 at 6; Dkt. No. 147 at 2–3; 5/24/2022 Morning Instructions.

Although the Court admonished Mr. Kang that the false implication in his opening statement was "inappropriate," Dkt. No. 139-1 at 11, Mr. Kang continued in the same vein in his closing argument. He stated, "Nunez is hired. January of 2020, Roger Cavender is brought on. Usually when you're letting go people because of a RIF, you generally let go the people that are new." Dkt. No. 139-2 at 6. RBC's counsel objected to those statements outside the presence of the jury, and the Court agreed that the statements were improper because Mr. Kang did not cabin them to April 2020, when Mr. Mooney was let go, but instead implied that no other sales engineer was let go throughout the relevant time. *Id.* at 6–7.

Mr. Kang's misconduct did not end there. During his closing argument, he displayed slides to the jury that included quotations from other cases. Dkt. No. 139-2 at 4; 5/26/2022 Closing Arguments. RBC's counsel also objected to this conduct outside the presence of the jury, arguing that it was an improper attempt by counsel to instruct the jury on the law. Dkt. No. 139-2 at 4.

RBC urged that "the proper remedy" for Mr. Kang's implication that no other sales engineer was terminated would be to allow RBC's counsel to state in closing argument that "Mr. Cavender was terminated in July" 2020 and to amend Exhibit 54 (the agreed statement of facts) "to include that fact." *Id.* at 3. The Court granted that remedy. *Id.* at 7; *see also* Dkt. No. 139-4 at 21 (RBC closing argument stating that "Roger Cavender was included in a RIF in July, that's part of Exhibit 54. That's the agreed statement of facts."); Dkt. No. 139-5 at 5 (Exhibit 54a); Dkt. No.

139-3 at 2 (email from RBC's counsel proposing amendment to the admitted facts).

With respect to Mr. Kang's slides, RBC requested "an instruction to the jury to disregard the quotes from reported decisions[.]" Dkt. No. 139-2 at 4. The Court offered to remind the jury that "closing arguments are not evidence, that the law is as instructed by the court, not the lawyers," and RBC agreed that this remedy would be sufficient. *Id.* at 3–4. The Court then emphasized to the jury upon their return that "arguments and statements by lawyers are not evidence," that "[w]hat they've said in their opening statements, closing arguments and at other times . . . is not evidence," that "*[y]ou must follow the law as I give it to you*," and that "*[t]he law is encompassed in your final instructions*." 5/26/2022 Afternoon Instructions.

C. **The Verdict**

After a four-day trial, the jury rendered its verdict, finding that Mr. Mooney did not prove that extending his leave was a "substantial factor" in RBC's decision to lay him off, but did prove that it was a "negative factor" in the decision. Dkt. No. 115 at 1–2. The jury awarded him $160,000 in damages as the reasonable value of wages, salary, and employment benefits lost through December 31, 2021. *Id.* at 2. The Court entered judgment on June 2, 2022. Dkt. No. 116.

II.     DISCUSSION

RBC timely filed its motion within 28 days of the entry of judgment. Dkt. No. 132; Fed. R. Civ. P. 59(b).

A. **Legal Standard**

Under Federal Rule of Civil Procedure 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," so the Court is instead "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods,*

ORDER DENYING MOTION FOR A NEW TRIAL - 5

*Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Such historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the [moving] party[.]'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

"Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). "[T]he district court can weigh the evidence and assess the credibility of the witnesses," and "may sua sponte raise its own concerns about the damages verdict." *Id.* "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Id.* (citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)). But the court is not justified in granting a new trial "merely because it might have come to a different result from that reached by the jury." *Wilhelm v. Associated Container Transp. (Austl.) Ltd.*, 648 F.2d 1197, 1198 (9th Cir. 1981).

**B.     A New Trial Is Not Warranted**

  1. <u>The Verdict Was Not Contrary to the Weight of the Evidence or Seriously Erroneous</u>

RBC argues that Mr. Mooney "presented no direct evidence that his taking FMLA/WFMLA leave was a factor in RBC's decision to terminate him." Dkt. No. 132 at 3. Mr. Mooney correctly responds that he was not required to present direct evidence that it was a negative factor in the termination decision; circumstantial evidence can suffice. Dkt. No. 106 at 5 (instructing the jury that "[e]vidence may be direct or circumstantial" and the jury "should consider both kinds of evidence."); *see also Bachelder v. Am. W. Airlines*, 259 F.3d 1112, 1125 (9th Cir.

ORDER DENYING MOTION FOR A NEW TRIAL - 6

2001) (an employee can prove an FMLA interference claim "as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both."). Indeed, RBC's proposed jury instructions repeatedly cited *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135–36 (9th Cir. 2003) for the (accurate) proposition that:

> an employee may prevail on a claim that an employer interfered with her rights by terminating her in violation of FMLA by showing, by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both.

Dkt. No. 88 at 7–10, 13, 15–16.

RBC further argues that the weight of evidence did not show that Mr. Mooney's taking or extending his FMLA leave was a negative factor in RBC's decision to discharge him. Dkt. No. 132 at 3; *see also* Dkt. No. 106 at 11 (instructing the jury that "Richard Mooney must prove by a preponderance of the evidence that his extending his medical leave was a negative factor in Roller Bearing Company's decision to lay him off.").[1] It argues that Mr. Mooney's "'negative factor' theory was wholly unsupported save counsel's argument, which is not evidence." Dkt. No. 132 at 3.

Contrary to RBC's argument, the verdict was not against the weight of the evidence. There was ample circumstantial evidence at trial from which the jury could conclude that Mr. Mooney's leave was a negative factor in the decision to lay him off. For example, Mr. Mooney was the only sales engineer laid off in April 2020; the remaining 25 salespeople in his group—including two more recent hires—were partially furloughed. Dkt. No. 138 at 8;[2] 5/25/2022 Ross Testimony. Although RBC's motion highlights Mr. Mooney's poor "reports of call" writing, Dkt. No. 132 at

---

[1] RBC does not contend that the Court's jury instructions were erroneous.

[2] RBC's motion for a new trial and reply do not dispute the recitation of facts in Mr. Mooney's response brief, nor did it file evidence showing contrary facts.

ORDER DENYING MOTION FOR A NEW TRIAL - 7

4–5, his PIP ended 11 months before his discharge with no evidence of another PIP, discipline, or plans to discharge him before he took leave. Dkt. No. 97 at 3, 5; Dkt. No. 139-5 at 3, 5.

Mr. Mooney also introduced evidence to counter RBC's assertion that he was performing poorly leading up to his termination. For example, in July 2019, Mr. Talley's annual review of Mr. Mooney stated that "he has increased his ROC counts and is working harder toward his set goal for this area of concern." Dkt. No. 139 at 12 (Ex. 12); *see also* 5/25/2022 Talley Testimony. In October 2019, Mr. Ross emailed Mr. Mooney, noting that he "had a good August" in terms of ROC count, "but Sept and Oct are tailing off." Dkt. No. 139 at 19 (Ex. 23). Despite this "tailing off," RBC gave Mr. Mooney a $4,000 discretionary bonus in October 2019. Dkt. No. 139-5 at 4 (Ex. 54A). Although Mr. Mooney failed to write ROCs in November and December 2019 shortly before he was diagnosed with depression, Mr. Ross testified that he did not plan to replace Mr. Mooney at the time and instead planned to (1) advise Mr. Mooney that he would not receive a salary increase in 2020 and (2) review Mr. Mooney's performance in May 2020 to see if he was writing ROCs. Dkt. No. 139 at 20 (Ex. 26); 5/24/2022 Ross Testimony; 5/24/2022 Mooney Testimony.[3]

Furthermore, although RBC's witness Steven Ross testified that he selected Mr. Mooney for layoff because his sales revenue was among the lowest in the group while his salary was among the highest, 5/25/2022 Ross Testimony, the chart that reflected Mr. Ross's thought process was incomplete and omitted some salespeople whose sales were lower than Mr. Mooney's sales. *Id.* at 9; *see also* Dkt. No. 113 at 3; Dkt. No. 139 at 27–56 (Exs. 37, 38); 5/25/2022 Ross Testimony. The chart also included only fiscal year 2019 data and not fiscal year 2020 data, even though fiscal

---

[3] Mr. Mooney also testified that he was "out of gas" by November 2019 due to the additional burden of having to handle an additional territory (Canada) for over a year, despite being told by a Vice President at RBC that this responsibility would be temporary. 5/23/2022 Mooney Testimony; 5/24/2022 Mooney Testimony.

ORDER DENYING MOTION FOR A NEW TRIAL - 8

year 2020 had started in April 2019 and even though Mr. Ross asked for 2020 sales numbers on March 17, 2020, before the April 2020 RIF was implemented. 5/24/2022 Ross Testimony; 5/25/2022 Ross Testimony; Dkt. No. 139 at 26 (Ex. 36). Mr. Mooney testified that he had the third highest sales growth among RBC's salespeople between fiscal year 2019 and fiscal year 2020. 5/24/2022 Mooney Testimony.

The evidence from the weeks prior to Mr. Mooney's termination could have also supported the jury's finding that his leave was a negative factor for RBC. After Mr. Mooney requested to extend his leave, Mr. Ross made an inquiry about replacing him. *See* Dkt. No. 113 at 3; Dkt. No. 139 at 24 (Ex. 35 at 1); 5/24/2022 Ross Testimony. Mr. Ross's cagey and stilted answers to questions regarding Mr. Talley's knowledge of this inquiry may have caused the jury to discredit his rationale for the inquiry. *See, e.g.*, 5/24/2022 Ross Testimony. Furthermore, around the same time Mr. Ross made the inquiry, he engaged in discussions about the impending reduction in force. 5/25/2022 Ross Testimony. And when Mr. Mooney emailed Cathy DePaola regarding returning from leave and mentioning his recent vertigo diagnosis, she forwarded the message to Mr. Ross, exclaiming, "Just in case you wanted to read it!! It never gets old!!" Dkt. No. 139 at 57 (Ex. 40). The jury could have disbelieved Ms. DePaola's explanation that her email was about Mr. Mooney's sense of humor (*see* 5/26/2022 DePaola Testimony) and could have instead reasonably construed the email to be denigrating Mr. Mooney's reasons for taking leave. Finally, although Mr. Ross said that he based his decision regarding the RIF on sales data and salaries, Mr. Mooney testified that RBC provided him no explanation regarding why he was selected for the RIF at the time he was terminated. 5/24/2022 Mooney Testimony; 5/25/2022 Ross Testimony.

These facts, coupled with the timing of Mr. Mooney's discharge, which occurred on the day he returned to work following an extended FMLA leave, provide circumstantial evidence supporting the jury's conclusion that Mooney's FMLA leave was a negative factor in RBC's

decision to terminate him. Dkt. No. 97 at 4–5; *see also Xin Liu*, 347 F.3d at 1137 (explaining that the "proximity in time between the leave and [plaintiff's] termination also provides supporting evidence of a connection between the two events."). That evidence distinguishes this case from *Wilson v. Safeway Inc.*, No. 2:16-CV-0405-TOR, 2018 WL 4608477 (E.D. Wash. Sept. 25, 2018), on which RBC relies. Dkt. No. 132 at 5. This is not a case where there was "lack of any connection between leave and termination," Dkt. No. 132 at 5, or simply "no evidence to support Plaintiff's claim of improper motive." *Wilson*, 2018 WL 4608477, at *9–10 (granting summary judgment where key facts were undisputed and the employer discharged the plaintiff "after he failed to show up for work.").

RBC also argues that "the evidence Plaintiff contends supports his verdict must have lacked 'great weight' given the jury's finding [that] there were considerable legitimate reasons for his termination when it found his extending leave was not a 'significant motivating factor' to support his WLAD claim." Dkt. No. 147 at 1. That argument fails because, as the Court instructed the jury, the "substantial factor" standard applied to Mr. Mooney's WLAD claim but not to his FMLA claim.[4] Because a "negative factor" means "a factor, or one of the factors" in the termination decision, the jury did not need to reject RBC's contention that the pandemic led to business uncertainties and the initiation of a RIF. *Id.* at 11; *see also Xin Liu*, 347 F.3d 1136 (the question is whether "the FMLA leave taken by [the plaintiff] was impermissibly considered as *a factor* in her termination" (emphasis added)). In other words, a plaintiff's FMLA leave can be a "negative factor" in an employer's termination decision without necessarily being a "significant motivating

---

[4] *Compare* Dkt. No. 106 at 9 ("To establish his [WLAD] claim," Mr. Mooney "has the burden of proving by a preponderance of the evidence that his disability was a substantial factor in [RBC]'s decision to lay him off," and "'[s]ubstantial factor' means a significant motivating factor in bringing about the employer's decision" and "does not mean the only factor or the main factor in the challenged act or decision."), *with id.* at 11 ("To prevail on his [FMLA claim], Mr. Mooney must prove by a preponderance of the evidence that his extending his medical leave was a negative factor in [RBC]'s decision to lay him off," and "'[n]egative factor' means a factor, or one of the factors, where the employee is subjected to an adverse employment decision by the employer simply because he used FMLA leave.").

ORDER DENYING MOTION FOR A NEW TRIAL - 10

factor." Those differing standards undermine a claim that the verdict was against the weight of the evidence.

In sum, the jury's verdict was not "contrary to the clear weight of the evidence," nor was it seriously erroneous. *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (cleaned up). RBC's motion for a new trial on this basis is denied.

    2.    <u>Improper Remarks by Plaintiff's Counsel Did Not Permeate the Trial</u>

RBC contends that Mr. Kang's improper statements in his opening and closing arguments "[c]ircumvent[ed]" the Court's order in limine and rendered the jury's verdict the product of "passion and prejudice." Dkt. No. 132 at 1, 6. RBC argues that it is entitled to a new trial because despite that Order, Mr. Kang's "opening statement argued that Mr. Mooney was the only sales engineer laid off as part of the RIF," and his closing argument implied same. *Id.* at 6.[5]

To assess whether improper comments were sufficiently prejudicial to warrant a new trial, the court considers "whether counsel's misconduct so permeated the trial as to lead to the conclusion the jury was necessarily influenced by passion and prejudice in reaching its verdict." *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991); *see also Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (the "flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict" (quoting *Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 388 (9th Cir. 1965))).

    *(a) RBC Did Not Waive Its Objection to Mr. Mooney's Opening Argument*

Mr. Mooney argues that RBC's objection "should have been deemed waived" because RBC did not object during his opening statement, but instead objected later that day. Dkt. No. 138

---

[5] Despite RBC having a transcript of opening statements and closing arguments, Dkt. No. 117, its motion neither quotes the allegedly improper statements nor cites to them, failing to fully support its argument and leaving the Court to comb the record itself.

at 11 n.1. That argument, appearing only in a footnote, does not hold water. RBC promptly raised its objection the same day the opening statements were given. Dkt. No. 139-1 at 4. Most importantly, RBC raised the issue before the jury began deliberating and in time for the Court to give a curative instruction. *See, e.g.*, *Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*, 785 F.2d 656, 658 (9th Cir. 1986) (holding that a party should object to alleged instances of attorney misconduct before the jury deliberates to allow the district court "to examine the alleged prejudice and to admonish . . . counsel or issue a curative instruction, if warranted."); *Offutt v. Georgia-Pacific Gypsum LLC*, No. 21-35624, 2022 WL 1955740, at *2 (9th Cir. June 6, 2022) (affirming judgment and declining to find waiver where the defendant timely objected to plaintiff's counsel's misrepresentations in opening and closing statements "before the jury began deliberating."). Therefore, RBC did not waive its objection by failing to raise it during Mr. Kang's opening statement.

*(b) The Court Declines to Consider RBC's Cursory Argument About the Slides*

RBC also argues for the first time in its reply brief that Mr. Kang's closing argument included a "blatant invitation for [the jury] to speculate, going so far as improperly quoting from summary judgment cases in his closing to suggest that 'circumstantial evidence' and 'guesswork' are the same thing." Dkt. No. 147 at 2. RBC's motion did not argue that a new trial was warranted on this basis, and the Court does not consider new arguments presented for the first time in a reply brief. *See, e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (district courts "need not consider arguments raised for the first time in a reply brief."). The Court also declines to consider that one-sentence argument because RBC did not elaborate on it or cite to anything in the record to support it. *See, e.g.*, *U.S. v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived."); *Delashaw v. Seattle Times Co.*, No. C18-0537-JLR, 2018 WL 4027078, at *14 (W.D.

1  Wash. Aug. 23, 2018) (declining to address a party's "cursory argument" because the party did
2  "not provide enough detail to allow the court to fully evaluate it.").

3  Even if the Court were to consider RBC's cursory and conclusory argument, it would not
4  warrant a new trial because the Court offered to and did remind the jury that "closing arguments
5  are not evidence" and that the jury was obligated to apply the law as the Court gave it to them. *See*
6  Dkt. No. 139-2 at 4–5; 5/26/2022 Afternoon Instructions. RBC agreed on the record that this
7  sufficed to remedy its objection with respect to the slides. Dkt. No. 139-2 at 4–5. As set forth
8  below, courts presume that juries follow their instructions, so Mr. Kang's display of the slides—
9  though improper—did not permeate the trial or prejudice the jury.

10  *(c) Counsel's Misconduct Did Not Permeate the Trial*

11  The Court informed Mr. Kang during the trial that his remarks were "unacceptable," Dkt.
12  No. 139-2 at 6, but the question now, post-verdict, "is whether the instances of misconduct so
13  permeated the trial that the jury was necessarily prejudiced." *Kehr*, 736 F.2d at 1286. After
14  presiding over the trial and reviewing the record, the Court answers that question in the negative.

15  First, as in *Kehr*, the "offending remarks occurred principally during opening statement
16  and closing argument, rather than throughout the course of the trial," and as such, they "were
17  isolated, rather than persistent." *Kehr*, 736 F.2d at 1286. Indeed, RBC's motion does not show that
18  there were any improper statements outside the opening and closing arguments. And although it
19  argues that Mr. Mooney "testified that he couldn't understand why he was being singled out, thus
20  perpetuating the theme that he was the only sales engineer laid off during the trial," Dkt. No. 147
21  at 3, RBC cites nothing in support of its argument, did not file a transcript of the alleged testimony,
22  and does not claim to have timely objected to it. It therefore appears that RBC has waived the
23  argument. *See, e.g., Graf*, 610 F.3d at 1166 (unsupported arguments are waived); *see also*
24  *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 512 (9th Cir. 2000)

(finding that the defendant waived an issue by failing to object when the testimony was elicited or when the jury was instructed); *People of Territory of Guam v. Gill*, 61 F.3d 688, 693 (9th Cir. 1995) (finding that a party waived an objection to testimony by failing to object to it at trial). Even if RBC did not waive its argument, RBC has not shown that Mr. Mooney's testimony about being "singled out" was improper when he was the only sales engineer laid off in the April 2020 RIF. *See* 5/25/2022 Ross Testimony (Mr. Mooney was the only sales engineer let go in April 2020). The jury was also informed that another sales engineer (Mr. Cavender) was laid off a few months after Mr. Mooney. *See* Dkt. No. 89 at 12 (Cavender was the only other sales engineer laid off in 2020); Dkt. No. 139-4 at 21; Dkt. No. 139-5 at 5. Thus, not only were the improper remarks confined to the opening and closing arguments, but the Court also allowed RBC to present additional evidence to counter those remarks (in accordance with RBC's proposal regarding what would suffice to address its objections). *Mateyko v. Felix*, 924 F.2d 824, 828 (9th Cir. 1990) (upholding the denial of a mistrial where the district court took curative measures).

Second, the Court instructed the jury that opening and closing arguments are not evidence—consistent with RBC's agreement that this (plus an explanation in its closing argument and in Exhibit 54A that Mr. Mooney was not the only sales engineer RBC laid off) was an appropriate remedy to its objections. Dkt. No. 139-1 at 8–9; Dkt. No. 139-2 at 3–5; 5/24/2022 Morning Instructions; 5/26/2022 Afternoon Instructions. Specifically, after the jury was brought in on day 2 of trial and before any testimony was given, the Court gave a curative instruction to the jury as the parties had proposed:

> An issue came up with plaintiff's opening statement yesterday and I remind you of the instructions that I gave you yesterday: arguments and statements by lawyers are not evidence, the lawyers are not witnesses, [and] what they may say in their opening statements and at other times is intended to help you interpret the evidence, but it is not evidence.

5/24/2022 Morning Instructions. And following the parties' closing arguments, the Court again

gave a curative instruction:

> As I previously instructed you, arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they've said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. I will also remind you of Instruction No. 1 which says that it is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. *You must follow the law as I give it to you. The law is encompassed in your final instructions.*

5/26/2022 Afternoon Instructions. Courts presume that juries follow their instructions. *See Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005); *see also Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 186 F. Supp. 3d 1087, 1101 (S.D. Cal. 2016) (denying motion for a new trial after "Defendants' counsel frequently meandered into highly improper topics during his closing argument" because the Court "instructed the jury several times that the statements of lawyers are not evidence."), *rev'd on other grounds*, 768 F. App'x 756 (9th Cir. 2019). That presumption extends to curative instructions as well. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir. 2000) ("There is a strong presumption that the curative instructions given by the district court were followed by the jury[.]"). Any potential prejudice that could have resulted from Mr. Kang's improper remarks was cured by the Court's instructions and RBC's opportunity to rebut those statements with evidence that Mr. Mooney was not the only sales engineer laid off. *See Maxwell v. Cnty. of San Diego*, 714 F. App'x 641, 645 (9th Cir. 2017) (affirming denial of a motion for a new trial where any prejudice from counsel's improper remarks in opening and closing statements "was addressed and ameliorated by the district court's curative instructions" and opposing counsel's opportunity to rebut the statements).

Third, the jury's award of damages was "not excessive." *Kehr*, 736 F.2d at 1286. Instead, the amount awarded seems to have accurately reflected the "reasonable value of wages, salary and employment benefits lost up to December 31, 2021[.]" Dkt. No. 115 at 2 (awarding $160,000 in wages and benefits lost up to December 31, 2021); *see also* Dkt. No. 97 at 2 (Mr. Mooney's salary

with RBC was $100,000 per year or $8,333.34 per month); 5/26/2022 Closing Arguments (Mr. Mooney asked that the jury award him $175,000 for 21 months of past wages). RBC argues that the "award reflected Plaintiff's salary were his position not eliminated," a fact that in turn—according to RBC—reinforces the notion that "counsel's misstatements permeat[ed] the trial." Dkt. No. 147 at 3; *see also* Dkt. No. 132 at 6 ("The jury's award reflected the amount Mr. Mooney would have received if he remained employed but furloughed at RBC, making clear the jury believed Mr. Mooney should have been furloughed."). But the jury was not required to believe RBC's version of the facts that Mr. Mooney's position was eliminated, especially because, as RBC notes, Mr. Mooney's supervisor had to cover the territory after the RIF, which added "significant additional responsibilities," and then an employee at a subsidiary was laterally moved to cover that territory after "his own position [was] eliminated." Dkt. No. 132 at 4. Indeed, Mr. Ross testified that the Pacific Northwest territory was a valuable territory that needed salesperson coverage, that Mr. Talley and Mr. Reinhardt covered Mr. Mooney's territory in the first several months after the COVID-19 pandemic started, and that RBC laterally moved Peter Lensing to fill Mr. Mooney's position in October or November 2020. 5/24/2022 & 5/25/2022 Ross Testimony. Moreover, the Court's order on the parties' motions in limine did not preclude the parties from presenting evidence that other salespeople were partially furloughed in April 2020 while Mr. Mooney was laid off. *See* Dkt. No. 89 at 11–13. While RBC argues that the "improper statements misle[]d jurors into thinking [Mr. Mooney] was the only sales engineer not furloughed during the time RBC laid off multiple employees throughout 2020," Dkt. No. 132 at 7, both Mr. Ross and Mr. Talley testified that Mr. Mooney was the only one of 26 industrial salespeople that RBC let go in April, and all the others were furloughed one day per week starting shortly after Mr. Mooney was terminated.

5/25/2022 Ross Testimony; 5/25/2022 Talley Testimony.[6] Therefore, to the extent the jury concluded that Mr. Mooney's position was not eliminated and that he would have been furloughed with his colleagues if RBC had not terminated him, that conclusion was not contrary to the weight of the evidence. The jury also did not have to believe that Mr. Mooney would have been laid off rather than furloughed simply because Mr. Cavender was laid off in July 2020, as RBC suggests. Dkt. No. 147 at 1.

Fourth, RBC's agreement to the Court's curative actions waived its objections to the sufficiency of those actions. *See Freeman v. Astrue*, 405 F. App'x 148, 151 (9th Cir. 2010) (Freeman waived his objection to court's curative instruction when "a charging conference was held and Freeman did not object to the district court's proposed curative instruction."); *Goulet v. New Penn Motor Exp., Inc.*, 512 F.3d 34, 44 (1st Cir. 2008) (appellant waived objection when, "[i]n response to a question from the district court about whether he was satisfied with the charge the court gave, his counsel affirmatively stated, 'I'm satisfied,'" and later reiterated that the instruction was satisfactory); *Bell v. O'Reilly Auto Enterprises, LLC*, 626 F. Supp. 3d 141, 164 (D. Me. 2022) ("O'Reilly Auto waived this issue when [the court] informed O'Reilly Auto of the type of curative instruction [it] was inclined to provide, it approved, [the court] delivered that instruction, and O'Reilly Auto remained silent."), *appeal dismissed*, No. 22-1711, 2022 WL 19224931 (1st Cir. Dec. 2, 2022).[7]

In sum, Mr. Kang's misstatements in his opening and closing arguments do not warrant a new trial.

---

[6] Ms. DePaola testified that furloughs ended on March 31, 2021. 5/26/2022 DePaola Testimony.

[7] The Court notes that it would reach the same conclusions even if RBC did not waive its objections.

ORDER DENYING MOTION FOR A NEW TRIAL - 17

### III. CONCLUSION

For the foregoing reasons, the Court DENIES RBC's motion for a new trial. Dkt. No. 132.

Dated this 16th day of October, 2023.

*Lauren King*
Lauren King
United States District Judge