UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD MOONEY,<br><br>                         Plaintiff,<br>    v.<br><br>ROLLER BEARING COMPANY OF AMERICA, INC.,<br><br>                         Defendant. | CASE NO. 2:20-cv-01030-LK<br><br>ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING |

This matter comes before the Court on Plaintiff Richard Mooney's motion pursuant to Federal Rule of Civil Procedure Rule 59(e) to alter/amend the judgment to include an award of: (1) liquidated damages, (2) prejudgment interest, (3) post-judgment interest, and (4) a gross up adjustment for adverse tax consequences. Dkt. No. 130. Defendant Roller Bearing Company of America, Inc. ("RBC") opposes the motion. Dkt. No. 140. For the reasons set forth below, the Court grants the motion in part, denies it in part, defers it in part, and requests supplemental briefing.

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 1

# I. BACKGROUND

After a four-day trial, the jury rendered its verdict, finding that Mooney did not prove that extending his leave was a "substantial factor" in RBC's decision to lay him off, but did prove that it was a "negative factor" in the decision. Dkt. No. 115 at 1–2. The jury awarded him $160,000 in damages as the reasonable value of wages, salary, and employment benefits lost through December 31, 2021. *Id.* at 2. The Court entered judgment on June 2, 2022. Dkt. No. 116. Additional facts underlying this case have been set forth in prior orders and need not be repeated here except to provide context for specific issues discussed below.

# II. DISCUSSION

Mooney filed this timely motion on June 29, 2022. Dkt. No. 130; *see* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). Mooney seeks to amend the judgment to add additional relief and interest as described below.

**A. Liquidated Damages**

Mooney seeks an award of liquidated damages—in an amount equal to the damages awarded by the jury plus prejudgment interest—under both the Family and Medical Leave Act ("FMLA") and Washington's Family and Medical Leave Act ("WFMLA"). Dkt. No. 130 at 3. Both statutes provide for such an award as described below.[1]

    1)    <u>Liquidated Damages under the FMLA</u>

Under the FMLA, Mooney is entitled to liquidated damages unless RBC proves, "to the satisfaction of the court," that its actions that constituted interference with Mooney's FMLA rights

---

[1] Mooney seeks a single award of liquidated damages, not a double recovery of liquidated damages under both federal and state law. Dkt. No. 130 at 2 (seeking liquidated damages in "the amount of either $182,547.95 or $169,930.48 (verdict amount + prejudgment interest), depending on the Court's determination as to which statutory interest rate applies to the claims.").

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 2

were "in good faith" and that it "had reasonable grounds for believing that the act or omission was not a violation" of the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii). There is a "strong presumption" in favor of liquidated damages, and "it is the employer's burden to overcome this presumption by proving its reasonableness and good faith." *Isom v. JDA Software, Inc.*, 225 F. Supp. 3d 880, 887 (D. Ariz. 2016). If RBC makes that showing, the Court can decline to award liquidated damages or reduce the amount available under the statute. 29 U.S.C. § 2617(a)(1)(A)(iii).

To determine if the employer acted in good faith, district courts evaluate the facts based on the "most reasonable interpretation of the jury's verdict." *Cloutier v. GoJet Airlines*, 996 F.3d 426, 446 (7th Cir. 2021). Courts cannot disregard the jury's findings in their decisions on liquidated damages. *Atwood v. PCC Structurals*, 3:14-cv-00021-HZ, 2015 WL 9480024, at *2 (D. Or. Dec. 28, 2015) ("Accepting Defendant's characterization of these key 'events,' however, would require this Court to contradict the jury's factual findings."). A court that declines to award liquidated damages must "articulate its reasoning" so the appellate court can "ascertain how the district court exercised its discretion." *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1015–16 (9th Cir. 2010); *see also Atwood*, 2015 WL 9480024, at *2 (explaining that the court "must make specific findings that the employer's FMLA violation was in good faith and that the employer had reasonable grounds for believing that its conduct did not violate the FMLA.").

Mooney argues that the Court must conclude that RBC did not act in good faith because the jury found that RBC considered his protected leave as a negative factor in deciding to discharge him, Dkt. No. 130 at 4; *see also* Dkt. No. 115 at 2, and doing so violated the FMLA. *Bachelder v. Am. W. Airlines*, 259 F.3d 1112, 1124 (9th Cir. 2001) (an employer's use of "the taking of FMLA leave as a negative factor in employment actions" violates the FMLA). Therefore, a determination that RBC acted in good faith—despite violating the law—would improperly disregard the jury's finding. Dkt. No. 130 at 4–5. RBC counters that the damages the jury awarded were effectively

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 3

front pay because his position was eliminated, and the Court cannot award liquidated damages on front pay awards. Dkt. No. 140 at 7–8. The Court agrees with Mooney.

Front pay is future lost wages or an award of damages for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement. *See Traxler*, 596 F.3d at 1009 n.1; *see also Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). The jury's verdict did not include an award for front pay and explicitly stated that the damages it awarded represented Mooney's "damages related to the reasonable value of wages, salary and employment benefits lost *up to December 31, 2021*" that were proximately caused by RBC's conduct. Dkt. No. 115 at 2 (emphasis added).[2] Nor could the jury have awarded front pay because the Court—not the jury—decides both the availability of front pay and the amount of a front pay award under the FMLA. *Traxler*, 596 F.3d at 1011. Mooney did not request, and the Court did not award, front pay.

In the same vein, RBC argues that "[a]n award representing pay that a plaintiff would have received up until the time they were furloughed is best characterized as front pay." Dkt. No. 140 at 6. Even if that were true, Mooney was not furloughed, and there was no evidence that he would have been furloughed on December 31, 2021, the end date of his damages. Dkt. No. 115 at 2.

RBC also argues that it acted in good faith because it eliminated Mooney's position for financial reasons. Dkt. No. 140 at 7–9.[3] The jury was not required to believe RBC's testimony to that effect, and it apparently rejected it at least in part by concluding that RBC considered Mooney's FMLA leave a negative factor in the layoff decision. *See, e.g.*, *Traxler v. Multnomah Cnty.*, No. 06-1450-KI, 2010 WL 3069340, at *1 (D. Or. Aug. 2, 2010) (rejecting the employer's

---

[2] At RBC's request, the Court deleted from the proposed jury instructions and verdict form references to future economic damages, Dkt. No. 146-1 at 14–15, 27, and the final versions did not reference front pay, Dkt. Nos. 106, 115.

[3] The case RBC cites in support of this proposition arose under the Energy Reorganization Act and is inapposite. Dkt. No. 140 at 5 (citing *Blackburn v. Martin*, 982 F.2d 125, 129 (4th Cir. 1992)).

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 4

argument regarding good faith because "[t]he jury's award . . . makes it clear that the jury did not believe all of this testimony"); Dkt. No. 115 at 2. Nor did the evidence support that RBC terminated Mr. Mooney's position altogether. Indeed, Mr. Ross testified that the Pacific Northwest territory was a valuable territory that needed salesperson coverage, that Mr. Talley and Mr. Reinhardt covered Mr. Mooney's territory in the first several months after the COVID-19 pandemic started, and that RBC laterally moved Peter Lensing to fill Mr. Mooney's position in October or November 2020. 5/24/2022 & 5/25/2022 Ross Testimony. In light of the verdict, the Court cannot find that RBC acted in good faith because doing so would be inconsistent with the jury's finding that RBC considered Mooney's leave a negative factor in its decision to lay him off. Dkt. No. 115 at 2. RBC has not shown—or even argued—that it could have considered Mooney's FMLA leave as a negative factor in good faith. Nor could it, because considering FMLA leave as a negative factor in a termination decision violates the FMLA. *See Bachelder*, 259 F.3d at 1124; *see also* 29 U.S.C. §2617(a)(1)(A)(iii) (allowing courts to reduce liquidated damages amounts "if an employer who has violated [the FMLA] proves to the satisfaction of the court that the act or omission which violated [the FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission *was not a violation of [the FMLA]*" (emphasis added)).[4] An award of liquidated damages is therefore warranted.

Turning to the amount of the award, the FMLA provides for liquidated damages "equal to the sum of the amount" of "any actual monetary losses sustained by the employee as a direct result of the [FMLA] violation" plus prejudgment interest on that amount. 29 U.S.C. § 2617(a)(1)(A)(i)–(iii). The statute therefore entitles Mooney to liquidated damages of $160,000 plus prejudgment

---

[4] The jury's finding distinguishes this case from *Thorson v. Gemini, Inc.*, on which RBC relies, where the court held that the employer "had a good faith belief that the provisions of the [FMLA] did not apply, accompanied by an honest intention to learn and follow the law." 96 F. Supp. 2d 882, 889 (D. Iowa 1999). RBC has never argued that it believed the FMLA was inapplicable to Mooney's leave, and it approved his leave and its subsequent extension as FMLA-qualifying. Dkt. No. 139-5 at 4.

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 5

interest on that amount. RBC argues that any award of liquidated damages should be reduced because the jury found that the leave was not a significant factor in Mooney's layoff and his counsel engaged in misconduct during the trial. Dkt. No. 140 at 10. RBC cites nothing to support reductions on either basis, and its argument is inconsistent with the statute, which includes a "presumption" in favor of an award of liquidated damages and describes the limited circumstances when they can be denied (none of which apply here). *Isom*, 225 F. Supp. 3d at 887; *see also* 29 U.S.C. § 2617(a)(1)(A)(iii). Accordingly, Mooney is entitled to an award of liquidated damages under the FMLA of $160,000 plus prejudgment interest as set forth below. *See* 29 U.S.C. § 2617(a)(1)(A)(iii).

        2)      <u>Liquidated Damages under the WFMLA</u>

If an employer commits a "willful" violation of the WFMLA, it is liable for an award of liquidated damages in an amount "equal to the sum of the amount" of "wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation" of the statute plus "interest accrued on the damages" at the prevailing rate. Wash. Rev. Code § 50A.40.030(3)–(5).[5] "'[W]illful' means a knowing and intentional action that is neither accidental nor the result of a bona fide dispute." *Id.* § 50A.40.030(4). Neither party cites cases interpreting that provision, and they instead rely on cases interpreting Washington's minimum wage statute. Dkt. No. 130 at 5–6; Dkt. No. 140 at 8 (citing *Schilling v. Radio Holdings, Inc.*, 961 P.2d 371 (Wash. 1998) and arguing that "a bona fide dispute exists when there is a 'fairly debatable' dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid").

---

[5] Like the FMLA, the WFMLA prohibits an employer from using an employee's taking of leave protected by the statute as a negative factor in employment actions. Dkt. No. 106 at 10; Wash. Rev. Code § 50A.40.010(1)(a).

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 6

1    Mooney argues that RBC's decision to consider his leave in deciding to discharge him
2    "was a knowing and intention[al] act." Dkt. No. 130 at 6. RBC counters that "[t]he jury's finding
3    that Mr. Mooney's extension of his FMLA leave was not **a substantial factor** in his termination
4    compels a conclusion that the FMLA violation was not willful." Dkt. No. 140 at 8.
5    As this Court previously determined, a plaintiff's FMLA leave can be a "negative factor"
6    in an employer's termination decision without necessarily being a "substantial factor." Dkt. No.
7    156 at 10–11. RBC does not argue that its consideration of Mooney's leave as a negative factor in
8    its termination decision was somehow accidental. Nor has it shown the existence of a bona fide
9    dispute; it never disputed that an employment relationship existed, that Mooney was entitled to
10   FMLA leave, or that his leave was FMLA-qualifying. And RBC's consideration of Mooney's
11   leave as a negative factor in his discharge violated the WFMLA even if RBC may have had
12   additional, legitimate reasons to discharge him. Dkt. No. 106 at 12. Therefore, RBC's conduct was
13   willful and entitles Mooney to liquidated damages under the WFMLA.

14   **B.    Prejudgment Interest**

15   The parties dispute both Mooney's entitlement to prejudgment interest and the applicable
16   interest rate. The Court finds that Mooney is entitled to prejudgment interest at the federal rate.

17       1) <u>Mooney Is Entitled to Prejudgment Interest</u>

18   Both the FMLA and the WFMLA provide for an award of prejudgment interest on
19   Mooney's damages award at the "prevailing rate." 29 U.S.C. §2617(a)(1)(A)(ii); Wash. Rev. Code
20   § 50A.40.030(5). Prejudgment interest on FMLA damages is mandatory. *See, e.g.*, *Lane v. Grant
21   Cnty.*, No. CV-11-309-RHW, 2013 WL5306986, at *10 (E.D. Wash. Sept. 20, 2013), *aff'd* 610 F.
22   App'x 698, 699 (9th Cir. 2015). The WFMLA "mirrors its federal counterpart and provides that
23   courts are to construe its provisions in a manner consistent with similar provisions of the FMLA."
24   *Martinez Patterson v. AT&T Servs. Inc.*, C18-1180-RSM, 2021 WL 3617179, at *11 (W.D. Wash.

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL
BRIEFING - 7

1  Aug. 16, 2021) (quoting *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269 (W.D.

2  Wash. 2013)). The Court therefore assumes that prejudgment interest on WFMLA damages is

3  mandatory too, as provided in the statute. *See* Wash. Rev. Code § 50A.40.030(3)(b) ("Any

4  employer who violates RCW 50A.40.010," which prohibits interfering with rights under the

5  statute, "is also liable for interest accrued on the damages").

6        Prejudgment interest is an element of compensation, not a penalty, and has the primary

7  purpose of making an aggrieved party whole. *See Dishman v. UNUM Life Ins. Co. of Am.*, 269

8  F.3d 974, 988 (9th Cir. 2001). Because "money has a time value," prejudgment interest is often

9  "necessary in the ordinary case to compensate a plaintiff fully" for a loss previously incurred and

10 later compensated. *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 922 (9th Cir. 1995) (quoting

11 *Partington v. Broyhill Furniture Indus.*, 999 F.2d 269, 274 (7th Cir. 1993)).

12       RBC argues that Mooney is not entitled to prejudgment interest because the jury's "award

13 was the equitable equivalent of reinstatement because his position had been eliminated." Dkt. No.

14 140 at 10. It notes that 29 U.S.C. § 2617(a)(1)(A) provides for interest on an award of "wages,

15 salary, employment benefits, or other compensation denied or lost to such employee by reason of

16 the violation," but it claims that Mooney's award was obtained pursuant to 29 U.S.C.

17 § 2617(a)(1)(B), which provides for "equitable relief . . . including . . . reinstatement[.]" *Id.* RBC's

18 argument is meritless. The jury explicitly awarded $160,000 as "the amount of Mr. Mooney's

19 damages related to the reasonable value of wages, salary and employment benefits lost[.]" Dkt.

20 No. 115 at 2. Characterizing that award now as front pay or other equitable relief in lieu of

21 reinstatement is directly contradicted by the jury's award. Mooney is entitled to prejudgment

22 interest.

23

24

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 8

### 2) The Federal Prejudgment Interest Rate Applies

The parties vigorously dispute whether the federal or state prejudgment interest rate applies. Mooney contends that Washington law applies because he has obtained a judgment on his state law claim. Dkt. No. 130 at 7. RBC argues that if the Court awards prejudgment interest, it should do so at the federal rather than the state rate. Dkt. No. 140 at 10–11.

The applicable rate of prejudgment interest depends on the nature of the claims. "State law generally governs awards of prejudgment interest in diversity actions, but federal law may apply to the calculation of prejudgment interest when a substantive claim derives from federal law alone." *Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 961 (9th Cir. 2008). This case does not fit neatly into either category because Mooney prevailed on both federal and state law claims, the jury's award did not segregate the damages, and the Court entered judgment on both claims. Dkt. Nos. 115, 116. In cases where a plaintiff has prevailed on both state and federal claims and the Court has both diversity and federal question jurisdiction, the Court has "discretion to apply the federal pre-judgment interest standard." *Rhoten v. Rocking J. Ranch, LLC*, CV21-46-M-DLC, 2022 WL 17128639, at *2 (D. Mont. Nov. 22, 2022) (quoting *ECDC Env't, L.C. v. New York Marine & Gen. Ins. Co.*, No. 96 Civ. 6033 (BSJ), 1999 WL 595450, at *11 (S.D.N.Y. Aug. 6, 1999)); *see also Mandelbaum v. Vo*, No. CV11-02835MMM(RZx), 2012 WL 13008419, at *9 (C.D. Cal. Nov. 15, 2012). The FMLA does not set a specific interest rate, and instead provides for interest at the "prevailing rate." 29 U.S.C. § 2617(a)(1)(A)(ii). That rate is appropriately set based on "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 . . . unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007) (cleaned up); *see also Zenovic v. Crump (In re Zenovic)*, 727 F. App'x 369, 369 (9th Cir. 2018) ("[t]he federal prejudgment interest rate applies to actions brought under

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 9

federal statute . . . unless the equities of the case require a different rate"). Section 1961 states in pertinent part: "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

Under similar circumstances, courts in this district and elsewhere have applied the prejudgment interest rate under 28 U.S.C. § 1961. *See, e.g.*, *Coachman v. Seattle Auto Mgmt., Inc.*, No. C17-187-RSM, 2019 WL 4695660, at *1, 7 (W.D. Wash. Jan. 3, 2019) (awarding prejudgment interest pursuant to 28 U.S.C. § 1961 on federal and state anti-discrimination claims); *Humann v. City of Edmonds*, No. 2:13-cv-00101-MJP, 2015 WL 3539569, at *1–2 (W.D. Wash. June 3, 2015) (awarding interest at the federal rate where plaintiff prevailed on both a state law claim and a claim under 42 U.S.C. § 1983); *Hutchins v. DirecTV Customer Serv., Inc.*, No. 1:11–CV-422-REB, 2014 WL 3572045, *1, 18–19 (D. Idaho July 21, 2014) (awarding prejudgment interest pursuant to 28 U.S.C. § 1961 on federal and state anti-discrimination claims); *but see Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1091–1097 (E.D. Cal. 2011) (setting prejudgment interest rate by averaging state and federal rates where the court could not distinguish verdict for violations of the FMLA and state law). For example, in *Arnold v. Pfizer Inc.*, the court applied the federal rate where a plaintiff prevailed on federal and state claims, noting that because the jury did not allocate damages, the court could not "conclude that [plaintiff's] economic damages were based exclusively on state law." No. 10-CV-01025-AC, 2015 WL 1262775, at *3 (D. Or. Mar. 18, 2015). The court explained:

> Arnold invoked the court's federal question jurisdiction by filing her claims initially in this court, which weighs in favor of applying a federal rate to her claims. Thus, Arnold['s] claims did not come to this court by removal from state court or because there is diversity of citizenship between the parties. In such cases, application of a higher, state rate may be justified.

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 10

*Id.*

  Mooney argues that by filing his claims in state court, his "intention was to invoke the state's substantive laws for his claims, including his claim for interest." Dkt. No. 145 at 6. But Mooney also asserted—and prevailed on—a federal claim. Dkt. No. 116. That claim provided a basis for federal question jurisdiction, and it was also that claim that provided the legal standards for the jury instructions and verdict form. *See* Dkt. No. 82 at 4–5, 8 (Mooney's proposed jury instructions and verdict form citing and relying on federal law); Dkt. No. 85 at 4–5 (Mooney's trial brief arguing that the Court should apply the federal "negative factor" standard to his claim under the WFMLA, which "mirrors its federal counterpart"); Dkt. No. 106 at 11–12 (jury instructions using the "negative factor" standard for both claims); Dkt. No. 115 at 2 (jury's finding that Mooney extending his medical leave was "a negative factor" in RBC's decision to lay him off). Accordingly, there is no basis to conclude that the verdict was based only on the state law claim, and the Court applies the federal interest rate.

  The Court applies the rate in Section 1961 because the equities do not require a different result. The Court must also consider when to set the rate, which matters because it fluctuates over time. 28 U.S.C. § 1961(a). RBC argues that the Court should apply the rate of 3.25 percent, which was the prime rate when Mooney was laid off in April 2020. Dkt. No. 140 at 11 & n.16. In his reply, Mooney notes that the federal interest rate was 4.75 percent as of July 2022 (when he filed his reply in support of this motion), Dkt. No. 145 at 5, but he provides no argument or authority in support of using that rate or date. His expert uses a fluctuating rate. Dkt No. 131 at 5, 11. The Court finds that using a fluctuating rate is the most accurate way to compensate Mooney for the

lost use of his wages between his first lost paycheck[6] and the jury's verdict. *See, e.g.*, *Saavedra v. Korean Air Lines Co.*, 93 F.3d 547, 555 (9th Cir. 1996) ("The most accurate way to fully compensate a plaintiff would be to award prejudgment interest from the date of injury, but at a fluctuating rate."); *Kingston v. Int'l Bus. Machs.*, C19-1488-MJP, 2021 WL 2662219, at *6 (W.D. Wash. June 29, 2021) (same). A fluctuating rate is appropriate because prejudgment interest is a "compensatory measure." *Saavedra*, 93 F.3d at 555; *see also Kingston*, 2021 WL 2662219, at *6 (explaining that "the purpose of prejudgment interest under both federal and Washington law claims is to fully compensate the plaintiff").

Because Mooney's filings do not calculate prejudgment interest at any federal rate, he is ordered to recalculate the prejudgment interest on the jury's award under 28 U.S.C. § 1961 at a fluctuating T-Bill rate from his first lost wage payment until the judgment was entered. *See Saavedra*, 93 F.3d at 555 (explaining that the Ninth Circuit has applied Section 1961's "presumption in favor of using T–Bill rates in the context of prejudgment interest"). Once Mooney calculates that amount, the parties are ordered to meet and confer to attempt to reach agreement. If they cannot agree, they may include their respective positions with their supplemental briefing as set forth below in two additional pages.

**C.     Post-Judgment Interest**

The award of post-judgment interest on a district court judgment is "mandatory." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013) (holding that the district court abused its discretion by failing to award interest); *see also* 28 U.S.C. § 1961; *Air Separation Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (explaining that "[f]ailure to

---

[6] Mooney's first lost wage payment was May 31, 2020. Dkt. No. 131 at 11; *see also Arnold*, 2015 WL 1262775, at *3 (awarding prejudgment interest at rate set forth in 28 U.S.C. § 1961 on plaintiff's economic damages award from the first full month following her termination).

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 12

award postjudgment interest would create an incentive for defendants to exploit the time value of money by frivolously appealing or otherwise delaying payment."). RBC does not dispute Mooney's entitlement to post-judgment interest, but argues that it should be limited to 3.25 percent and "be calculated solely on the $160,000 jury award" because Mooney is not entitled to the other categories of relief he seeks in this motion. Dkt. No. 140 at 2, 11–12. Mooney argues that the rate should be set at either six or 12 percent under state law, and post-judgment interest should be applied to his full award, including liquidated damages, prejudgment interest, gross up adjustments, attorney's fees, and costs. Dkt. No. 130 at 9.

For the same reasons set forth above, the Court awards post-judgment interest at the federal rather than the state rate. 28 U.S.C. § 1961; *see also Van Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1092 (9th Cir. 2014) ("We have construed the language of section 1961 to be mandatory in cases awarding post judgment interest, including cases seeking back pay." (cleaned up)). RBC's argument that because Mooney "is not entitled to liquidated damages, prejudgment interest or a gross up award, postjudgment interest should only apply to the $160,000 award," Dkt. No. 140 at 11–12, is unavailing because the Court has awarded liquidated damages and prejudgment interest. And "once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed." *Perkins v. Standard Oil Co. of Cal.*, 487 F.2d 672, 675 (9th Cir. 1973). Following that principle, courts have applied post-judgment interest to attorney's fees, costs, punitive damages, exemplary damages, fraud penalties, and prejudgment interest awarded by the court. *See Air Separation, Inc.*, 45 F.3d at 290–91. Accordingly, Mooney is entitled to an award of post-judgment interest at the federal rate pursuant to 28 U.S.C. § 1961 from the date of the judgment through satisfaction of the judgment on the full amount of the judgment, including prejudgment interest, liquidated damages, costs, a gross up for taxes, and attorney's fees.

### D. Gross Up for Taxes

Mooney seeks a gross up adjustment for the adverse tax consequences he will experience from receiving a lump sum award of back pay as awarded by the jury. Dkt. No. 130 at 9–12; Dkt. No. 115 at 2 (awarding $160,000).[7] Mooney contends that receiving the lump sum back pay award (plus liquidated damages) in a single year pushes his income into a higher tax bracket, so he will pay approximately $45,000 more in taxes on his back pay award than he would have if he had retained his employment and received wages over a period of time in 2020 and 2021. Dkt. No. 130 at 11; Dkt. No. 131 at 3. RBC counters that a gross up is discretionary, and the Court should deny an award because the supporting expert declaration from Mr. Brandt is based on incorrect factual premises and because Mooney achieved only "marginal success." Dkt. No. 140 at 12–13. Neither of those arguments has merit.

Although a prevailing plaintiff in a Title VII case is not "presumptively entitled to an additional award to offset tax consequences," the decision of whether to award a gross up and in what amount "is left to the sound discretion of the trial court." *Clemens v. CenturyLink Inc.*, 874 F.3d 1113, 1117 (9th Cir. 2017). Gross ups may be appropriate because awards of back pay are taxable, and "a lump-sum award will sometimes push a plaintiff into a higher tax bracket than he would have occupied had he received his pay incrementally over several years." *Id.* at 1116. Burdening the plaintiff with a higher tax bill is inconsistent with the purpose of Title VII, which is designed to provide make-whole relief and "eliminate the discriminatory effects of the past[.]" *Id.* (cleaned up); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–19 (1975) (courts must make victims "whole" by placing them, "as near as may be, in the situation [they] would have occupied

---

[7] Although the jury's award represents "the reasonable value of wages, salary and employment benefits lost," Dkt. No. 115 at 2, neither party contends that the award represents "benefits." Nor was there any evidence at trial regarding lost benefits. Therefore, the award represents lost pay, not benefits.

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 14

if the wrong had not been committed"). Nevertheless, gross ups may not be appropriate "for a variety of reasons, such as the difficulty in determining the proper gross up or the negligibility of the amount at issue." *Clemens*, 874 F.3d at 1117. And the party seeking a gross up "bear[s] the burden of showing an income-tax disparity and justifying any adjustment." *Id.*

Although the Ninth Circuit has not addressed whether the FMLA authorizes a gross up, the similarities between its language and the language in Title VII suggest that it does. Title VII authorizes district courts to award "reinstatement or hiring of employees . . . or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). The FMLA contains similar language authorizing district courts to award "equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). The inclusion of language authorizing courts to award equitable relief "as may be appropriate" suggests that, like Title VII, the FMLA allows courts to award a gross up for taxes to make plaintiffs whole. *See, e.g.*, *White v. Oxarc, Inc.*, No. 1:19-cv-00485-CWD, 2022 WL 17668781, at *22–23 (D. Idaho Dec. 13, 2022) (assuming that a gross up for FMLA damages was permissible but declining to award a gross up); *Powell v. North Arkansas Coll.*, No. 08-3042, 2009 WL 1904156, at *3 (W.D. Ark. Jul. 1, 2009) (explaining in an FMLA case that "if the back pay awarded by the jury will push [plaintiff] into a higher tax bracket than she would have been in had the monies been timely paid, in equity the [defendant] should be required to cover that expense as part of making [plaintiff] whole"); . The FMLA's status as a "remedial statute" further supports interpreting it broadly. *Sullivan v. Dollar Tree Stores, Inc.*, No. CV-07-5020-EFS, 2008 WL 1730079, at *8 (E.D. Wash. Apr. 10, 2008); *see also Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 195 (3rd Cir. 2015) (the "FMLA constitutes remedial legislation that must be broadly construed in order to give full effect to [its] purposes") (cleaned up); *Cobb v. Cont. Transp., Inc.*, 452 F.3d 543, 559 (6th Cir. 2006) ("Following traditional canons of statutory interpretation, remedial statutes should be construed

broadly to extend coverage[.]"). RBC does not dispute that the Court has discretion to gross up the award, and the Court concludes that it does.

Mooney specifically contends that he will suffer adverse tax consequences from receiving the lump sum award because the award—comprising what the jury awarded and liquidated damages—will be fully taxable in the year received. Dkt. No. 131 at 3. Mooney will incur an additional tax burden for two reasons: (1) he will receive the award as a lump sum, rather than as wages over a period of two years in 2020 and 2021, and (2) the back pay is aggregated with the liquidated damages award. *Id.* As a result, he would have paid an additional $45,382 in taxes in 2022, a figure that reflects:

> only the excess tax burden he now faces on his back pay award and liquidated damages, if awarded, beyond the incomes taxes he would otherwise have to pay on those amounts without the tax burden of the underlying lump-sum back pay (which would otherwise have been paid and taxed in prior years, but for his [w]rongful [t]ermination).

*Id.* at 4 (emphasis omitted). Without the inclusion of liquidated damages, Mooney "will need an additional $27,155 adverse tax award to recover the same after-tax income he would otherwise have earned, but for his [w]rongful [t]ermination[.]" *Id.* at 5.

RBC counters that Mr. Brandt's declaration should be disregarded because Mr. Brandt is incorrect that (1) Mooney will be awarded liquidated damages, and (2) Mooney will receive his full award, when in fact, his "attorney will take 45 percent of the $160,000 award before distributing Plaintiff's share." Dkt. No. 140 at 12–13. But RBC is wrong on both counts. First, the Court is awarding liquidated damages, as set forth above. Second, the Supreme Court has held that litigants who recover in employment lawsuits must include in their reported gross income the portion of a taxable recovery paid to their attorneys under contingent fee agreements. *C.I.R. v. Banks*, 543 U.S. 426, 429–30 (2005); *see also Green v. Comm'r*, 312 F. App'x 929, 930 (9th Cir. 2009) (explaining that under *Banks*, "even state laws that purport to give attorneys an ownership

ORDER REGARDING MOTION TO AMEND THE JUDGMENT AND REQUESTING SUPPLEMENTAL BRIEFING - 16

interest in their fees do not materially alter the principal/agent relationship of the attorney and client, so that the client need not recognize the income"); *Sinyard v. Comm'r*, 268 F.3d 756, 757, 759 (9th Cir. 2001) (holding that attorney's fees paid on a prevailing party's behalf under the Age Discrimination in Employment Act is income to the prevailing party). Therefore, even if Mooney will be required to pay a portion of his award to his attorney, he must still report his award as income.

Finally, RBC contends that the jury's award is "sufficient" to make him whole, especially in light of the pre- and post-judgment interest Mooney will receive. Dkt. No. 140 at 13. But Mooney's recovery of statutorily mandated interest does not affect whether he should receive equitable, make-whole relief.

Having determined that Mooney should be awarded a gross up for his adverse tax consequences, two issues remain: first, whether Mooney is entitled to a gross up of his liquidated damages, and second, what Mr. Mooney's tax situation is in 2023.

With respect to the first issue, Mr. Brandt explains that "Mooney's comparative tax burden on his liquidated damages" is higher because of "the additional burden of his lump-sum back pay award in 2022." Dkt. No. 131 at 3–4. The award of both liquidated damages and back pay in 2022 "will push his income" into a higher tax bracket than he would have been in if the jury's award had been paid as wages in 2020 and 2021. *Id.* at 3 n.1. But even if Mooney's tax burden on his liquidated damages award is higher because of the payment of the lump-sum back pay now, Mooney cites no authority allowing a court to gross up an award of liquidated damages, and it is his burden to justify the amount of any gross up. *Clemens*, 874 F.3d at 1117 (noting that the purpose of equitable relief is "to make persons whole for injuries suffered on account of unlawful employment discrimination" (quoting *Albemarle Paper Co.*, 422 U.S. at 418)). The purpose of a gross up is to eliminate the adverse tax consequences flowing from the employer's wrongful

actions, and Mooney would not be entitled to liquidated damages absent that conduct. Grossing up the liquidated damages award would grant Mooney a windfall, not make him whole by putting him in the position he would have been in but for the wrongful conduct. *Ward v. Shelby Cnty.*, No. 2:20-CV-02407-JPM-CGC, 2022 WL 16557639, at *3 (W.D. Tenn. Oct. 31, 2022) ("[I]t does not appear that equity requires a tax offset for liquidated damages, since Plaintiff would not be entitled to these damages but for the present litigation and therefore the only way these damages would be paid out is in one lump sum, not across several years."). Therefore, Mooney has not supported his request to gross up his liquidated damages award.

Second, Mr. Brandt's calculations relied on Mooney's tax outlook for 2022, Dkt. No. 131 at 4, 8, but it is now 2023. Therefore, the Court requests supplemental briefing from the parties regarding the proper calculation based on Mooney's tax situation in 2023. Mooney is ordered to provide a supplemental declaration from Mr. Brandt or another expert within 30 days of this Order and may file an accompanying brief of not more than three pages without footnotes. RBC may file a responsive brief not to exceed three pages, and not to include footnotes, within 14 days thereafter.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part, DENIES in part, and DEFERS in part Mr. Mooney's motion to amend the judgment, Dkt. No. 130, and ORDERS the parties to supplement the record as follows:

1. Mooney is ordered to provide a supplemental declaration from Mr. Brandt or another expert within 30 days of this Order and may file an accompanying supplemental brief of not more than three pages without footnotes. RBC may file a responsive brief not to exceed three pages, and not to include footnotes, within 14 days thereafter.

2. Mooney is ordered to recalculate the prejudgment interest on the jury's award under 28 U.S.C. § 1961 at a fluctuating T-Bill rate from his first lost wage payment until the judgment was entered. Once Mooney calculates that amount, the parties are ordered to meet and confer to attempt to reach agreement. If they cannot agree, they may include their respective positions with their supplemental briefing; such positions may not exceed two pages out of the total of five pages allowed for each side's supplemental brief. If they can agree, they must submit a joint brief of up to two pages addressing the prejudgment interest amount within 30 days of the date of this Order.

Dated this 23rd day of October, 2023.

*Lauren King*

Lauren King
United States District Judge