1

2

3

4

5

6

7

8
                        UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
9                                 AT SEATTLE

10

11      RICHARD MOONEY,                        CASE NO. 2:20-cv-01030-LK

                        Plaintiff,             ORDER GRANTING IN PART
12                                             AND DENYING IN PART
             v.                                MOTIONS FOR ATTORNEY FEES
13                                             AND NON-TAXABLE COSTS
        ROLLER BEARING COMPANY OF
14      AMERICA, INC.,

15                      Defendant.

16

17           This matter comes before the Court on Plaintiff Richard Mooney's Motion for Attorney

18      Fees, Dkt. No. 118, Supplemental Motion for Attorney Fees, Dkt. No. 150, and Motion for an

19      Award of Taxable and Nontaxable Costs, Dkt. No. 123. Defendant Roller Bearing Company of

20      America, Inc. ("RBC") opposes the motions. Dkt. Nos. 127, 137, 152. For the reasons discussed

21      below, the Court grants in part and denies in part the motions for attorney fees and costs, and grants

22      the supplemental motion for attorney fees.

23

24

## I.   BACKGROUND

After a four-day trial, the jury rendered its verdict. Dkt. No. 115. It found that Mooney did not prove that extending his medical leave was a "substantial factor" in RBC's decision to lay him off for purposes of his claim under the Washington Law Against Discrimination ("WLAD"), but found it was a "negative factor" in the decision for purposes of the Family and Medical Leave Act ("FMLA") and Washington's Family and Medical Leave Act ("WFMLA"). Dkt. No. 115 at 1–2. The jury awarded him $160,000 in damages as the reasonable value of wages, salary, and employment benefits lost through December 31, 2021. *Id.* at 2. The Court entered judgment on June 2, 2022. Dkt. No. 116.

After obtaining his verdict, Mooney filed a motion to recover his attorney fees under the FMLA and WFMLA in the amount of $354,547.50 for work performed from April 28, 2020 to June 2, 2022. Dkt. No. 118 at 2. He also requested "a 1.5 upward adjustment of the lodestar based on the contingent nature of success and the quality of work performed on this case." *Id.* And he filed a supplemental motion for attorney fees in the amount of $66,730 for work on his post-judgment motions. Dkt. No. 150 at 1; Dkt. No. 153 at 4.

Mooney also filed a motion for an award of taxable and non-taxable costs, which was referred to the Court's Deputy in Charge. Dkt. No. 123; June 22, 2022 Minute Entry. The Deputy in Charge granted the motion in part and awarded taxable costs of $6,223.64. Dkt. No. 148 at 2. That Order stated that the Clerk could not consider the request for non-taxable costs, *id.*, and the request for those costs is before the Court, Dkt. No. 149.

## II.   DISCUSSION

The Court first addresses Mooney's motion for attorney fees, Dkt. No. 118, then his supplemental motion for fees for his post-trial motions, Dkt. No. 150, and finally, his motion for non-taxable costs. Dkt. No. 123.

**A.     Attorney Fees Through the Verdict**

      1.   <u>The Scope of the Record</u>

      Before addressing the substance of Mooney's motion for fees, the Court considers the scope of the record regarding that motion. Mooney requests that the Court strike RBC's response, Dkt. No. 127, beginning at page 13 because the response is approximately 17 pages, well in excess of the 12-page limit in the version of Local Civil Rule 7 in effect at the time.[1] LCR 7(e)(4); Dkt. No. 133 at 2. RBC did not seek permission to file an overlength brief. LCR 7(f). Excluding the caption from the page limit as set forth in LCR 7(e)(6) takes the permissible 12 pages through the middle of the chart on page 13 of RBC's brief. For completeness, the Court considers the whole chart on page 13 but thereafter "refuse[s] to consider [the] text, including footnotes, which is not included within the page limits." 2022 Local Civil Rule 7(e)(6).

      After Mooney filed his request to strike, which was properly included in his reply brief pursuant to Local Civil Rule 7(g), RBC filed a surreply. Dkt. No. 136. A party may file a surreply that "requests to strike material contained in or attached to a reply brief[.]" LCR 7(g). A surreply "shall be strictly limited to addressing the request to strike. Extraneous argument or a surreply filed for any other reason will not be considered." LCR 7(g)(2). RBC's surreply is not limited to "requests to strike material" in Mooney's reply brief and instead is a belated request for the Court to grant it an overlength brief. *See generally* Dkt. No. 136. Because Local Civil Rule 7(g) does not allow a surreply under those circumstances, and because requests for leave to file an over-length brief must be filed via an appropriate (and timely) motion, *see* LCR 7(f), the Court does not consider RBC's surreply.

---

[1] After RBC filed its brief, the Local Civil Rules were updated to impose word count limits in place of page limits. The Local Civil Rules that were in effect at the time RBC filed its overlength brief are available here: https://www.wawd.uscourts.gov/sites/wawd/files/WAWD%20All%20Local%20Civil%20Rules%20Clean%202022.pdf.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY FEES AND NON-TAXABLE COSTS - 3

2.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 54(d) provides a mechanism for awarding costs and attorney fees when otherwise authorized by "statute, rule, or other grounds[.]" Fed. R. Civ. P. 54(d)(2)(B)(ii). An award of attorney fees to a successful FMLA plaintiff is mandatory: "The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3); *see also McDonnell v. Miller Oil Co.*, 134 F.3d 638, 641 (4th Cir. 1998); *Covelli v. Avamere Home Health Care LLC*, No. 3:19-CV-486-JR, 2022 WL 575966, at *1 (D. Or. Feb. 25, 2022); *Peak v. Forever Living Prods. Int'l, Inc.*, No. CV 11-903-PHX-SRB, 2011 WL 13174334, at *8 (D. Ariz. Sept. 30, 2011). The WFMLA includes a nearly identical provision requiring that courts "shall" award fees. Wash. Rev. Code § 50A.40.040(3).

Attorney fee awards in FMLA cases are determined by calculating the "lodestar figure," which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Isom v. JDA Software, Inc.*, 225 F. Supp. 3d 880, 888 (D. Ariz. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Washington courts also use the lodestar approach. *See, e.g.*, *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 203 (Wash. 1983).[2] The lodestar figure is presumptively a reasonable fee award. *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). Courts "must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000); *see Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975),

---

[2] Federal courts exercising pendent jurisdiction over state claims must apply state law when determining fees for those claims. *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478–79 (9th Cir. 1995); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees.").

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY FEES AND NON-TAXABLE COSTS - 4

1    *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992); *Bowers*, 675

2    P.2d at 204 (courts may adjust the lodestar amount to consider factors not already considered). The

3    Court need not consider all of the *Kerr* factors, however, unless necessary to support the

4    reasonableness of the fee award. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002).

5       "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing

6    perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Although the district court retains "a great deal

7    of discretion" in determining the reasonableness of fees, *Gates v. Deukmejian*, 987 F.2d 1392,

8    1398 (9th Cir. 1992), it must "provide a concise but clear explanation of its reasons for the fee

9    award," *Hensley*, 461 U.S. at 437.[3] The Ninth Circuit has interpreted the "concise but clear"

10    directive as requiring district courts to "show their work when calculating attorney's fees." *Padgett*

11    *v. Loventhal*, 706 F.3d 1205, 1208 (9th Cir. 2013). There is an inverse relationship between the

12    amount of detail required and the district court's departure from the requested amount. "Where the

13    difference between the lawyer's request and the court's award is relatively small, a somewhat

14    cursory explanation will suffice. But where the disparity is larger, a more specific articulation of

15    the court's reasoning is expected." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.

16    2008).

17       3.   <u>Lodestar Calculation</u>

18       RBC does not dispute that Mooney is a prevailing party entitled to attorney fees, but argues

19    that (1) the Court should apply a blended rate to the fees, (2) the number of hours expended should

20    be reduced to exclude hours spent on unnecessary or unsuccessful work, (3) the Court should

---

[3] *Hensley* involved an attorney fee request under 42 U.S.C. § 1988, but the Supreme Court noted that the "standards set forth in [its] opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433 n.7. Following that guidance, district courts have applied *Hensley's* holding and standards to fee requests under the FMLA. *See, e.g., Lane v. Grant Cnty.*, No. CV-11-309-RHW, 2013 WL 5306986, at *6 (E.D. Wash. Sept. 20, 2013), *aff'd*, 610 Fed. App'x 698 (9th Cir. July 29, 2015); *Navarro v. Gen. Nutrition Corp.*, No. C-03-0603-SBA(EMC), 2004 WL 2648373, at *5 (N.D. Cal. Nov. 19, 2004), *report and recommendation adopted in relevant part*, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005).

1    decline to apply a multiplier, and (4) the Court should make a 50 percent downward adjustment

2    based on Mooney's limited overall success and his counsel's misconduct during trial. Dkt. No.

3    127 at 1. Mooney counters that there is no basis to apply a blended rate, all of the hours expended

4    (except for his motion to amend his complaint) were reasonable and related to claims that involved

5    a common core of facts or related legal theories, and the Court should apply a 1.5 multiplier based

6    on the contingent nature of the case and high quality of legal representation. Dkt. No. 133 at 2–7.

7                    (a)      Reasonableness of Hourly Rates

8              "Fee applicants have the burden of producing evidence that their requested fees are 'in line

9    with those prevailing in the community for similar services by lawyers of reasonably comparable

10   skill, experience and reputation.'" *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir.

11   2014) (quoting *Camacho*, 523 F.3d at 980). The Court does not focus on the rate "actually charged

12   [to] the prevailing party" but looks to "fees that private attorneys of an ability and reputation

13   comparable to that of prevailing counsel charge their paying clients for legal work of similar

14   complexity." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (citations omitted).

15             Mooney seeks attorney fees for his counsel at the following hourly rates:

16             Patrick Kang            $500

17             John Lee                $350–400

18             Kristina Marino         $250

19   Dkt. No. 118 at 2; Dkt. No. 119-7 at 1.[4]

20             Mooney submitted evidence supporting the reasonableness of the hourly rates requested,

21   including declarations from his own counsel and two attorneys practicing in the community who

22   attest to the reasonableness of the rates. Dkt. Nos. 119–122. Mr. Kang has been practicing since

23

24   ---
     [4] Mooney's motion lists $400 as Mr. Lee's hourly rate, Dkt. No. 118 at 2, but the invoice for Mr. Lee's time includes an entry billed at $350/hour, Dkt. No. 119-7 at 1.

2000 and is a principal at Premier Law Group PLLC in Seattle. Dkt. No. 119 at 1–2. He has handled "hundreds of litigation cases . . . [,] tried numerous cases to successful verdict," and handled numerous arbitrations and appeals. *Id.* at 2. Mr. Lee is a senior associate at Premier Law Group who has been practicing since 2010. Dkt. No. 120 at 2. He has handled "hundreds of litigation cases . . . tried five cases to successful verdict," and arbitrated 50–100 cases. *Id.* Ms. Marino graduated from Seattle University School of Law in 2019, has been practicing with Premier Law Group since that time, and has "handled almost a hundred litigation cases, mostly personal injury mandatory arbitration cases." Dkt. No. 119 at 9.

Declarant Jamal Whitehead had practiced employment law for roughly 15 years at the time of his declaration, and states that the rates of Mr. Kang and his associates are "well within market levels" and less than his hourly rate of $525. Dkt. No. 121 at 2, 4–6.[5] "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). RBC "does not dispute the reasonableness of Mr. Kang's hourly rate of $500[.]" Dkt. No. 127 at 9. Nor does RBC dispute (or address) the rates of Mr. Lee or Ms. Marino.

However, RBC "does dispute the applicability of a high-level partner rate to all time billed to the case until the week before trial." *Id.* RBC argues that because Mr. Kang performed almost all of the work in this case—at a high rate—the Court should "apply a blended rate of $375 to account for the absence of any associate work" until the week before trial. *Id.* RBC cites no authority in support of that proposition, and has simply averaged Mr. Kang's and Ms. Marino's

---

[5] At the time his declaration was filed in this case, Jamal Whitehead was a shareholder at Schroeter Goldmark & Bender in Seattle, Dkt. No. 121 at 1; he was later appointed as a United States District Judge for the Western District of Washington. His appointment has no bearing on the weight the Court gives to his declaration.

hourly rates and applied that averaged rate to all hours billed without identifying which tasks Ms. Marino should have performed. In light of that vague argument and the reasonableness of Mr. Kang's rates, the Court will not apply a blended rate. *See Moreno*, 534 F.3d at 1115 (district courts should not "attempt to impose [their] own judgment regarding the best way to operate a law firm" or "determine if different staffing decisions might have led to different fee requests."); *Cabela's Wholesale Inc. v. Hawks Prairie Inv. LLC*, No. C11-5973-RBL, 2014 WL 1660624, at *3 (W.D. Wash. Apr. 25, 2014) (rejecting suggestion that work should have been delegated to attorneys with lower billing rates); *Castello v. City of Seattle*, No. C10-1457-MJP, 2011 WL 219671, at *2 (W.D. Wash. Jan. 24, 2011) (declining to apply a blended rate when the opposing party "supplie[d] no rationale or authority for this blended rate."). In sum, the Court finds that the requested hourly rates are reasonable.

### (b)   Calculation of Reasonable Hours Expended

As with the hourly rate, the party seeking fees has the "burden of showing the time spent and that it was reasonably necessary to the successful prosecution of" the case. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989). This requires "evidence supporting those hours[.]" *Welch*, 480 F.3d at 945–46. Courts exclude hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434.

Mooney has requested compensation for the following hours of work on his case:

| | |
|---|---|
| Patrick Kang | 671.6 hours |
| Jonathan Lee | 46.7 hours |
| Kristina Marino | .9 hours |

Dkt. No. 119 at 10. He has submitted exhibits documenting the hours billed by his attorneys. Dkt. No. 119-6 (Kang time entries); Dkt. No. 119-7 (Lee time entries); Dkt. No. 119-8 (Marino time

1    entries).

2        RBC has the burden of refuting any hours it deems unreasonable. *See Deukmejian*, 987

3    F.2d at 1397–98 (stating that "[t]he party opposing the fee application has a burden of rebuttal that

4    requires submission of evidence to the district court challenging the accuracy and reasonableness

5    of the hours charged or the facts asserted by the prevailing party in its submitted affidavits"). RBC

6    argues that the Court should "exclude at least 170.2 hours of time spent on either unnecessary or

7    unsuccessful work[.]" Dkt. No. 127 at 9. It argues that Mooney spent those hours (1) developing

8    an abandoned return-to-work theory and moving for summary judgment on that claim and his

9    unsuccessful WLAD claim; (2) obtaining expert testimony on an undisputed issue; (3) filing

10   unsuccessful motions to quash subpoenas to Mooney's former employers, to strike RBC's experts,

11   and to exclude those experts; (4) listing vague and unspecified tasks in billing records, and

12   (5) unsuccessfully moving to amend the complaint. *Id.* at 13.

13            *(i)*     Abandoned and Unsuccessful Theories

14       RBC argues that Mooney's fees should be reduced by 94.3 hours for the amount of time

15   he spent developing an abandoned "return-to-work" theory and moving for summary judgment on

16   that claim and his unsuccessful WLAD claim. *Id.* at 4, 10–13. RBC contends that Mooney heavily

17   litigated a claim that RBC interfered with his FMLA/WFMLA rights by failing to notify him that

18   he needed to provide a certification of his ability to return to work following his leave—thereby

19   delaying his return to work while he obtained the certification from his doctor—only to abandon

20   that theory two weeks before trial. *Id.* at 2, 4. Mooney counters that the work "all involved a

21   common core of facts or were based on" legal theories related to "the successful FMLA/WFMLA

22   claims." Dkt. No. 133 at 4.

23       Where, as here, the plaintiff prevailed on only some claims, the Court must consider

24   whether he "fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded"

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY FEES AND NON-TAXABLE COSTS - 9

and whether he "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" *Hensley*, 461 U.S. 434. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. But "in a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 435). Because work on unrelated, unsuccessful claims is not recoverable, district courts must determine if the unsuccessful and successful claims were sufficiently related by "focus[ing] on whether the claims on which Plaintiff did not prevail involve a common core of facts *or* are based on related legal theories" to the successful claims. *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) (quotation omitted). A plaintiff should not recover fees for litigating unrelated claims, but may recover for work on unrelated claims that is "inseparable from that performed in furtherance of the related or successful claims." *Id.* State law is in accord: attorney fees awards must "reflect a segregation of the time spent on issues for which attorney fees are authorized from time spent on other issues" unless "the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made[.]" *Hume v. Am. Disposal Co.*, 880 P.2d 988, 997 (Wash. 1994); *Pham v. City of Seattle*, 151 P.3d 976, 982 (Wash. 2007) (finding that the trial court considered proper factors in excluding hours that "were unnecessarily expended, unproductive, or not sufficiently related to the successful claim").[6]

Here, RBC seeks to exclude hours Mooney spent on his "[l]osing WLAD" claim, including

---

[6] Because of the dearth of case law applying the WFMLA, the parties rely on cases considering an attorney fee award under the WLAD, and the Court does the same. Dkt. No. 118 at 12; Dkt. No. 127 at 12.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY FEES AND NON-TAXABLE COSTS - 10

1    his "[u]nnecessary and [u]nsuccessful [m]otion for [s]ummary [j]udgment[.]" Dkt. No. 127 at 13.

2    But Mooney's motion for partial summary judgment was granted in part; the Court held that there

3    were no genuine issues of material fact that Mooney had a disability and was able to perform the

4    essential functions of his job when he was discharged. Dkt. No. 62 at 26; Dkt. No. 80 at 2.

5    Resolving those issues as a matter of law streamlined the issues for trial. Therefore, RBC has not

6    shown that Mooney's motion for partial summary judgment comprised hours that were

7    unreasonably or unnecessarily expended. And the Court agrees with Mooney that his ultimately

8    unsuccessful WLAD claim and his successful FLMA claim were based on a "common core of

9    facts." *See Ambat v. City & Cnty. of San Francisco*, 757 F.3d 1017, 1032 (9th Cir. 2014). Mooney

10   alleged that RBC violated the WLAD and FMLA/WFMLA by discharging him because he

11   extended his medical leave. Dkt. No. 106 at 6. To prove his WLAD claim, Mooney had to prove

12   that "extending his leave for his disability was a substantial factor in [RBC]'s decision to lay him

13   off[.]" *Id.* at 9. To prevail on his FMLA/WFMLA claim, Mooney had to prove that "extending his

14   medical leave was a negative factor in [RBC]'s decision to lay him off." *Id.* at 11–12. Although

15   the standards were different, the facts necessary to prove those claims were the same: Mooney

16   took and extended medical leave, he was discharged, and his leave was a factor in that decision.

17   Accordingly, the Court does not reduce Mooney's award for the work performed on his WLAD

18   claim, including his work on his motion for partial summary judgment on that claim. *See, e.g.*,

19   *Lane*, 2013 WL 5306986, at *6 (allowing fees for unsuccessful WLAD claim that arose from a

20   common core of facts as plaintiff's FMLA claim; both claims "involved uncovering Defendant's

21   motivation in terminating Plaintiff.").

22       The Court reaches the same conclusion with respect to the return-to-work FMLA theory.

23   As the Court has previously explained, Mooney's FMLA claim was "premised on two separate

24   interference theories: (i) RBC interfered with his reinstatement rights by delaying his right to return

1   to work until he presented a fitness-for-duty certification, and (ii) RBC interfered with his rights

2   by discharging him because he extended his FMLA leave." Dkt. No. 62 at 31. Although the legal

3   theories were distinct, they both arose under the FMLA, sharing a common legal claim. Plaintiffs

4   "may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure

5   to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."

6   *Hensley*, 461 U.S. at 435. In addition, Mooney's FMLA theories shared a common core of facts

7   and allegations, including that Mooney took medical leave and extended that leave, RBC delayed

8   his return to work (allegedly to attempt to hire another employee to fill his position), and RBC

9   then discharged Mooney. Dkt. No. 133 at 4. Therefore, the Court will not deduct hours spent on

10  Mooney's motion for partial summary judgment on that theory. Nor will it deduct hours spent

11  preparing for and taking the depositions of Ms. Coleman and Ms. DePaola, whom RBC identified

12  as having knowledge of its termination decision and affirmative defenses. Dkt. No. 134-1 at 2–3.

13  That time was "inseparable from that performed in furtherance" of the successful FMLA/WFMLA

14  claim. *Thomas*, 410 F.3d at 649.

15                          *(ii)*    Dr. Marinkovich's Report

16          RBC argues that the Court should exclude 3.4 hours of time spent on developing Dr.

17  Marinkovich's opinions, which Mooney used "for the sole purpose of opining that [he] had a

18  disability," because RBC never disputed that issue. Dkt. No. 127 at 5, 13; Dkt. No. 119-6 at 3, 9.

19  Mooney counters that the report was also useful in establishing that he had a serious medical

20  condition under the FMLA, Dkt. No. 133 at 5, but that issue was not disputed either, Dkt. No. 128-

21  2 at 4–5, 7–8 (RBC admission that Mooney had been diagnosed with mental health conditions and

22  that RBC granted his request for FMLA leave). Therefore, the Court excludes those hours as

23  unnecessary. *See, e.g.*, *Hensley*, 461 U.S. at 434 (courts should exclude "hours that were not

24  reasonably expended" or "unnecessary" (quotation omitted)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

*(iii)*    Motions to Quash Subpoenas, Strike Experts, and Exclude Testimony

RBC argues that the Court should exclude the time Mooney spent on unsuccessful motions, including: (1) 28.9 hours Mr. Kang spent on Mooney's motion to quash subpoenas to Mooney's former employers because the motion was unsuccessful and the subpoenas yielded relevant information, Dkt. No. 127 at 6; (2) 3.7 hours Mr. Kang spent on Mooney's unsuccessful motion to strike RBC's expert declaration, *id.*; Dkt. No. 119-6 at 10–11; and (3) 17.9 hours Mr. Kang spent on Mooney's motion in limine to exclude both of RBC's expert witnesses at trial, Dkt. No. 127 at 6; *see also* Dkt. No. 64; Dkt. No. 119-6 at 12, 14. RBC notes that courts have held that fees should be reduced for efforts that are not "reasonably related to the plaintiffs' favorable resolution." Dkt. No. 127 at 12 (quoting *Pham*, 151 P.3d at 981).

Courts "should consider the reasonableness of seeking fees for failed motions in terms of how it reflects the results obtained by the prevailing party" while excluding fees for unrelated, unsuccessful claims. *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 897 (E.D. Cal. 2009); *City of Riverside v. Rivera*, 477 U.S. 561, 569 n.4 (1986) (explaining *Hensley's* billing judgment requirement that all hours must be reasonable); *see also Pham*, 151 P.3d at 981–82 (affirming reduction in requested attorney fees to account for hours spent on an unsuccessful cross-motion for summary judgment because the court may exclude hours that were unproductive or "not sufficiently related to the successful claim"); *see also Abrams v. Sequim Asset Sols., LLC*, No. 21-CV-05374-LK, 2023 WL 2757195, at *7 (W.D. Wash. Mar. 31, 2023) (excluding hours spent on unsuccessful motion for clarification). With respect to the 28.9 hours Mr. Kang spent researching and writing Mooney's motion to quash subpoenas to Mooney's former employers, Dkt. No. 127 at 6, 13, the Court granted in part and denied in part the motion to quash, Dkt. No. 23. The Court found that the records sought were relevant but agreed with Mooney that "the scope of the

1    materials sought is overbroad and disproportional to the needs of the case" and limited the scope

2    of the subpoenas. *Id.* at 5–7. The Court does not exclude time for that motion because it was

3    partially successful, it related to RBC's mitigation of damages defense that was litigated at trial,

4    and the time spent was not unreasonable or unrelated to Mooney's successful claims. *Id.* at 3; Dkt.

5    No. 97 at 2; Dkt. No. 106 at 16.

6          With respect to the 3.7 hours Mr. Kang spent unsuccessfully moving to strike a report from

7    RBC's expert William Skilling, Dkt. No. 127 at 6, 13; Dkt. Nos. 42, 51, that motion was also

8    partially meritorious because RBC's counsel improperly attached the report to her own declaration

9    and corrected the mistake only after Mooney filed his motion to strike, Dkt. No. 62 at 12–13. The

10   expert report was related to RBC's mitigation defense, which applied to both Mooney's successful

11   FMLA claim and his unsuccessful WLAD claim. Dkt. No. 89 at 4–6. The Court will not exclude

12   time for that motion because it was not unreasonable or unrelated to Mooney's successful claim.

13   Dkt. No. 42. The Court does, however, exclude time for Mooney's second motion to strike, Dkt.

14   No. 51, because that motion was filed in response to RBC's surreply even though no response to

15   a surreply is allowed by the Local Civil Rules. LCR 7(g)(4) ("No response shall be filed unless

16   requested by the court."); Dkt. No. 129-1 at 4 (listing .3 hours spent on the second motion to strike);

17   *see also Navarro*, 2004 WL 2648373, at *13 (excluding work related to "procedural errors").

18         In regard to the 17.9 hours Mr. Kang spent unsuccessfully moving in limine to exclude

19   both of RBC's expert witnesses, Mr. Skilling and Anita Willemse, Dkt. No 127 at 6, 13; Dkt. No.

20   64 (motions in limine), these motions too met with partial success. The Court found that Mr.

21   Skilling's anticipated testimony was relevant to the issue of whether Mooney mitigated his

22   damages and declined to exclude him as a witness. Dkt. No. 89 at 4–6. The Court granted

23   Mooney's request to strike Ms. Willemse's opinions in part, excluding her opinions about

24   Mooney's sales and salary rankings, but allowing her opinions about "the industry's economic

outlook and RBC's 2020 sales[.]" *Id.* at 7. Other than noting that the motions in limine were unsuccessful, Dkt. No. 127 at 6, RBC does not advance a reason why that time should be excluded or was unnecessary. Ms. Willemse's opinion was related to RBC's alleged reason for laying Mooney off, and Mr. Skilling's opinions were relevant to his damages. Therefore, even though Mooney's motions in limine were not entirely successful, the Court does not exclude fees for those motions because they were not unnecessary or otherwise unrelated to his successful claim.

*(iv)*      Vague and Unspecified Tasks

RBC argues that Mr. Kang spent 10 hours on vague and unspecified tasks. Dkt. No. 127 at 13. It identifies three time entries stating that Mr. Kang spent time "preparing notes re [Defendant's] discovery documents in preparation [for] RBC witness depositions." Dkt. No. 129-1 at 2 (identifying time entries on October 25, 27, and 29, 2021). A fee applicant must provide documentation "sufficient to satisfy the Court that the hours expended were actual, non-duplicative and reasonable, and to apprise the Court of the nature of the activity and the claim on which the hours were spent." *Navarro*, 2005 WL 2333803, at *11; *Bowers*, 675 P.2d at 203 (requiring "reasonable documentation of the work performed" that informs the court "of the type of work performed"). The Court may reduce a fee award if the party requesting fees provides insufficient documentation for its request. *See Coachman v. Seattle Auto Mgmt., Inc.*, No. C17-187-RSM, 2019 WL 4695660, at *10 (W.D. Wash. Jan. 3, 2019) (excluding time for vague descriptions of hours expended).

Although the disputed October 2021 time entries do not specify which depositions counsel was preparing for, the descriptions are sufficiently detailed to inform the Court of the nature of the work performed. Dkt. No. 119-6 at 6–7. RBC's real dispute with those time entries seems to be that the time spent was related to depositions used to develop the return-to-work theory, *see* Dkt. No. 127 at 3–4, but as set forth above, the Court does not exclude time for work on that theory.

Therefore, the Court does not exclude hours spent on preparing for those depositions or for the allegedly vague time entries.

### (v)    Motion to Amend the Complaint

RBC argues that the Court should exclude the 12.1 hours Mr. Kang spent on an unsuccessful motion to amend the complaint. Dkt. No. 127 at 6, 13. In his reply brief, "Mooney concedes that time spent for that work (12.1 hrs) should be discounted as being unrelated." Dkt. No. 133 at 6. Therefore, the Court excludes the 12.1 hours expended moving to amend the complaint. Dkt. No. 119-6 at 12.

### (vi)    Final Lodestar

In sum, the Court excludes 3.4 hours for work related to Dr. Marinkovich, 0.3 hours on Mooney's second motion to strike, and 12.1 hours on the motion to amend the complaint. As depicted in the following table, the lodestar amounts are:

| Attorney | Billed Rate | Billed Hours | Requested Total | Deducted Hours | Adjusted Hours | Lodestar |
|---|---|---|---|---|---|---|
| Patrick Kang | $500 | 671.6 | $335,770.14[7] | 15.8 | 655.8 | $327,900 |
| Jonathan Lee | $350-400 | 46.7 | $18,550 | 0 | 46.7 | $18,550 |
| Kristina Marino | $250 | 0.9 | $225 | 0 | 0.9 | $225 |
| Total | | 719.2 | $354,545.14 | 15.8 | 703.4 | $346,675 |

Dkt. No. 119-6 at 17; Dkt. No. 119-7 at 1–2; Dkt. No. 119-8 at 1. After deducting 15.8 hours of Kang's work from Mooney's total requested hours, the resulting lodestar amount is $346,675.

---

[7] Mooney lists $335,770.14 as the total balance due for 671.60 hours of Kang's work, Dkt. No. 119-6 at 17, but according to the Court's calculation, 671.60 x $500 = $335,800. The Court calculated the lodestar amount by multiplying the total adjusted number of hours (655.8) by the hourly rate ($500).

4. <u>Adjustments to the Lodestar Amount</u>

Once the Court has calculated the lodestar amount, the Court must determine whether the requested fee award is reasonable. *Hensley*, 461 U.S. at 434. Where, as here, the plaintiff prevailed on only some claims, courts employ a two-part test, first excluding time spent on unrelated, unsuccessful claims as set forth above. *Thomas*, 410 F.3d at 649. Second, courts consider "whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* (cleaned up). The "the most critical factor" in determining the amount of attorney fees to award "is the degree of success obtained." *Hensley*, 461 U.S. at 436.

Under state law, deviations from the lodestar amount may be warranted based on "the contingent nature of success, and the quality of work performed." *Pham*, 151 P.3d at 982–83 (citation omitted); *see also Nwauzor v. GEO Grp., Inc.*, No. 3:17-CV-05769-RJB, 2021 WL 5907797, at *3 (W.D. Wash. Dec. 14, 2021) (explaining that "the *Kerr* analysis applies to the *Bowers* considerations."). But adjustments to the lodestar amount "are reserved for rare occasions." *Berryman v. Metcalf*, 312 P.3d 745, 757 (Wash. Ct. App. 2013) (quotation omitted); *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (a departure from the lodestar figure is permitted "only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings[.]" (cleaned up)); *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) ("We have previously said that only in rare circumstances should a court adjust the lodestar figure, as this figure is the presumptively accurate measure of reasonable fees.").

(a)    *No Upward Adjustment Is Warranted*

Mooney seeks a 1.5 upward adjustment of the lodestar amount "based on the contingent nature of success and the quality of work performed on this case." Dkt. No. 118 at 2. A contingency multiplier is not permitted under federal civil rights statutes. *Deukmejian*, 987 F.2d at 1403 (stating

that "it is clear that contingency multipliers are no longer permitted under § 1988" and noting that the "case law construing what is a reasonable fee applies uniformly" to all civil rights statutes (cleaned up)). But such multipliers are permitted under state law. *Pham*, 151 P.3d at 983 ("declin[ing] to disapprove of contingency multipliers altogether" and explaining that a "contingency adjustment is based on the notion that attorneys generally will not take high risk contingency cases, for which they risk no recovery at all for their services, unless they can receive a premium for taking that risk.").

Mooney argues that this was "an unappealing and undesirable case that was difficult to prove," and his counsel agreed to handle it on a contingency basis. Dkt. No. 118 at 13; *Kerr*, 526 F.2d at 70 (listing as a factor the "undesirability" of a case). Although Mooney notes that the case involved some unfavorable facts, Dkt. No. 118 at 8–9, that is true in virtually every case and does not make this one the "rare" exception. The discovery and other litigation efforts Mooney cites are not unusual either, and the work associated with them is already reflected in the number of hours compensated in the lodestar calculation. *Id.* at 9–10. The issues in the case were not novel or overly complex, and the trial largely centered around a very typical issue: RBC's motivation in discharging Mooney. Dkt. No. 115 at 2; *Kerr*, 526 F.2d at 70 (listing as factors the novelty and difficulty of the questions involved). And the "novelty and complexity of the issues presumably [a]re fully reflected in the number of billable hours recorded by counsel[.]" *Blum*, 465 U.S. at 898. Therefore, these factors do not support an adjustment of the lodestar amount.

Mooney also notes that he and his counsel had a contingency fee agreement under which "counsel risked earning nothing for all their work if it was a defense verdict." Dkt. No. 118 at 13; *see also* Dkt. No. 119-2 (contingent fee agreement). However, the lodestar amount without a multiplier grants just compensation, particularly in light of the limited nature of Mooney's success at trial. This is not a rare or exceptional case warranting a multiplier.

The quality of the work performed does not justify a multiplier either. A quality adjustment is "an extremely limited basis for adjustment, because in virtually every case the quality of work will be reflected in the reasonable hourly rate." *Bowers*, 675 P.2d at 204 (allowing adjustment in "exceptional cases"). Here, the Court does not adjust the lodestar amount because counsel's rates already reflect the expected quality of their work. And in some respects, the quality of the work performed by Mr. Kang during the trial was not up to the standards the Court expects. As set forth in the Court's Order denying RBC's motion for a new trial, Mr. Kang engaged in misconduct during the trial, including disregarding the Court's rulings on the parties' motions in limine in both his opening and closing statements, and displaying slides during his closing argument that included quotations from other cases that were not in the Court's jury instructions. Dkt. No. 139-1 at 4–6, 11; Dkt. No. 139-2 at 4, 7. Therefore, Mooney is not entitled to an upward adjustment of the lodestar amount.

(b)     *A Downward Adjustment Is Warranted*

RBC seeks "a 50 percent downward adjustment to account for Plaintiff's limited overall success and misconduct during trial[.]" Dkt. No. 127 at 1. Mooney counters that neither federal nor state law includes attorney misconduct as a factor to consider in adjusting the lodestar amount, and Mooney is correct on that issue. Dkt. No. 133 at 6; *Pham*, 151 P.3d at 982–83; *Ballen*, 466 F.3d at 746. But the Court may consider the poor quality of work in adjusting the lodestar amount, and it does so here for the reasons set forth above. *Bowers*, 675 P.2d at 204 (noting that "[i]n exceptional cases . . . the lodestar might be adjusted, either up or down, to reflect the quality of work.").

In addition, as previously noted, the "the most critical factor" in determining the amount of attorney fees to award "is the degree of success obtained." *Hensley*, 461 U.S. at 436. When plaintiffs achieve "excellent results," they are generally entitled to full compensatory fees. *Id.* at

435. But "where the plaintiff achieved only limited success, the district court should award only that amount that is reasonable in relation to the results obtained." *Id.* at 440. Otherwise, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. In evaluating the degree of success, the Court may consider: the amount and nature of claims a plaintiff prevailed on compared to those that were dismissed, the damages awarded compared to the amount sought, the damages awarded relative to the amount of attorney's fees sought, and whether the suit conferred a benefit on the public. *See McCown*, 565 F.3d at 1103–05; *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 810 (9th Cir. 1994); *see also Mora v. Chem-Tronics, Inc.*, No. 97-CV-0851-J (JFS), 1999 WL 973443, at *6 (S.D. Cal. July 8, 1999) (explaining that limited success can exist if "(1) the plaintiff brings a large number of claims, but only succeeds on a few, or (2) the plaintiff seeks a large damage award, but only obtains a small one.").

Mooney's overall success in the litigation was limited. He voluntarily dismissed his Minimum Wage Act claim early in the case, Dkt. Nos. 38, 41,[8] abandoned his return-to-work-theory, Dkt. No. 127 at 4, and lost at trial on his WLAD claim, Dkt. No. 115 at 1–2. He thus prevailed on only two of his four claims. Courts consider a downward adjustment of a fee award where plaintiffs have obtained limited success on their pleaded claims. *See, e.g.*, *Ambat*, 757 F.3d at 1032 (affirming reduced award for attorney fees when "plaintiffs' success was minor relative to the scope of the sex discrimination action"); *McCown*, 565 F.3d at 1103; *McGinnis*, 51 F.3d at 810 (explaining that district courts "must reduce the attorneys fee award so that it is commensurate with the extent of the plaintiff's success."); *Gnassi v. Del Toro*, No. 3:20-cv-06095-JHC, 2023 WL 5277798, at *6–7 (W.D. Wash. Aug. 16, 2023) (adjusting lodestar figure downward based on

---

[8] Voluntarily dismissed claims are not successful claims. *See, e.g.*, *Klein v. Kim*, No. 2:20-cv-01628-BJR, 2023 WL 2017978, at *1 (W.D. Wash. Feb. 15, 2023).

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY FEES AND NON-TAXABLE COSTS - 20

limited success and lack of public benefit).

The Court also compares the $701,221 Mooney sought during trial to his $160,000 verdict, which was less than 25 percent of the recovery he sought. Dkt. No. 115 at 2; Dkt. No. 128-1 at 52; *McCown*, 565 F.3d at 1104 (explaining that "a comparison of damages awarded to damages sought is required," though applying a strict "rule of proportionality is inappropriate"). The attorney fees he seeks are more than twice the amount of his verdict.[9] And because Mooney did not prevail on his WLAD claim, he could not recover the emotional distress damages he sought. Dkt. No. 115 at 2; *cf. Snow v. Earthworks Northwest, Inc.*, No. C07-1729-JCC, 2009 WL 973166, at *3 (W.D. Wash. Apr. 9. 2009) (declining to reduce fees where there was "no reason to believe that [plaintiff] would have obtained any *additional* relief had she prevailed on" her other claims). He also abandoned his claims for injunctive relief or reinstatement, Dkt. No. 1-2 at 6, damages up to trial (in May 2022), and front pay after trial, Dkt. No. 82 at 8, seeking only compensatory damages for lost wages and employment benefits through December 2021, Dkt. No. 128-1 at 28. Therefore, within this context, his overall success was limited, and the Court reduces the lodestar amount ($346,675) by 10 percent to account for that limited success as well as the quality of work described above. *See Newton v. Equilon Enters., LLC*, 411 F. Supp. 3d 856, 882 (N.D. Cal. 2019) (reducing plaintiff's lodestar by 10 percent "to account for the limits to plaintiff's success on the full range of her claims"); *Spencer v. City of New York*, No. 06-CIV-2852 KMW, 2013 WL 6008240, at *8 (S.D.N.Y. Nov. 13, 2013) (reducing lodestar amount by 10 percent where plaintiff "achieved her primary goal" of monetary compensation for defendant's violation of her rights as well as equitable relief against defendant, but had several claims dismissed and achieved a verdict far below what she requested, in part because she did not get emotional distress damages); *Cioffi*

---

[9] At trial, Mooney sought $175,000 in lost wages as part of his successful claim, Dkt. No. 128-1 at 48, and was awarded $160,000, Dkt. No. 115 at 2.

1    *v. New York Cmty. Bank*, 465 F. Supp. 2d 202, 219–21 (E.D.N.Y. 2006) (reducing lodestar amount

2    by 15% where plaintiff prevailed on her claim of retaliation but did not succeed on her sexual

3    harassment—hostile work environment cause of action, had her *quid pro quo* claim dismissed, and

4    failed to obtain any emotional distress damages); *Drez v. E.R. Squibb & Sons, Inc.*, 674 F. Supp.

5    1432, 1447 (D. Kan. 1987) (reducing lodestar amount by 10 percent due to plaintiff's limited

6    success where plaintiff proved retaliation but failed to prove discrimination). Doing so results in a

7    final attorney fee amount of $312,007.50.

8    **B.      Attorney Fees on Post-Trial Motions**

9            Mooney has filed a motion for a supplemental award of $66,730 for attorney fees for time

10   spent on his post-trial motions. Dkt. No. 150; Dkt. No. 154 at 2.[10] That amount is comprised of the

11   following hours:

12        •   36.8 hours spent on his motion for attorney fees

13        •   23 hours for his motion for taxable and non-taxable costs

14        •   39.7 hours on his motion to amend the judgment to add liquidated damages, interest,

15            and a gross-up for tax consequences

16        •   24.8 hours responding to RBC's motion for a new trial

17        •   12.3 hours for his supplemental motion for attorney fees.

18   Dkt. No. 150 at 2–4; Dkt. No. 153 at 4.

19   
_____

20   [10] Post-trial motions for attorney fees must "be filed no later than 14 days after the entry of judgment[.]" Fed. R. Civ.
     P. 54(d)(2)(B)(i). Mooney's supplemental motion for attorney fees, filed on July 28, 2022, follows his announcement
21   in his original (and timely) motion for attorney's fees that "[a] subsequent supplemental motion for attorney's fees
     may be filed after the parties' post-judgment motions have been resolved." Dkt. No. 118 at 2. Of course, Mooney is
22   not expected to know with certainty what post-trial motions would be filed or what fees he would incur with respect
     to such motions until some time following the entry of judgment. Indeed, RBC did not file its motion for a new trial
     until June 29, 2022, 27 days after entry of judgment. Dkt. Nos. 116, 132. Mooney filed his supplemental motion within
23   15 days of the close of briefing on the parties' other post-trial motions. Dkt. Nos. 147, 150. The Court finds that there
     was good cause for Mooney's delay—namely, uncertainty regarding the fees incurred—and Mooney did not
24   unreasonably delay in filing his supplemental motion. *See Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744-BLF,
     2015 WL 13387593, at *4 (N.D. Cal. Dec. 18, 2015).

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY FEES AND NON-
TAXABLE COSTS - 22

1      Time spent establishing a party's entitlement to reasonable attorney fees (commonly

2  referred to as "fees on fees") is generally compensable. *Camacho*, 523 F.3d at 981; *Clark v. City*

3  *of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986). So is work on motions for a new trial, costs,

4  and other post-judgment relief. *See, e.g.*, *Coachman*, 2019 WL 4695660, at *13. The Court again

5  uses the lodestar method to calculate attorney fees for post-trial motions, *Camacho*, 523 F.3d at

6  982, and the Court may reduce the amount for "hours that were not reasonably expended" or

7  "excessive, redundant, or otherwise unnecessary," *Hensley*, 461 U.S. at 434 (quotation omitted).

8      As set forth above, the Court finds the rates of Mooney's attorneys to be reasonable. RBC

9  again requests that the Court apply a blended rate to the fees, Dkt. No. 152 at 1, and for the same

10  reasons set forth above, the Court declines to do so.

11      The Court also declines to consider RBC's "legal authority and argument" set forth in its

12  four other briefs. Dkt. No. 152 at 2 ("RBC incorporates and relies on the same legal authority and

13  argument opposing Plaintiff's proffered lodestar calculation as is outlined in Dkt. Nos. 127, 128,

14  140, and 141."). Allowing such incorporation would circumvent the length limit in Local Civil

15  Rule 7(e)(4), so the Court does not consider the arguments in RBC's separate filings in evaluating

16  Mooney's supplemental motion for attorney's fees. *See* Dkt. No. 62 at 18–19 (declining to consider

17  RBC's other filings incorporated by reference when doing so would violate the length limit in the

18  Local Civil Rules); *O'Dell v. Conseco Senior Health Ins. Co.*, No. C08-00793-RSL, 2011 WL

19  13044240, at *1 n.1 (W.D. Wash. Feb. 10, 2011) (disregarding all arguments and supporting

20  evidence that were not made in defendants' opposition to plaintiff's motion).

21      RBC argues that the Court should exclude hours spent on "undecided motions," including

22  Mooney's motion for liquidated damages and interest, RBC's motion for a new trial, and

23  Mooney's motion for non-taxable costs if Mooney does not prevail on those motions. Dkt. No.

24  152 at 2. But as set forth in this Order and those related to the other motions, Mooney has prevailed

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY FEES AND NON-TAXABLE COSTS - 23

on those motions. Nor does the Court conclude that Mooney's work on those motions was unnecessary or unreasonable.

RBC contends that the number of hours billed on the motions is "grossly excessive, particularly in light of Plaintiff's counsel's focus on plaintiff-side employment matters," because he should have been able to draft the motions more quickly. *Id.* RBC includes a chart that lists what it believes to be "excessive time" spent on each post-trial motion and a reasonable number of hours on each motion. *Id.* at 3. But RBC does not explain how it arrived at that "reasonable" number of hours, nor is its calculation apparent. After reviewing the billing records, the Court finds that Mooney's counsel expended a reasonable number of hours on the post-trial motions and declines to reduce the number of hours as RBC urges. *See, e.g.*, *Berg for C.K.M. v. Bethel Sch. Dist.*, No. C18-5345-BHS, 2022 WL 1591286, at *5 (W.D. Wash. May 19, 2022) (granting motion for $17,340 for attorney fees motion); *O'Kell v. Haaland*, No. 2:18-CV-00279-SAB, 2022 WL 19571657, at *3–4 (E.D. Wash. July 8, 2022) (finding reasonable 41.10 hours spent preparing fee motion in ADEA case); *Coachman*, 2019 WL 4695660, at *14 (finding approximately 66 hours reasonable for attorney fees motion). Therefore, Mooney is awarded $66,730 in fees for his post-trial motions.

## C.    Non-Taxable Costs

Mooney seeks $15,588.63 in costs, including $6,466.13 set forth in Plaintiff's Bill of Costs as taxable costs and $8,922.50 in non-taxable costs. Dkt. No. 123 at 5. On July 18, 2022, the Clerk of the Court granted Mooney's motion for taxable costs in part, disallowed two state law costs,[11]

---

[11] The Clerk disallowed two costs: (1) the $242.49 King County Superior Court filing fee, and (2) the $200 statutory attorney fee. Dkt. No. 148 at 1–2; *see* Dkt. No. 123 at 3–4. Under the Local Civil Rules, "[t]he taxation of costs by the clerk shall be final, unless modified on appeal to the district court judge or magistrate judge to whom the case was assigned." LCR 54(d)(4). Neither party filed an appeal of the Clerk's taxation of costs, so that taxation is "final" and not revisited by the Court.

and awarded $6,223.64. Dkt. No. 148 at 1–2. The Clerk noted that non-taxable costs may be brought before the Court, and the Court now considers those costs. *Id.* at 2; Dkt. No. 149.

     1.  <u>Legal Standard</u>

Prevailing parties under the FMLA are entitled to recover their costs. The FMLA expressly provides: "The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3); *see also* 29 C.F.R. § 825.400(c) (same). State law also authorizes an award of costs. Wash. Rev. Code § 50A.40.040(3) (stating that "the court shall, in addition to any judgment awarded to a prevailing plaintiff, award reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action to be paid by the defendant.").

In most cases, the taxation of costs is limited by Federal Rule of Civil Procedure 54(d), Local Civil Rule 54(d), and 28 U.S.C. § 1920. However, when a specific statute authorizes the recovery of attorney fees, the Court has discretion to allow the recovery of other costs in order to further the purpose of the fee-shifting provision. *See Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1245 (9th Cir. 1982) ("Needless to say, the clearly expressed legislative intent cannot be effectuated unless the court has the option to allow plaintiffs to recover the full costs of litigation."), *vacated on other grounds*, 461 U.S. 952 (1983); *Snow*, 2009 WL 973166, at *4 (allowing recovery of costs under the FMLA and Title VII). Under the civil rights statutes, recoverable costs "include reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client, even if the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920." *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006); *Traxler v. Multnomah Cnty.*, No. 06-1450-KI, 2010 WL 3824075, at *3 (D. Or. Sept. 22, 2010) (explaining that under the FMLA, costs include "reasonable out-of-pocket expenses which can include costs beyond those normally allowed under Rule 54(d)

and 28 U.S.C. § 1920."). Therefore, additional costs may be recoverable under the FMLA beyond those allowed under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920.

2.  <u>RBC's General Objections</u>

RBC opposes Mooney's motion in its entirety, arguing that the costs requested were disproportionate to the relief recovered and sought "reimbursement for expenses that were neither necessary for the case, nor even used at trial." Dkt. No. 137 at 1. RBC contends that Mooney is not entitled to any costs because he did not prevail on his WLAD claim. *Id.* at 2–3. To support that proposition, RBC relies on a breach of contract case, *id.* at 3, but as set forth above, the standards are different in a civil rights action under a statute that provides for an award of costs. *See Blair v. Wash. State Univ.*, 740 P.2d 1379, 1387 (Wash. 1987) (adopting the federal rule "allowing more liberal recovery of costs by the prevailing party in civil rights litigation, in order to further the policies underlying these civil rights statutes"). And RBC cites nothing in support of its contention that Mooney's costs should be reduced to reflect his overall partial success.

3.  <u>Costs For Parking, Mileage, Tolls, Meals, and Messenger Fees</u>

RBC does not object to the costs for parking, mileage and bridge tolls, meals during trial, and legal messenger fees. Dkt. No. 123 at 5; *see generally* Dkt. No. 137. The Court awards those expenses. *See, e.g.*, *Ostling v. City of Bainbridge Island*, No. 3:11-cv-05219-RBL, 2012 WL 4846252, at *5 (W.D. Wash. Oct. 11, 2012) (awarding expenses for parking, meals, postage, and travel); *Erickson v. Biogen, Inc.*, No. C18-1029-JCC, 2020 WL 885743, at *9 (W.D. Wash. Feb. 24, 2020) (same).

4.  <u>Expert Witness Costs</u>

Mooney seeks to recover costs spent on the following expert witnesses:

- $1,450.00 - Dr. Frank Marinkovich, "who conducted a records review and provided testimony via declaration establishing the elements related to Mr. Mooney's medical

condition for this case."

- $4,257.50 - William Brandt, CPA, "who provided expert opinions regarding the adverse tax consequences and interest on back pay award."

- $2,000.00 – Alexander Higgins, "who provided expert opinions re Plaintiff's attorney fee Petition."

Dkt. No. 123 at 4. RBC argues that Mooney's retention of Dr. Marinkovich was not reasonable because it never challenged Mooney's disability, rendering an expert opinion on that issue unnecessary. Dkt. No. 137 at 5. The Court agrees. As set forth above, because RBC did not dispute that Mooney had a disability (for purposes of his WLAD claim) or a serious medical condition (for purposes of his FMLA claim), his retention of an expert to render an opinion on those issues was unnecessary. The Court therefore does not award Mooney costs associated with Dr. Marinkovich.

RBC also argues that Mooney should not recover expenses related to Mr. Brandt because his "supposedly expert opinion on tax consequences and interest is unrelated to Plaintiff's FMLA claim and seems to be more financial advice to Plaintiff than part of the litigation." *Id.* RBC seems to have missed the point of Mr. Brandt's opinion, which was obtained and filed to support Mooney's request for pre- and post-judgment interest and a gross up to offset the tax consequences of his jury award. Dkt. No. 131; *see also* Dkt. No. 126-1 at 36. As set forth in the Court's Order on that issue, interest and a gross up are permissible and granted in this case. And an expert opinion was reasonably obtained on that complex financial issue. Fed. R. Evid. 702. Therefore, the Court allows Mooney to recover the costs associated with obtaining Mr. Brandt's opinion.

RBC also contends that the Court should not allow Mooney to recover the $2,000 he spent for Mr. Higgins' time because it "served no benefit to Plaintiff's case, but is solely for the benefit of Plaintiff's counsel[.]" Dkt. No. 137 at 6. RBC also "vehemently objects to paying for a purported expert without an opportunity to challenge his expert designation when said 'expert' appears to

1    have had his law license suspended by the Washington Supreme Court for dishonest conduct."

2    Dkt. No. 137 at 6. The Court concludes that the cost incurred for Mr. Higgins' declaration was

3    neither reasonable nor necessary. The bases for Mr. Higgins' opinions are no different than those

4    offered by Jamal Whitehead—without charge. *See* Dkt. No. 122 at 2 (Higgins declaration, stating

5    "[f]rom my experience, I have become familiar with rates charged by attorneys with similar

6    experience to Mr. Kang."); Dkt. No. 121 at 3–4 (Whitehead declaration, stating that his experience

7    includes "regularly monitor[ing] the rates that other firms and attorneys charge," and he is

8    "generally familiar with the market rates of Washington attorneys who practice employment law

9    in the state[.]"); *id.* at 5 ("Based on my experience, I believe a rate of $500 per hour for an attorney

10   with Mr. Kang's skills and experience is well within market levels."); *see also* Dkt. No. 119-4 at

11   2 (Bone declaration, stating "The rates our firm charges are based, in part, on our understanding

12   of the rates commonly charged by many of our competitor law firms that conduct similar work in

13   the Seattle area. I believe my rate charged in this case is at or below the rates of many of our

14   competitors and that our rates are reasonable."). Moreover, Mr. Higgins' recounting of the

15   challenges of the case does not add anything more helpful than Mr. Kang's declaration and the

16   facts already before the Court. *Compare* Dkt. No. 122 at 3–4, *with* Dkt. No. 119 at 4–8. Thus, the

17   Court declines to award this cost. *See Congdon v. Uber Techs., Inc.*, No. 16-CV-02499-YGR, 2019

18   WL 2327922, at *9 (N.D. Cal. May 31, 2019) ("[U]nlike a merits expert, class counsel's fees

19   expert was not 'necessary' to the further the goals of this litigation.").

20       5.  Witness Location Expenses

21       RBC argues that Mooney should not recover the $99.76 he spent to identify potential

22   witness Lisa Smith. Dkt. No. 137 at 6. Mooney's motion states that RBC identified Ms. Smith "as

23   someone who was let go in July 2020 as part of Defendant's RIF." Dkt. No. 123 at 5. Mooney's

24   counsel used an online search tool to find her at a cost of $11.36, and when that effort was

unsuccessful, he retained a private investigator to locate her at a cost of $88.40. *Id.*; Dkt. No. 126-1 at 2, 9, 12. RBC maintains that since Ms. Smith did not testify at trial, and Mooney did not "use Ms. Smith in his case in any way," the cost to locate her should not be allowed. Dkt. No. 137 at 6. Mooney did not respond to that argument, and the Court finds that the cost to locate someone who was apparently never contacted or used in the case was unreasonable. The Court therefore does not award the costs incurred to locate Ms. Smith.

6.  Westlaw Research

RBC contends that Mooney should not be allowed to recover the $450.31 he requests "for Westlaw legal research." Dkt. No. 137 at 6. RBC avers that Mooney has not established that separately billing for such research is the practice in the local community or that the research was necessary in this case. *Id.* at 6–7. Courts have allowed prevailing parties to recover the cost of legal research in FMLA cases. *Traxler*, 2010 WL 3824075, at *3. But such costs may be disallowed if the description of that research is too vague and fails to comply with the specificity required by the Court's local rules. *Isom*, 225 F. Supp. 3d at 890. As relevant to this case, Local Civil Rule 54(d)(1) requires:

> All costs shall be specified, so that the nature of the charge can be readily understood. The movant shall verify, in a declaration sworn under penalty of perjury by the party, an attorney of record, or an agent having knowledge of the facts, that each requested cost is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

Here, Mooney does not provide any explanation for the Westlaw research fees. The bill he attaches simply lists "online/software out of plan charges" with no detail or explanation. Dkt. No. 126-1 at 19. His counsel's declaration provides no additional detail. Dkt. No. 125 at 2. And Mooney did not respond to RBC's argument that his description of that charge was too vague to evaluate. *See generally* Dkt. No. 144. Therefore, the Court cannot determine whether the research

expenses are recoverable, the request does not comply with the Local Civil Rules, and the Court does not award the cost of the unspecified Westlaw charge. LCR 54(d)(1); *Isom*, 225 F. Supp. 3d at 890; *see also Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) (noting that only some types of research are compensable).

Accordingly, the Court grants Mooney's motion for non-taxable costs, Dkt. No. 123 at 4–5, in part and awards him $6,922.43 in costs:

| Cost Type | Cost Requested | Cost Disallowed | Cost Allowed |
|---|---|---|---|
| Expert Witness Fees | $7,707.50 | $3,450 | $4,257.50 |
| Witness location cost | $99.76 | $99.76 | 0 |
| Westlaw legal research | $450.31 | $450.31 | 0 |
| Parking costs | $168.00 | 0 | $168.00 |
| Mileage and bridge costs | $344.24 | 0 | $344.24 |
| Meals during trial | $135.69 | 0 | $135.69 |
| Legal messenger fees | $17.00 | 0 | $17.00 |
| **TOTALS** | **$8,922.50** | **$4,000.07** | **$4,922.43** |

## III.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Mooney's Motion for Attorney Fees, Dkt. No. 118, GRANTS IN PART AND DENIES IN PART Mooney's Motion for an Award of Nontaxable Costs, Dkt. No. 123 at 4–5, and GRANTS Mooney's Supplemental Motion for Attorney Fees, Dkt. No. 150. The Court awards Mooney attorney fees in the amount of $378,737 and non-taxable costs in the amount of $4,922.43.

Dated this 23rd day of October, 2023.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY FEES AND NON-TAXABLE COSTS - 30